No. 23-2362

# United States Court of Appeals
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

*v.*

OLISER HERNANDEZ,
DEFENDANT-APPELLANT

*On Appeal from the United States District Court
for the Southern District of California
3:19MJ23508-MSB-AJB*

**SUPPLEMENTAL EXCERPTS OF RECORD
VOLUME 2 OF 2**

TARA K. MCGRATH
*United States Attorney*

DANIEL E. ZIPP
*Assistant U.S. Attorney
Chief, Appellate Section
Criminal Division*

ANDREW Y. CHIANG
*Assistant U.S. Attorney*

*880 Front St., Rm. 6293
San Diego, CA 92101
(619) 546-8756*

8/14/24, 5:57 PM                                CM/ECF - casd

CLOSED

# U.S. District Court
## Southern District of California (San Diego)
## CRIMINAL DOCKET FOR CASE #: 3:16-cr-02950-BAS-1

Case title: USA v. Valdes                    Date Filed: 12/20/2016

Magistrate judge case number: 3:16-mj-03646-WVG          Date Terminated: 03/07/2017

---

Assigned to: Judge Cynthia Bashant

### Defendant (1)

**Jeffrey Lawrence Valdes**              represented by **Federal Defenders**
*TERMINATED: 03/07/2017*                  Federal Defenders of San Diego
                                          225 Broadway
                                          Suite 900
                                          San Diego, CA 92101-5008
                                          (619)234-8467
                                          Fax: (619)687-2666
                                          Email: cassd_ecf@fd.org
                                          *TERMINATED: 11/29/2016*
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*
                                          *Designation: Public Defender or*
                                          *Community Defender Appointment*

                                          **Roxana Sandoval**
                                          Federal Defenders of San Diego
                                          225 Broadway
                                          Suite 900
                                          San Diego, CA 92101
                                          (619)234-8467
                                          Fax: (619)687-2666
                                          Email: Roxana_Sandoval@fd.org
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*
                                          *Designation: Public Defender or*
                                          *Community Defender Appointment*

                                          **Chase Scolnick**
                                          Federal Defenders of San Diego Inc
                                          225 Broadway
                                          Suite 900
                                          San Diego, CA 92101-5030
                                          619-234-8467
                                          Email: chase_scolnick@fd.org *(Inactive)*
                                          *ATTORNEY TO BE NOTICED*
                                          *Designation: Public Defender or*
                                          *Community Defender Appointment*

SER-164

| Pending Counts | Disposition |
|---|---|
| None | |

**Highest Offense Level (Opening)**

None

| Terminated Counts | Disposition |
|---|---|
| 8:1324(a)(1)(A)(ii), (v)(II) and (a)(1)(B)(i) - Transportation of Certain Aliens for Financial Gain and Aiding and Abetting (1) | Government's oral motion to dismiss without prejudice - Granted |

**Highest Offense Level (Terminated)**

Felony

| Complaints | Disposition |
|---|---|
| 8:1324(a)(1)(A)(ii) - Transportation of Illegal Aliens | |

---

**Material Witness**

**Fortino Apolinar-Martinez**
*TERMINATED: 03/07/2017*

represented by **Kevin Milmoe**
Law Office of Kevin Milmoe
110 West C Street
1300
San Diego, CA 92101
(619)850-7400
Fax: (619) 696-9680
Email: milmoelaw@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

---

**Material Witness**

**Flavio Cesar Manuel-Obando**
*TERMINATED: 03/07/2017*

represented by **Kevin Milmoe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

---

**Plaintiff**

**USA**

represented by **U S Attorney CR**
U S Attorneys Office Southern District of
California

SER-165

CM/ECF - casd

Criminal Division
880 Front Street
Room 6293
San Diego, CA 92101
(619)557-5610
Fax: (619)557-5917
Email: Efile.dkt.gc2@usdoj.gov
*TERMINATED: 12/20/2016*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States
Attorney*

**Coretta Catlin**
U S Attorneys Office Southern District of
California
880 Front Street
Room 6293
San Diego, CA 92101
Email: CaseView.ecf@usdoj.gov
*TERMINATED: 12/29/2016*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States
Attorney*

**Karla Davis**
U S Attorney's Office
Southern District of California
880 Front Street, Room 6293
San Diego, CA 92101
619-546-6741
Fax: 619-546-0510
Email: karla.davis@usdoj.gov *(Inactive)*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States
Attorney*

**Susan L. Park**
United States Attorneys Office
880 Front Street
Room 6293
San Diego, CA 92101
619-546-6760
Fax: 619-546-0510
Email: susan.park2@usdoj.gov *(Inactive)*
*TERMINATED: 03/23/2017*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States
Attorney*

SER-166

| Date Filed | # | Docket Text |
|---|---|---|
| 11/26/2016 | | Arrest of Jeffrey Lawrence Valdes (no document attached) (cxl) [3:16-mj-03646-WVG] (Entered: 11/28/2016) |
| 11/28/2016 | 1 | COMPLAINT as to Jeffrey Lawrence Valdes. (Attachments: # 1 Info. Sheet)(cxl) [3:16-mj-03646-WVG] (Entered: 11/28/2016) |
| 11/28/2016 | 2 | Minute Order. Attorney Kevin Milmoe (CJA) for Material Witnesses Flavio Cesar Manuel-Obando, Fortino Apolinar-Martinez. Set/Reset Duty Hearings as to Jeffrey Lawrence Valdes: Initial Appearance set for 11/28/2016 before Magistrate Judge William V. Gallo. (no document attached) (dls) [3:16-mj-03646-WVG] (Entered: 11/28/2016) |
| 11/28/2016 | 3 | Minute Entry for proceedings held before Magistrate Judge William V. Gallo: Initial Appearance as to Jeffrey Lawrence Valdes held on 11/28/2016. Appointed Attorney Federal Defenders for Jeffrey Lawrence Valdes. No Bail as to Jeffrey Lawrence Valdes (1). Stipulation to detention and is ordered detained w/o prejudice. Preliminary Hearing set for 12/06/2016 at 2:00pm. Arraignment set for 12/20/2016 at 2:00pm. (CD# 11/28/2016 WVG - 11:46 - 12:18). (Plaintiff Attorney Beena McDonald, AUSA). (Defendant Attorney Sam Eilers, FD). (no document attached) (cxl) [3:16-mj-03646-WVG] (Entered: 11/28/2016) |
| 11/28/2016 | 4 | ***English. No Interpreter needed as to Jeffrey Lawrence Valdes (no document attached) (cxl) [3:16-mj-03646-WVG] (Entered: 11/28/2016) |
| 11/28/2016 | 6 | CJA 23 Financial Affidavit by Jeffrey Lawrence Valdes. (dsn) [3:16-mj-03646-WVG] (Entered: 11/29/2016) |
| 11/28/2016 | 7 | FINDINGS OF FACT AND ORDER RE WAIVER OF DETENTION PENDING TRIAL as to Jeffrey Lawrence Valdes. Signed by Magistrate Judge William V. Gallo on 11/28/16. (dsn) [3:16-mj-03646-WVG] (Entered: 11/29/2016) |
| 11/29/2016 | 5 | NOTICE OF ATTORNEY APPEARANCE Coretta Catlin appearing for USA. (Catlin, Coretta)Attorney Coretta Catlin added to party USA(pty:pla) (dsn). [3:16-mj-03646-WVG] (Entered: 11/29/2016) |
| 11/29/2016 | 8 | NOTICE OF ATTORNEY APPEARANCE: Roxana Sandoval appearing for Jeffrey Lawrence Valdes (Sandoval, Roxana)Attorney Roxana Sandoval added to party Jeffrey Lawrence Valdes(pty:dft) (dsn). [3:16-mj-03646-WVG] (Entered: 11/29/2016) |
| 11/29/2016 | 9 | Notice of Assertion of Rights by Jeffrey Lawrence Valdes (Attachments: # 1 Proof of Service)(Sandoval, Roxana) (dsn). [3:16-mj-03646-WVG] (Entered: 11/29/2016) |
| 11/30/2016 | 10 | Set/Reset Duty Hearings as to Jeffrey Lawrence Valdes: Arraignment of MW set for 11/30/2016 before Magistrate Judge William V. Gallo. (no document attached) (cxl) [3:16-mj-03646-WVG] (Entered: 11/30/2016) |
| 11/30/2016 | 11 | Minute Entry for proceedings held before Magistrate Judge William V. Gallo: Arraignment of Material Witnesses Flavio Cesar Manuel-Obando, Fortino Apolinar-Martinez held on 11/30/2016. Kevin Millmore (CJA) confirmed for Material Witnesses Flavio Cesar Manuel-Obando, Fortino Apolinar-Martinez. Material Witness bail set at $5,000.00 P/S w/10% percent cash deposit as to M/W Fortino Apolinar-Martinez. Material Witness bail set at $7,500.00 P/S w/10% percent cash deposit as to M/W Flavio Cesar Manuel-Obando. M/W's must be able to legally remain in the U.S. and follow PTS supervision. (Interpreter Letty Lewis). (CD# 11/30/2016 WVG: 2:07-2:27). (Plaintiff Attorney Abbey Jahnke, AUSA). (Defendant Attorney Chelsea Estes, FD - S/A). (no document attached) (dls) [3:16-mj-03646-WVG] (Entered: 12/01/2016) |
| 11/30/2016 | 12 | ORDER Setting Conditions of Release for Material Witness as to Fortino Apolinar-Martinez. Material Witness Bond set for $5,000.00 P/S w/10% percent cash deposit. |

CM/ECF - casd

| | | Signed by Magistrate Judge William V. Gallo on 11/30/16. (dsn) (jao). [3:16-mj-03646-WVG] (Entered: 12/01/2016) |
|---|---|---|
| 11/30/2016 | 13 | ORDER Setting Conditions of Release for Material Witness as to Flavio Cesar Manuel-Obando. Material Witness Bond set for $7,500.00 P/S w/10% percent cash deposit. Signed by Magistrate Judge William V. Gallo on 11/30/16. (dsn) (jao). [3:16-mj-03646-WVG] (Entered: 12/01/2016) |
| 12/20/2016 | 14 | INFORMATION as to Jeffrey Lawrence Valdes (1) Count 1. (smy) (Entered: 12/22/2016) |
| 12/20/2016 | 15 | WAIVER OF INDICTMENT by Jeffrey Lawrence Valdes. (smy) (Entered: 12/22/2016) |
| 12/20/2016 | 16 | Minute Entry for proceedings held before Magistrate Judge William V. Gallo: Arraignment on Information as to Jeffrey Lawrence Valdes (1) Count 1 held on 12/20/2016. Not Guilty plea entered. Motion Hearing/Trial Setting set for 1/23/2017 02:00 PM in Courtroom 4B before Judge Cynthia Bashant. (CD# 12/20/2016 WVG2:31-2:48). (Plaintiff Attorney Abbey Jahnke, AUSA-S/A). (Defendant Attorney Roxana Sandoval, FD). (no document attached) (smy) (Entered: 12/22/2016) |
| 12/29/2016 | 17 | NOTICE OF ATTORNEY APPEARANCE: Susan L. Park appearing for USA. (Park, Susan). Attorney Susan L. Park added to party USA (pty:pla). (jah). (Entered: 12/29/2016) |
| 01/13/2017 | 18 | NOTICE OF HEARING as to Defendant Jeffrey Lawrence Valdes. Motion Hearing - Material Witness set for 1/31/2017 02:00 PM in Courtroom 2C before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 01/13/2017) |
| 01/17/2017 | 19 | MOTION to Take Deposition, MOTION for Release of Material Witness by Flavio Cesar Manuel-Obando, Fortino Apolinar-Martinez as to Jeffrey Lawrence Valdes. (Attachments: # 1 Memo of Points and Authorities)(Milmoe, Kevin). Modified on 1/18/2017 - No Proof of Service. QC Email sent to file Proof of Service. Removed extra added text (jah). Modified on 2/1/2017 - Removed term date, Order filed (jah). (Entered: 01/17/2017) |
| 01/18/2017 | 20 | Certificate of Service by Flavio Cesar Manuel-Obando as to Jeffrey Lawrence Valdes re 19 MOTION to Take Deposition, MOTION for Release of Material Witness (Milmoe, Kevin). (jah). (Entered: 01/18/2017) |
| 01/20/2017 | 21 | MOTION to Compel Discovery, MOTION to Preserve Evidence, MOTION for Leave to File Further Motions by Jeffrey Lawrence Valdes. (Attachments: # 1 Memo of Points and Authorities)(Sandoval, Roxana). (jah). (Entered: 01/20/2017) |
| 01/23/2017 | 22 | Minute Entry for proceedings held before Judge Cynthia Bashant: Motion Hearing/Trial Setting as to Jeffrey Lawrence Valdes held on 1/23/2017. Joint request for a continuance granted. Motion Hearing/Trial Setting continued to 3/6/2017 02:00 PM in Courtroom 4B before Judge Cynthia Bashant. (Court Reporter/ECR James Pence). (Plaintiff Attorney Susan Park AUSA). (Defendant Attorney Roxana Sandoval FD). (no document attached) (sxm) (Entered: 01/23/2017) |
| 01/27/2017 | 23 | RESPONSE in Opposition by Jeffrey Lawrence Valdes re 19 MOTION to Take Deposition, MOTION for Release of Material Witness (Sandoval, Roxana). (jah). (Entered: 01/27/2017) |
| 01/31/2017 | 24 | Minute Entry for proceedings held before Magistrate Judge William V. Gallo:granting 19 Motion to Take Deposition as to Jeffrey Lawrence Valdes (1); finding as moot 19 Motion for Release of Material Witness as to Jeffrey Lawrence Valdes (1); Motion Hearing - Material Witness in case as to Jeffrey Lawrence Valdes held on 1/31/2017 re 19 MOTION to Take Deposition MOTION for Release of Material Witness filed by Flavio Cesar Manuel-Obando, Fortino Apolinar-Martinez. Material Witness deposition set for 3/8/2017 at 10:00 AM in the US Attorney's office. (CD# 1/31/2017 WVG16 2:21 - 2:36;2:53 - 3:03). (Plaintiff Attorney Sasha Johnson-AUSA-S/A; Susan Park-AUSA). (Defendant Attorney |

SER-168

CM/ECF - casd

| | | Roxana Sandoval-FD). (Material Witness Attorney Kevin Milmoe-CJA). (no document attached) (mtb) (Entered: 02/01/2017) |
|---|---|---|
| 01/31/2017 | 25 | ORDER granting 19 Motion to Take Deposition and 19 Motion for Release of Material Witness as to Jeffrey Lawrence Valdes (1). The Material Witnesses shall be deposed on 3/8/2017 at 10:00 AM. The deposition will be held at the U.S. Attorney's Office. Signed by Magistrate Judge William V. Gallo on 1/31/2017. (jah) (Entered: 02/01/2017) |
| 02/09/2017 | 26 | NOTICE OF HEARING as to Defendant Jeffrey Lawrence Valdes. Upon request of defense counsel, Status Hearing regarding discovery set for 2/13/2017 02:00 PM in Courtroom 4B before Judge Cynthia Bashant. (no document attached) (sxm) (Entered: 02/09/2017) |
| 02/09/2017 | 27 | NOTICE OF ATTORNEY APPEARANCE: Chase Scolnick appearing for Jeffrey Lawrence Valdes (Scolnick, Chase) Attorney Chase Scolnick added to party Jeffrey Lawrence Valdes(pty:dft) (kas). (Entered: 02/09/2017) |
| 02/13/2017 | 28 | Minute Entry for proceedings held before Judge Cynthia Bashant: Status Hearing as to Jeffrey Lawrence Valdes held on 2/13/2017. Vehicle to be made available before 3/8/2017. Motion hearing/trial setting set for 3/6/2017 at 2:00 PM confirmed. (Court Reporter/ECR Dana Peabody) (Plaintiff Attorney Susan Park AUSA). (Defendant Attorney Roxana Sandoval FD). (no document attached) (sxm) (Entered: 02/13/2017) |
| 02/21/2017 | 29 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings (Partial Transcript of Status Hearing) as to Jeffrey Lawrence Valdes held on 2/13/2017, before Judge Cynthia Bashant. Court Reporter/Transcriber: Dana Peabody. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 3/14/2017. Redacted Transcript Deadline set for 3/24/2017. Release of Transcript Restriction set for 5/22/2017. (akr) (Entered: 02/21/2017) |
| 02/21/2017 | 30 | NOTICE of Lodgment of DVD (Sandoval, Roxana). (jah). (Entered: 02/21/2017) |
| 02/21/2017 | 31 | MOTION to Dismiss Information, MOTION to Suppress Statements, MOTION to Compel Discovery by Jeffrey Lawrence Valdes. (Attachments: # 1 Memo of Points and Authorities, # 2 Exhibit A-G)(Sandoval, Roxana). Modified on 2/22/2017 - Edited text (jah). (Entered: 02/21/2017) |
| 02/22/2017 | 32 | DECLARATION of Jeffrey Lawrence Valdes by Jeffrey Lawrence Valdes re 31 MOTION to Dismiss Information MOTION to Suppress StatementsMOTION to Compel Discovery (Attachments: # 1 Declaration)(Sandoval, Roxana). Modified on 2/23/2017 - Wrong event. QC Email sent. Corrected text to match pleading (jah). (Entered: 02/22/2017) |
| 03/01/2017 | 33 | MOTION for Reciprocal Discovery, MOTION for Leave to File Further Motions by USA as to Jeffrey Lawrence Valdes. (Park, Susan). (jah). (Entered: 03/01/2017) |
| 03/01/2017 | 34 | RESPONSE in Opposition by USA as to Jeffrey Lawrence Valdes re 31 MOTION to Dismiss Information, MOTION to Suppress Statements, MOTION to Compel Discovery (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Park, Susan). (jah). (Entered: 03/01/2017) |
| 03/01/2017 | 35 | MOTION to Shorten Time by USA as to Jeffrey Lawrence Valdes. (Park, Susan). (jah). (Entered: 03/01/2017) |
| 03/01/2017 | 36 | RESPONSE to Motion by USA as to Jeffrey Lawrence Valdes re 21 MOTION to Compel Discovery, MOTION to Preserve Evidence, MOTION for Leave to File Further Motions |

SER-169

(Park, Susan). (jah). (Entered: 03/01/2017)

| 03/01/2017 | 37 | Set/Reset Duty Hearings as to Jeffrey Lawrence Valdes: Status Hearing Re Dismissal set for 3/2/2017 at 2:00pm before Magistrate Judge Karen S. Crawford. (no document attached) (cxl) (Entered: 03/01/2017) |
| --- | --- | --- |
| 03/01/2017 | 38 | NOTICE OF HEARING as to Defendant Jeffrey Lawrence Valdes. Status Hearing Re Dismissal set for 3/2/2017 at 2:00pm before Magistrate Judge Karen S. Crawford (no document attached) (cxl) (Entered: 03/01/2017) |
| 03/01/2017 | 39 | ORDER as to Jeffrey Lawrence Valdes. Court grants Defendant's request for an evidentiary hearing. Court denies Defendant's request to compel the presence of the material witnesses at the evidentiary hearing. Evidentiary Hearing set for 3/6/2017 02:00 PM in Courtroom 4B before Judge Cynthia Bashant. Signed by Judge Cynthia Bashant on 3/1/2017. (jah) (Entered: 03/01/2017) |
| 03/03/2017 | 40 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. Motion Hearing/Trial Setting and Evidentiary Hearing (if necessary) set for 3/6/2017 at 2:00 PM are vacated and 3/13/2017 02:00 PM in Courtroom 4B before Judge Cynthia Bashant.(no document attached) (sxm) (Entered: 03/03/2017) |
| 03/03/2017 | 41 | NOTICE OF HEARING as to Defendant Jeffrey Lawrence Valdes. Status Hearing Re Dismissal set for 3/7/2017 02:00 PM in Courtroom 2A before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 03/03/2017) |
| 03/06/2017 | 42 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. On the courts own motion the Status Hearing Re Dismissal is rescheduled to 3/7/2017 01:00 PM in Courtroom 2A before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 03/06/2017) |
| 03/07/2017 | 43 | Minute Entry for proceedings held before Magistrate Judge William V. Gallo: Status Hearing re Dismissal as to Jeffrey Lawrence Valdes held on 3/7/2017. DISMISSAL OF COUNTS without prejudice on Government Motion as to Jeffrey Lawrence Valdes. (CD# 3/7/2017 WVG17 1:14 - 1:52). (Plaintiff Attorney Susan Park-AUSA). (Defendant Attorney Roxana Sandoval-FD). (no document attached) (mtb) (Entered: 03/08/2017) |
| 03/07/2017 | 44 | JUDGMENT OF DISMISSAL in Criminal Case as to Jeffrey Lawrence Valdes (1). Count(s) 1: Government's oral motion to dismiss without prejudice - Granted. Signed by Magistrate Judge William V. Gallo on 3/7/2017. (jah) (Entered: 03/08/2017) |
| 03/07/2017 | 45 | ABSTRACT OF ORDER Releasing Jeffrey Lawrence Valdes re 44 Judgment of Dismissal in Criminal Case. Case dismissed, charges pending in 17cr503-BAS. (jah) (Entered: 03/08/2017) |
| 03/07/2017 | 46 | ABSTRACT OF ORDER Releasing Material Witness Fortino Apolinar-Martinez, re 44 Judgment of Dismissal in Criminal Case. (jah) (Entered: 03/08/2017) |
| 03/07/2017 | 47 | ABSTRACT OF ORDER Releasing Material Witness Flavio Cesar Manuel-Obando, re 44 Judgment of Dismissal in Criminal Case. (jah) (Entered: 03/08/2017) |
| 03/09/2017 | 48 | Judgment of Dismissal Returned Executed as to Jeffrey Lawrence Valdes on 3/8/2017. (jah) (Entered: 03/09/2017) |
| 03/23/2017 | 49 | NOTICE OF ATTORNEY APPEARANCE: Karla Davis appearing for USA.(Davis, Karla). Attorney Karla Davis added to party USA (pty:pla). (jah). (Entered: 03/23/2017) |

### PACER Service Center

SER-170

8/14/24, 5:57 PM

CM/ECF - casd

| Transaction Receipt | | | |
|---|---|---|---|
| 08/14/2024 17:17:27 | | | |
| **PACER Login:** | andrewychiang | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:16-cr-02950-BAS |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

SER-171

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JEFFREY LAWRENCE VALDES,<br><br>　　　　Defendant. | Case No.  16CR2950-BAS<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INFORMATION, TO SUPPRESS STATEMENTS, AND TO COMPEL DISCOVERY** |

**EXHIBIT B**

Division of Immigration Health Services                    In–Processing Health Screening Form

Event #: _____                    FINS #: _____

**IMPRINT OF DETAINEE ID PLATE, COMPUTER LABEL OR COMPLETE BELOW:**

| | | |
|---|---|---|
| 1. Name: AKA: Jeffrey Lawrence VALDES | Classification: | Subject ID: |
| 2. DOB: ▉▉▉ | 3. A # ▉▉▉ | |
| 4. Nationality: US | 5. Sex: Male | |
| DIHS LOCATION: | 6. Today's Date: 11-26-16 | |

**SECTION 1: ASK THE DETAINEE:** *(Check the appropriate box)*

Y/N — Have you seen a doctor in the last year?
    If YES, for what?
Y/N — Are you having any pain
    If YES, where?
Y/N — Have you been hospitalized in the past 6 months?
    If YES, for what?
Y/N — Have you ever been treated for problems with drugs or alcohol?
    If YES, when, where, and for what?

Do you now have or have you ever had any of the following?
Y/N — Your skin break out in bumps, or trouble breathing after taking Medication?
Y/N — Sores on your privates, or a drip from your privates?
Y/N — The whites of your eyes or your nails turn yellow?
Y/N — Fits or seizures?
Y/N — Trouble peeing?
Y/N — Persistent cough (of more than 3 weeks duration)?
Y/N — Hemoptysis (coughing up blood)
Y/N — Not been able to eat with a significant weight loss?
Y/N — A persistent fever?
Y/N — Night sweats?
Y/N — Weakness / lethargy (tired)?
Y/N — Are you afraid you might loose your mind or go crazy?
Y/N — Are you afraid you might hurt or kill yourself or others?
Y/N — If female, are you pregnant?

Please mark any bruises, scars, cuts, or other marks or distinguishing physical characteristics in the diagrams below, and notify the DIHS medical officer if you feel that the detainee needs any kind of medical evaluation.

**SECTION II: YOUR OBSERVATIONS OF THE DETAINEE** *(Check the appropriate box)*

Does the detainee appear to be:
Y/N — Not doing what you tell him to do?
Y/N — Acting crazy or strange?
Y/N — Sweating a lot?
Y/N — Malnourished?

Does the detainee appear to be:
Y/N — Shaking / Tremors?
Y/N — Skin broken out in bumps / rash?
Y/N — Cuts or bruises?

Y/N — Needle tracks?
Y/N — A handicap?

**SECTION III: DETAINEE SENT TO** *(Check appropriate number)*
1. General population
2. General population with referral to medical care
3. Referral for immediate medical care
4. Isolation until medically evaluated

_____
*Signature of individual completing the form*

Cabren Hectr
*Printed name of individual completing the form*

Form DIHS-794 (3/05)          THIS FORM WILL BE SENT TO THE MEDICAL CLINIC AFTER IT IS COMPLETED

000154

CM/ECF - casd

CLOSED,RELATED,SEALDC

# U.S. District Court
## Southern District of California (San Diego)
## CRIMINAL DOCKET FOR CASE #: 3:17-cr-00503-BAS-1

Case title: USA v. Valdes                    Date Filed: 02/28/2017

                                              Date Terminated: 05/23/2017

Assigned to: Judge Cynthia Bashant

**Defendant (1)**

**Jeffrey Lawrence Valdes**                    represented by    **Federal Defenders**
*TERMINATED: 05/23/2017*                                         Federal Defenders of San Diego
                                                                225 Broadway
                                                                Suite 900
                                                                San Diego, CA 92101-5008
                                                                (619)234-8467
                                                                Fax: (619)687-2666
                                                                Email: cassd_ecf@fd.org
                                                                *TERMINATED: 04/26/2017*
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Designation: Public Defender or*
                                                                *Community Defender Appointment*

                                                                **Roxana Sandoval**
                                                                Federal Defenders of San Diego
                                                                225 Broadway
                                                                Suite 900
                                                                San Diego, CA 92101
                                                                (619)234-8467
                                                                Fax: (619)687-2666
                                                                Email: Roxana_Sandoval@fd.org
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Designation: Public Defender or*
                                                                *Community Defender Appointment*

**Pending Counts**                                              **Disposition**

8:1324(a)(1)(A)(ii),(v)(II),(a)(1)(B)(i) -                      Dft committed to the BOP for a term of 27
Transportation of Certain Aliens and Aiding                    months, supervised release for 3 years, no
and Abetting                                                    fine, assessment $100
(2)

**Highest Offense Level (Opening)**

Felony

CM/ECF - casd

## Terminated Counts

8:1324(a)(1)(A)(ii),(v)(II),(a)(1)(B)(i) -
Transportation of Certain Aliens and Aiding
and Abetting
(1)

18:758 - High Speed Flight From
Immigration Checkpoint
(3)

## Disposition

Government motion to dismiss remaining
count granted

Government motion to dismiss remaining
count granted

## Highest Offense Level (Terminated)

Felony

## Complaints

None

## Disposition

---

## Material Witness

**Fortino Apolinar-Martinez**                     represented by **Kevin Milmoe**
Law Office of Kevin Milmoe
110 West C Street
1300
San Diego, CA 92101
(619)850-7400
Fax: (619) 696-9680
Email: milmoelaw@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States*
*Attorney*

---

## Material Witness

**Flavio Cesar Manuel-Obando**                    represented by **Kevin Milmoe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States*
*Attorney*

---

## Plaintiff

**USA**                                            represented by **U S Attorney CR**
U S Attorneys Office Southern District of
California
Criminal Division
880 Front Street
Room 6293

SER-175

San Diego, CA 92101
(619)557-5610
Fax: (619)557-5917
Email: Efile.dkt.gc2@usdoj.gov
*TERMINATED: 03/03/2017*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States*
*Attorney*

**Francis Anthony DiGiacco**
U S Attorneys Office
880 Front Street
Room 6293
San Diego, CA 92101
619-546-6771
Email: francis.digiacco@usdoj.gov
*(Inactive)*
*TERMINATED: 04/23/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States*
*Attorney*

**Karla Davis**
U S Attorney's Office
Southern District of California
880 Front Street, Room 6293
San Diego, CA 92101
619-546-6741
Fax: 619-546-0510
Email: karla.davis@usdoj.gov *(Inactive)*
*TERMINATED: 04/26/2017*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States*
*Attorney*

**Stephen H. Wong**
United States Attorney's Office
880 Front Street
Room 6293
San Diego, CA 92101-8893
(619) 546-9464
Fax: (619) 546-0474
Email: stephen.wong@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States*
*Attorney*

**Susan L. Park**
United States Attorneys Office
880 Front Street

SER-176

CM/ECF - casd

Room 6293
San Diego, CA 92101
619-546-6760
Fax: 619-546-0510
Email: susan.park2@usdoj.gov *(Inactive)*
*TERMINATED: 04/23/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: *Assistant United States Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/28/2017 | 1 | INDICTMENT as to Jeffrey Lawrence Valdes (1) count(s) 1-2, 3. (lrf)(jrd) (Entered: 02/28/2017) |
| 02/28/2017 | 2 | NOTICE OF RELATED CASE(S) by USA of case(s): 16-CR-2950-BAS. (lrf)(jrd) (Entered: 02/28/2017) |
| 02/28/2017 | 3 | ***English. No Interpreter needed as to Jeffrey Lawrence Valdes. (no document attached) (lrf)(jrd) (Entered: 02/28/2017) |
| 03/01/2017 | 4 | Set/Reset Duty Hearings as to Jeffrey Lawrence Valdes: Arraignment on Indictment set for 3/2/2017 at 2:00pm before Magistrate Judge Karen S. Crawford. (no document attached) (cxl) (Entered: 03/01/2017) |
| 03/01/2017 | 5 | NOTICE OF HEARING as to Defendant Jeffrey Lawrence Valdes. Arraignment on Indictment set for 3/2/2017 at 2:00pm before Magistrate Judge Karen S. Crawford. (no document attached) (cxl) (Entered: 03/01/2017) |
| 03/02/2017 | 6 | Minute Entry for proceedings held before Magistrate Judge Karen S. Crawford: Initial Appearance/Arraignment on Indictment Counts 1-3 as to Jeffrey Lawrence Valdes held on 3/2/2017. Court appointed Federal Defenders for Jeffrey Lawrence Valdes. Defendant Arraigned and Not Guilty plea entered. No Bond set as to Jeffrey Lawrence Valdes (1). Motion Hearing/Trial Setting set for 3/6/2017 at 2:00 PM before Judge Cynthia Bashant. (CD# 3/2/2017 KSC: 2:15-2:17). (Plaintiff Attorney Abbey Jahnke, AUSA). (Defendant Attorney Gerloni Cotton, FD - S/A). (no document attached) (dls) (Entered: 03/03/2017) |
| 03/03/2017 | 7 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. Motion Hearing/Trial Setting set for 3/6/2017 at 2:00 PM is vacated and reset for 3/13/2017 02:00 PM in Courtroom 4B before Judge Cynthia Bashant. (no document attached) (sxm) (Entered: 03/03/2017) |
| 03/03/2017 | 8 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. Change of Plea Hearing set for 3/7/2017 02:00 PM in Courtroom 2A before Magistrate Judge William V. Gallo. ****All Plea paperwork must be submitted to the 12th floor clerks office by 12:00 PM or earlier the day of the hearing. If plea paperwork is not received the matter will be taken off calendar.**** (no document attached) (mtb) (Entered: 03/03/2017) |
| 03/06/2017 | 9 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. On the Courts own motion the Change of Plea Hearing is reset for 3/7/2017 01:00 PM in Courtroom 2A before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 03/06/2017) |
| 03/07/2017 | 10 | Minute Entry for proceedings held before Magistrate Judge William V. Gallo: Change of Plea Hearing as to Jeffrey Lawrence Valdes held on 3/7/2017. Plea Tendered by Jeffrey Lawrence Valdes Guilty on counts Count 2 of Indictment. Excludable(s) started as to |

SER-177

| | | |
|---|---|---|
| | | Jeffrey Lawrence Valdes: XK 3/7/2017 - 5/22/2017. PSR Ordered. Sentence With PSR set for 5/22/2017 09:00 AM before Judge Cynthia Bashant. All previously set hearing dates vacated. Stipulation to release M/W's filed; Abstracts issued. (CD# 3/7/2017 WVG17 1:14 - 1:52). (Plaintiff Attorney Susan Park-AUSA). (Defendant Attorney Sandra Hourani-FD). (no document attached) (mtb) (Entered: 03/08/2017) |
| 03/07/2017 | 11 | STIPULATION OF FACT AND JOINT MOTION FOR RELEASE OF MATERIAL WITNESS(ES) Flavio Cesar Manuel-Obando, Fortino Apolinar-Martinez as to defendant Jeffrey Lawrence Valdes and Order Thereon. Signed by Magistrate Judge William V. Gallo on 3/7/2017. (jah) (Entered: 03/08/2017) |
| 03/07/2017 | 12 | ABSTRACT OF ORDER Releasing Material Witness Fortino Apolinar-Martinez, re 11 Stipulation of Fact and Joint Motion for Release of M/W. (jah) (Entered: 03/08/2017) |
| 03/07/2017 | 13 | ABSTRACT OF ORDER Releasing Material Witness Flavio Cesar Manuel-Obando, re 11 Stipulation of Fact and Joint Motion for Release of M/W. (jah) (Entered: 03/08/2017) |
| 03/07/2017 | 14 | CONSENT TO RULE 11 PLEA before Magistrate Judge William V. Gallo by Jeffrey Lawrence Valdes. (jah) (Entered: 03/08/2017) |
| 03/07/2017 | 15 | PLEA AGREEMENT as to Jeffrey Lawrence Valdes. (jah) (Entered: 03/08/2017) |
| 03/09/2017 | 16 | FINDINGS AND RECOMMENDATION of the Magistrate Judge upon a Tendered Plea of Guilty as to Jeffrey Lawrence Valdes: Recommending that the district judge accept the defendant's plea of guilty. Signed by Magistrate Judge William V. Gallo on 3/7/2017. (mtb) (Entered: 03/09/2017) |
| 03/23/2017 | 17 | NOTICE OF ATTORNEY APPEARANCE: Karla Davis appearing for USA. (Davis, Karla). (pty:pla). (jah). (Entered: 03/23/2017) |
| 03/29/2017 | 18 | ORDER ACCEPTING GUILTY PLEA as to Count Two (2) of the Indictment, as to Jeffrey Lawrence Valdes, adopting 16 Findings and Recommendation. Signed by Judge Cynthia Bashant on 3/29/2017. (sxm) (Entered: 03/29/2017) |
| 04/19/2017 | 19 | PRE-SENTENCE REPORT as to Jeffrey Lawrence Valdes. Report prepared by: Michael Morrill. (Document applicable to USA, Jeffrey Lawrence Valdes.) (Attachments: # 1 Late letter)(Cruz_USPO, M. A.) . (jah). (Entered: 04/19/2017) |
| 04/26/2017 | 20 | NOTICE OF ATTORNEY APPEARANCE: Roxana Sandoval appearing for Jeffrey Lawrence Valdes (Sandoval, Roxana). Attorney Roxana Sandoval added to party Jeffrey Lawrence Valdes (pty:dft). (jah). (Entered: 04/26/2017) |
| 04/26/2017 | 21 | NOTICE OF ATTORNEY APPEARANCE: Susan L. Park appearing for USA. (Park, Susan). (jah). (Entered: 04/26/2017) |
| 05/08/2017 | 22 | OBJECTION TO PRESENTENCE INVESTIGATION REPORT by Jeffrey Lawrence Valdes (Attachments: # 1 Exhibit A-E)(Sandoval, Roxana). (jah). (Entered: 05/08/2017) |
| 05/10/2017 | 23 | ADDENDUM TO PRE-SENTENCE REPORT as to Jeffrey Lawrence Valdes. Report prepared by: Michael Morrill. (Document applicable to USA, Jeffrey Lawrence Valdes.) (Cruz_USPO, M. A.) (Entered: 05/10/2017) |
| 05/15/2017 | 24 | SENTENCING MEMORANDUM by Jeffrey Lawrence Valdes (Attachments: # 1 Exhibit A-E)(Sandoval, Roxana). (jah). (Entered: 05/15/2017) |
| 05/15/2017 | 25 | SENTENCING SUMMARY CHART and Motion under USSG § 3E1.1(b) by USA as to Jeffrey Lawrence Valdes (Park, Susan). (jah). (Entered: 05/15/2017) |
| 05/15/2017 | 26 | SENTENCING SUMMARY CHART by Jeffrey Lawrence Valdes (Sandoval, Roxana). (jah). (Entered: 05/15/2017) |

8/14/24, 5:58 PM                                                    CM/ECF - casd

| | | |
|---|---|---|
| 05/15/2017 | 27 | SENTENCING MEMORANDUM by USA as to Jeffrey Lawrence Valdes (Park, Susan). (jah). (Entered: 05/15/2017) |
| 05/22/2017 | 28 | Minute Entry for proceedings held before Judge Cynthia Bashant: Sentence With PSR Hearing held on 5/22/2017 for Jeffrey Lawrence Valdes (1). Count(s) 2, Dft committed to the BOP for a term of 27 months, supervised release for 3 years, no fine, assessment $100, appeal rights waived. Count(s) 1, 3, Government motion to dismiss remaining count granted. (Court Reporter/ECR Ellen Simone). (Plaintiff Attorney Susan Park AUSA). (Defendant Attorney Roxana Sandoval FD). (no document attached) (sxm) (Entered: 05/22/2017) |
| 05/23/2017 | 29 | JUDGMENT as to Jeffrey Lawrence Valdes (1). Count(s) 2, Dft committed to the BOP for a term of 27 months, supervised release for 3 years, no fine, assessment $100. Count(s) 1, 3, Government motion to dismiss remaining count granted. Signed by Judge Cynthia Bashant (sxm) (jao). (Entered: 05/23/2017) |
| 02/28/2020 | 33 | USPO Request for Warrant or Summons for Offender under Supervision and Order thereon in case as to Jeffrey Lawrence Valdes. Signed by Judge Cynthia Bashant on 02/26/2020. ( Warrant Ordered) (Quimpo, M.) (Entered: 02/28/2020) |
| 02/28/2020 | 34 | ARREST WARRANT ISSUED by Judge Cynthia Bashant in case as to Jeffrey Lawrence Valdes. (vxc) (Entered: 02/28/2020) |
| 04/22/2020 | | Arrest of Jeffrey Lawrence Valdes. (no document attached) (als) (Entered: 04/22/2020) |
| 04/22/2020 | 35 | Set/Reset Duty Hearings as to Jeffrey Lawrence Valdes: Initial Appearance - Revocation of Supervised Release set for 4/22/2020 before Magistrate Judge William V. Gallo. (no document attached) (als) (Entered: 04/22/2020) |
| 04/22/2020 | 36 | Minute Entry for proceedings held before Magistrate Judge William V. Gallo: Status Hearing re IA - Revocation of Supervised Release as to Jeffrey Lawrence Valdes held on 4/22/2020. Defendant not appearing. ( Initial Appearance - Revocation of Supervised Release set for 4/23/2020 before Magistrate Judge William V. Gallo.) (CD# 4/22/2020 WVG 20-1:2:47-2:48). (Plaintiff Attorney Randy Grossman AUSA). (Defendant Attorney Samantha Jaffe - FD-S/A). (no document attached) (aje) (Entered: 04/23/2020) |
| 04/23/2020 | 37 | NOTICE OF ATTORNEY APPEARANCE Francis Anthony DiGiacco appearing for USA. (DiGiacco, Francis)Attorney Francis Anthony DiGiacco added to party USA(pty:pla) (jmo). (Entered: 04/23/2020) |
| 04/23/2020 | 38 | Minute Entry for proceedings held before Magistrate Judge William V. Gallo: Initial Appearance - Revocation of Supervised Release as to Jeffrey Lawrence Valdes held on 4/23/2020. Dft arraigned and denial entered. Federal Defenders re-appointed as counsel. Defendant request for bond is granted. Bond set as to Jeffrey Lawrence Valdes (1) $10,000 PS secured by 2 FRAs. Court having asked if the defendant has any evidence to present on the merits of the petition and after considering any such evidence, the court found based on the allegations in the petition that there is probable cause to believe that a violation has been committed, and that the defendant shall be held pending an order to show cause hearing before the district judge assigned to this matter. Court ruling is without prejudice.( Preliminary Revocation of Supervised Release Hearing set for 5/19/2020 02:00 PM before Magistrate Judge William V. Gallo.) (CD# 4/23/2020 WVG 20-1:2:08-2:24). (Plaintiff Attorney Randy Grossman AUSA). (Defendant Attorney Roxana Sandoval FD). (no document attached) (aje) (Entered: 04/24/2020) |
| 04/23/2020 | 39 | Supervised Release Order. Bond set for Jeffrey Lawrence Valdes (1) $10,000 P/S. Signed by Magistrate Judge William V. Gallo on 4/23/20. (jmo) (Entered: 04/24/2020) |

SER-179

| | | |
|---|---|---|
| 04/27/2020 | 40 | P/S Bond Filed as to Jeffrey Lawrence Valdes in amount of $ 10,000, Signed by Magistrate Judge William V. Gallo on 4/27/2020. (mtb) (Main Document 40 replaced on 4/29/2020) (mtb). (Entered: 04/27/2020) |
| 04/27/2020 | 41 | Arrest Warrant Returned Executed on 4/22/20, in case as to Jeffrey Lawrence Valdes, re 34 Warrant Issued - Supervised Release/Probation. (jmo) (Entered: 04/27/2020) |
| 04/27/2020 | 42 | ABSTRACT OF ORDER Releasing Jeffrey Lawrence Valdes re 40 Bond. (jmo) (Entered: 04/27/2020) |
| 05/13/2020 | 43 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. At request of defense counsel the Preliminary Revocation of Supervised Release Hearing is continued to 7/23/2020 02:00 PM before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 05/13/2020) |
| 07/07/2020 | 44 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. At request of defense counsel the Preliminary Revocation of Supervised Release Hearing is continued to 9/8/2020 02:00 PM before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 07/07/2020) |
| 09/04/2020 | 45 | NOTICE OF CHANGE OF HEARING (JUDGE AND TIME) as to Defendant Jeffrey Lawrence Valdes. On Court's own motion, Preliminary Revocation of Supervised Release Hearing RESET for 9/8/2020 02:20 PM before Magistrate Judge Michael S. Berg. (mmr) (Entered: 09/04/2020) |
| 09/04/2020 | 46 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. At the request of defense counsel, Preliminary Revocation of Supervised Release Hearing set for 11/12/2020 02:00 PM before Magistrate Judge William V. Gallo. ****Acknowledgement of next court due 9/11/20.**** (no document attached) (mmr) (Entered: 09/04/2020) |
| 09/24/2020 | 47 | Acknowledgment of next court date by defendant Jeffrey Lawrence Valdes to appear on 11/12/20. (Sandoval, Roxana) (jmo). (Entered: 09/24/2020) |
| 11/09/2020 | 48 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. On the Court's own motion the Preliminary Revocation of Supervised Release Hearing is reset for 12/17/2020 02:00 PM before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 11/09/2020) |
| 11/12/2020 | 49 | **DOCUMENT WITHDRAWN BY FILER PER NOTICE OF WITHDRAWAL 50 ** Acknowledgment of next court date by defendant Jeffrey Lawrence Valdes to appear on 12/17/20. (Clark, Lauren) Modified on 11/13/2020 to withdraw document (jmo). (Entered: 11/12/2020) |
| 11/12/2020 | 50 | NOTICE OF WITHDRAWAL OF DOCUMENT filed by Jeffrey Lawrence Valdes (Clark, Lauren) (jmo). (Entered: 11/12/2020) |
| 11/12/2020 | 51 | Acknowledgment of next court date by defendant Jeffrey Lawrence Valdes to appear on 12/17/20. (Sandoval, Roxana) (jmo). (Entered: 11/12/2020) |
| 12/16/2020 | 52 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. At request of defense counsel the Preliminary Revocation of Supervised Release Hearing is continued to 1/28/2021 02:00 PM before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 12/16/2020) |
| 12/17/2020 | 53 | Acknowledgment of next court date by defendant Jeffrey Lawrence Valdes to appear on 1/28/21. (Sandoval, Roxana) (jmo). (Entered: 12/17/2020) |
| 01/27/2021 | 54 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. At request of defense counsel the Preliminary Revocation of Supervised Release Hearing is |

SER-180

CM/ECF - casd

| | | continued to 4/13/2021 02:00 PM before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 01/27/2021) |
|---|---|---|
| 02/03/2021 | 55 | Acknowledgment of next court date by defendant Jeffrey Lawrence Valdes to appear on 4/13/21. (Sandoval, Roxana) (jmo). (Entered: 02/03/2021) |
| 04/12/2021 | 56 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. Preliminary Revocation of Supervised Release Hearing reset for 5/19/2021 02:00 PM before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 04/12/2021) |
| 04/22/2021 | 57 | NOTICE OF ATTORNEY APPEARANCE Stephen H. Wong appearing for USA. (Wong, Stephen)Attorney Stephen H. Wong added to party USA(pty:pla) (jmo). (Entered: 04/22/2021) |
| 05/18/2021 | 58 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. On the Court's own motion the Preliminary Revocation of Supervised Release Hearing reset for 6/14/2021 02:00 PM before Magistrate Judge William V. Gallo.(no document attached) (mtb) (Entered: 05/18/2021) |
| 06/02/2021 | 59 | Acknowledgment of next court date by defendant Jeffrey Lawrence Valdes to appear on 6/14/21. (Sandoval, Roxana)(jmo). (Entered: 06/02/2021) |
| 06/11/2021 | 60 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. On the Court's own motion the Preliminary Revocation of Supervised Release Hearing is continued to 7/20/2021 02:00 PM before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 06/11/2021) |
| 07/16/2021 | 61 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. On the Court's own motion the Preliminary Revocation of Supervised Release Hearing is continued to 8/26/2021 02:00 PM before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 07/16/2021) |
| 08/17/2021 | 62 | **DOCUMENT WITHDRAWN BY FILER PER ECF NO. 63 ** MOTION to Dismiss *OSC petition and for order exonerating bond* by Jeffrey Lawrence Valdes. (Sandoval, Roxana) Modified on 8/18/2021 to withdraw and term (jmo). (Entered: 08/17/2021) |
| 08/17/2021 | 63 | NOTICE OF WITHDRAWAL OF DOCUMENT filed by Jeffrey Lawrence Valdes (Sandoval, Roxana) (jmo). (Entered: 08/17/2021) |
| 08/17/2021 | 64 | Joint MOTION to Dismiss *OSC petition and for order exonerating bond* by Jeffrey Lawrence Valdes. (Attachments: # 1 Exhibit A)(Sandoval, Roxana) (jmo). (Entered: 08/17/2021) |
| 08/18/2021 | 65 | Order Granting Motion to Dismiss and for Order Exonerating Bond 64 as to Jeffrey Lawrence Valdes (1). Petition for Warrant or Summons for Offender under Supervision is dismissed. Signed by Judge Cynthia Bashant on 8/18/21. (defendant on bond no abstract per crd)(jmo) (Entered: 08/18/2021) |
| 08/25/2021 | 66 | NOTICE OF CHANGE OF HEARING as to Defendant Jeffrey Lawrence Valdes. On the Court's own motion the Preliminary Revocation of Supervised Release Hearing is continued to 9/23/2021 02:00 PM before Magistrate Judge William V. Gallo. (no document attached) (mtb) (Entered: 08/25/2021) |
| 08/25/2021 | 67 | NOTICE of Vacated Hearing(s) the Preliminary Revocation of Supervised Release Hearing set for 9/23/2021 02:00 PM before Magistrate Judge William V. Gallo is vacated. (no document attached) (mtb) (Entered: 08/25/2021) |

SER-181

8/14/24, 5:58 PM                                    CM/ECF - casd

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/14/2024 17:51:32 | | |
| **PACER Login:** | andrewychiang | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:17-cr-00503-BAS |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

SER-182

FILED

17 FEB 28 PM 3:59

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

September 2016 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JEFFREY LAWRENCE VALDES,<br><br>    Defendant. | Case No.  17 CR 0503 BAS<br><br>I N D I C T M E N T<br><br>Title 8, U.S.C.,<br>Sec. 1324(a)(1)(A)(ii), (v)(II)<br>and (a)(1)(B)(i) – Transportation<br>of Certain Aliens and Aiding and<br>Abetting; Title 18, U.S.C.,<br>Sec. 758 - High Speed Flight From<br>Immigration Checkpoint |

The grand jury charges:

Count 1

On or about November 25, 2016, within the Southern District of California, defendant JEFFREY LAWRENCE VALDES, knowing and in reckless disregard of the fact that an alien, namely, Fortino Apolinar-Martinez, had come to, entered and remained in the United States in violation of law, did knowingly transport and move, said alien, within the United States, in order to help said alien remain in the United States illegally, and which was done for the purpose of commercial advantage and private financial gain; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii), (v)(II) and (a)(1)(B)(i).

//

SLP:lml(nlv):San Diego:2/28/17

<div align="center">Count 2</div>

On or about November 25, 2016, within the Southern District of California, defendant JEFFREY LAWRENCE VALDES, knowing and in reckless disregard of the fact that an alien, namely, Flavio Cesar Manuel-Obando, had come to, entered and remained in the United States in violation of law, did knowingly transport and move, said alien, within the United States, in order to help said alien remain in the United States illegally, and which was done for the purpose of commercial advantage and private financial gain; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii), (v)(II) and (a)(1)(B)(i).

<div align="center">Count 3</div>

On or about November 25, 2016, within the Southern District of California, defendant JEFFREY LAWRENCE VALDES, while in a motor-vehicle, did willfully flee and evade a checkpoint operated by the Border Patrol, a federal law enforcement agency, and did flee federal law enforcement agents at a speed in excess of the legal speed limit; in violation of Title 18, United States Code, Section 758.

DATED: February 28, 2017.

A TRUE BILL:

Foreperson

ALANA W. ROBINSON
Acting United States Attorney

By:
SUSAN L. PARK
Assistant U.S. Attorney

<div align="center">2</div>

**FILED**

MAY 23 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

AO 245B (CASDRev. 08/13) Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | (For Offenses Committed On or After November 1, 1987) |
| JEFFREY LAWRENCE VALDES (1) | |

Case Number:   17CR0503-BAS

ROXANA SANDOVAL OF FEDERAL DEFENDERS
Defendant's Attorney

REGISTRATION NO.   59134298

☐ –

☒ pleaded guilty to count(s)   TWO (2) OF THE INDICTMENT

☐ was found guilty on count(s) _____

after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offense(s):

| Title & Section | Nature of Offense | Count Number(s) |
|---|---|---|
| 8 USC 1324(a)(1)(A)(ii), (v)(II) AND (a)(1)(B)(i) | TRANSPORTATION OF CERTAIN ALIENS AND AIDING AND ABETTING | 2 |

The defendant is sentenced as provided in pages 2 through _____4_____ of this judgment.

The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Count(s)   REMAINING _____ are   dismissed on the motion of the United States.

☒ Assessment: $100.00
–

☒ No fine   ☐ Forfeiture pursuant to order filed _____, included herein.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

MAY 22, 2017
Date of Imposition of Sentence

HON. CYNTHIA BASHANT
UNITED STATES DISTRICT JUDGE

17CR0503-BAS

AO 245B (CASD Rev. 08/13) Judgment in a Criminal Case

| | | |
|---|---|---|
| DEFENDANT: | JEFFREY LAWRENCE VALDES (1) | Judgment - Page **2** of **4** |
| CASE NUMBER: | 17CR0503-BAS | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of:
TWENTY SEVEN (27) MONTHS

☐   Sentence imposed pursuant to Title 8 USC Section 1326(b).

☒   The court makes the following recommendations to the Bureau of Prisons:
THE COURT RECOMMENDS THE DEFENDANT BE PLACED IN THE BOP RESIDENTIAL DRUG
AND ALCOHOL PROGRAM (RDAP).

☐   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____ A.M.    on _____

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of
Prisons:

    ☐   on or before

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____   to _____

at _____ , with a certified copy of this judgment.

_____

UNITED STATES MARSHAL

_____

By _____    DEPUTY UNITED STATES MARSHAL

17CR0503-BAS

Case 3:17-cr-00503-BAS   Document 29   Filed 05/23/17   PageID.125   Page 3 of 4

AO 245B (CASD Rev. 08/13) Judgment in a Criminal Case

| | | |
|---|---|---|
| DEFENDANT: | JEFFREY LAWRENCE VALDES (1) | Judgment - Page **3** of 4 |
| CASE NUMBER: | 17CR0503-BAS | |

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:
THREE (3) YEARS.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons unless removed from the United States.

The defendant shall not commit another federal, state or local crime.

*For offenses committed on or after September 13, 1994:*

The defendant shall not illegally possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter as determined by the court. Testing requirements will not exceed submission of more than 4 drug tests per month during the term of supervision, unless otherwise ordered by court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (*Check, if applicable.*)

☒ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

☒ The defendant shall cooperate in the collection of a DNA sample from the defendant, pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000, pursuant to 18 USC section 3583(a)(7) and 3583(d).

☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. (*Check if applicable.*)

☐ The defendant shall participate in an approved program for domestic violence. (*Check if applicable.*)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court. The defendant shall also comply with any special conditions imposed.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

17CR0503-BAS

AO 245B (CASD Rev. 08/13) Judgment in a Criminal Case

| | | |
|---|---|---|
| DEFENDANT: | JEFFREY LAWRENCE VALDES (1) | Judgment - Page **4** of **4** |
| CASE NUMBER: | 17CR0503-BAS | |

## SPECIAL CONDITIONS OF SUPERVISION

1. Participate in a program of drug or alcohol abuse treatment, including drug testing and counseling, as directed by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. May be required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on ability to pay.

2. Report all vehicles owned or operated, or in which you have an interest, to the probation officer.

3. Reside in a Residential Reentry Center (RRC) as directed by the probation officer for a period of up to 120 days (non-punitive).

4. Submit your person, property, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

//
//
//

17CR0503-BAS

CM/ECF - casd

CLOSED

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:20-cv-02060-DMS-KSC

| | |
|---|---|
| Valencia-Ayala et al v. U.S. Immigration and Customs Enforcement et al | Date Filed: 10/19/2020 |
| Assigned to: Judge Dana M. Sabraw | Date Terminated: 04/28/2021 |
| Referred to: Magistrate Judge Karen S. Crawford | Jury Demand: None |
| Cause: 05:0706 Judicial Review of Agency Action | Nature of Suit: 899 Other Statutes: Administrative Procedures Act/Review or Appeal of Agency Decision |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**Pedro Valencia-Ayala**
*TERMINATED: 11/09/2020*

represented by **James Michael Johnson**
Johnson Trial Law, LLC
125 Clairemont Avenue
Suite 170
Decatur, GA 30030
470-851-9149
Email: james@johnsontrial.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeremy Delicino**
550 West C Street
Suite 620
San Diego, CA 92101
801-364-6474
Email: jeremy@jeremydelicino.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Filadelfo Morales-Roblero**
*TERMINATED: 11/09/2020*

represented by **James Michael Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeremy Delicino**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Andrea Contreras-Vergara**
*TERMINATED: 11/09/2020*

represented by **James Michael Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

SER-189

8/19/24, 9:49 AM                                    CM/ECF - casd

                                                             **Jeremy Delicino**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bertin Cruz-Ibarra**                  represented by   **James Michael Johnson**
*TERMINATED: 11/09/2020*                                (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeremy Delicino**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Oliser Hernandez**                    represented by   **James Michael Johnson**
*TERMINATED: 11/09/2020*                                (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeremy Delicino**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mauro Varela-Gomez**                  represented by   **James Michael Johnson**
*TERMINATED: 11/09/2020*                                (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeremy Delicino**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alvaro Pastor-Narcizo**               represented by   **James Michael Johnson**
*TERMINATED: 11/09/2020*                                (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeremy Delicino**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Armando Escobar-Mejia**               represented by   **James Michael Johnson**
*TERMINATED: 11/09/2020*                                (See above for address)
                                                        *LEAD ATTORNEY*

SER-190

*ATTORNEY TO BE NOTICED*

**Jeremy Delicino**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Luis Chavac-Boror**                    represented by    **James Michael Johnson**
*TERMINATED: 11/09/2020*                                   (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Jeremy Delicino**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Elizeo Velazquez-Hernandez**           represented by    **James Michael Johnson**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Jeremy Delicino**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Orellana-Ardon**                 represented by    **James Michael Johnson**
*TERMINATED: 11/09/2020*                                   (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Jeremy Delicino**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeronimo Fernandez-Ferrer**            represented by    **James Michael Johnson**
*TERMINATED: 11/09/2020*                                   (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Jeremy Delicino**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

SER-191

8/19/24, 9:49 AM                                          CM/ECF - casd

**Juan Velazquez-Morales**                    represented by   **James Michael Johnson**
*TERMINATED: 11/09/2020*                                     (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Jeremy Delicino**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rigoberto Campos-Atrisco**                  represented by   **James Michael Johnson**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Jeremy Delicino**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Erick Aranda-Moreno**                       represented by   **James Michael Johnson**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Jeremy Delicino**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Fernando Girarte-Alcala**                   represented by   **James Michael Johnson**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jose Carillo-Valdez**                       represented by   **James Michael Johnson**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. Immigration and Customs               represented by   **U S Attorney CV**
Enforcement**                                                U S Attorneys Office Southern District of
                                                             California
                                                             Civil Division
                                                             880 Front Street
                                                             Suite 6253

SER-192

San Diego, CA 92101
(619)557-5662
Fax: (619)557-7122
Email: Efile.dkt.civ@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine L. Parker**
DOJ-USAO
880 Front Street
Room 6293
San Diego, CA 92101-8807
619-546-7634
Email: katherine.parker@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Tony H. Pham**                                   represented by **U S Attorney CV**
*in his official capacity as Senior Official*                   (See above for address)
*Performing the Duties of the Director*                         *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                   **Katherine L. Parker**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Gregory Archambeault**                           represented by **U S Attorney CV**
*U.S. Department of Homeland Security*                          (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                   **Katherine L. Parker**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Rodney S. Scott**                                represented by **U S Attorney CV**
*Customs and Border Protection*                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                   **Katherine L. Parker**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Aaron Heitke**                                   represented by **U S Attorney CV**
*Customs and Border Protection*                                (See above for address)

CM/ECF - casd

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine L. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Chad Wolf**                                        represented by **U S Attorney CV**
*in his official capacity as Acting Secretary*              (See above for address)
*of the United States Department of*                        *LEAD ATTORNEY*
*Homeland Security*                                          *ATTORNEY TO BE NOTICED*

**Katherine L. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Immigration Lawyers**                      represented by **Andrew K Nietor**
**Association (AILA)**                                        Law Office of Andrew K Nietor
750 B St.
Suite 2330
San Diego, CA 92101
(619)794-2386
Fax: (619)794-2263
Email: andrew@nietorlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/19/2020 | 1 | COMPLAINT Against U.S. Immigration and Customs Enforcement, Tony H. Pham, Gregory Archambeault, Rodney S. Scott, Aaron Heitke, Chad Wolf, filed by Pedro Valencia-Ayala, Filadelfo Morales-Roblero, Andrea Contreras-Vergara, Bertin Cruz-Ibarra, Oliser Hernandez, Mauro Varela-Gomez, Alvaro Pastor-Narcizo, Armando Escobar-Mejia, Luis Chavac-Boror, Elizeo Velazquez-Hernandez, David Orellana-Ardon, Jeronimo Fernandez-Ferrer, Juan Velazquez-Morales, Rigoberto Campos-Atrisco, Erick Aranda-Moreno. (Filing fee $400 - receipt number BCASDC-14710489) (Attachments: # 1 Civil Cover Sheet)<br><br>The new case number is 3:20-cv-2060-DMS-KSC. Judge Dana M. Sabraw and Magistrate Judge Karen S. Crawford are assigned to the case. (Johnson, James)(jms)(jrd) (Entered: 10/20/2020) |
| 10/20/2020 | 2 | Summons Issued.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1.** (jms) (Entered: 10/20/2020) |
| 10/20/2020 | 3 | MOTION for Temporary Restraining Order by Erick Aranda-Moreno, Rigoberto Campos-Atrisco, Luis Chavac-Boror, Andrea Contreras-Vergara, Bertin Cruz-Ibarra, Armando Escobar-Mejia, Jeronimo Fernandez-Ferrer, Oliser Hernandez, Filadelfo Morales-Roblero, David Orellana-Ardon, Alvaro Pastor-Narcizo, Pedro Valencia-Ayala, Mauro Varela- |

SER-194

| | | Gomez, Elizeo Velazquez-Hernandez, Juan Velazquez-Morales. (Attachments: # 1 Exhibit Exhibits and Declarations in Support of Motion for Temporary Restraining Order, # 2 Declaration Ex Parte Application for TRO and Supporting Declaration of James M. Johnson)(Johnson, James) (mme). (Entered: 10/20/2020) |
|---|---|---|
| 10/21/2020 | 4 | ORDER Setting Status Conference re 3 MOTION for Temporary Restraining Order. Status Conference set for 10/21/2020 11:00 AM before Judge Dana M. Sabraw. The parties may appear telephonically. Signed by Judge Dana M. Sabraw on 10/20/2020.(mme) (Entered: 10/21/2020) |
| 10/21/2020 | 5 | ORDER (1) Suspending Civil Arrest and (2) Setting Briefing Schedule. Respondent-Defendants shall file a response to Petitioner-Plaintiffs motion for temporary restraining order on or before October 30, 2020. Petitioner-Plaintiffs may file a reply on or before November 4, 2020. Hearing on the motion is set for November 10, 2020 at 10:00 a.m. Signed by Judge Dana M. Sabraw on 10/21/202.(mme) (Entered: 10/21/2020) |
| 10/21/2020 | 6 | Minute Entry for proceedings held before Judge Dana M. Sabraw: Status Conference held on 10/21/2020. There will be a 3-week suspension of civil arrests by ICE and CBP. ( Motion Hearing set for 11/10/2020 10:00 AM in Courtroom 13A before Judge Dana M. Sabraw.)(Court Reporter/ECR Lee Ann Pence). (Plaintiff Attorney Jeremy Delicino present in court, James Johnson telephonically). (Defendant Attorney All telephonically: Katherine Parker, Samuel Bettwy, Carlos Cantu, David Leshner, Colin McDonald). (no document attached) (jak) (Entered: 10/21/2020) |
| 10/26/2020 | 7 | MOTION for Leave to File *Amicus Curiae Brief (unopposed)* by American Immigration Lawyers Association (AILA). (Attachments: # 1 Exhibit amicus curiae)(Nietor, Andrew)Attorney Andrew K Nietor added to party American Immigration Lawyers Association (AILA)(pty:am) (mme). (Entered: 10/26/2020) |
| 10/26/2020 | 8 | ORDER Granting 7 Motion for Leave to File Amicus Curiae Brief. Signed by Judge Dana M. Sabraw on 10/26/2020. (mme) (Entered: 10/26/2020) |
| 10/26/2020 | 9 | Amicus Curiae Brief In Support of Plaintiff's Motion for a Temporary Restraining Order by American Immigration Lawyers Association (AILA). (Nietor, Andrew) Modified on 10/26/2020 to correct document title (mme). (Entered: 10/26/2020) |
| 10/28/2020 | 10 | Ex Parte MOTION for Leave to File Excess Pages *(Unopposed)* by Gregory Archambeault, Aaron Heitke, Tony H. Pham, Rodney S. Scott, U.S. Immigration and Customs Enforcement, Chad Wolf. (Attachments: # 1 Declaration of Katherine Parker) (Parker, Katherine)Attorney Katherine L. Parker added to party Gregory Archambeault(pty:dft), Attorney Katherine L. Parker added to party Aaron Heitke(pty:dft), Attorney Katherine L. Parker added to party Tony H. Pham(pty:dft), Attorney Katherine L. Parker added to party Rodney S. Scott(pty:dft), Attorney Katherine L. Parker added to party U.S. Immigration and Customs Enforcement(pty:dft), Attorney Katherine L. Parker added to party Chad Wolf(pty:dft) (mme). (Entered: 10/28/2020) |
| 10/29/2020 | 11 | ORDER Granting 10 Defendants Leave to File Excess Pages. Signed by Judge Dana M. Sabraw on 10/29/2020. (mme) (Entered: 10/29/2020) |
| 10/30/2020 | 12 | RESPONSE in Opposition re 3 MOTION for Temporary Restraining Order filed by Gregory Archambeault, Aaron Heitke, Tony H. Pham, Rodney S. Scott, U.S. Immigration and Customs Enforcement, Chad Wolf. (Attachments: # 1 Appendix, # 2 Exhibit, # 3 Declaration SBPA Blazer, # 4 Declaration BPA Frontiera)(Bettwy, Samuel) (mme). (Entered: 10/30/2020) |
| 11/04/2020 | 13 | Ex Parte MOTION for Leave to File Excess Pages by Erick Aranda-Moreno, Rigoberto Campos-Atrisco, Luis Chavac-Boror, Andrea Contreras-Vergara, Bertin Cruz-Ibarra, Armando Escobar-Mejia, Jeronimo Fernandez-Ferrer, Oliser Hernandez, Filadelfo |

SER-195

| | | |
|---|---|---|
| | | Morales-Roblero, David Orellana-Ardon, Alvaro Pastor-Narcizo, Pedro Valencia-Ayala, Mauro Varela-Gomez, Elizeo Velazquez-Hernandez, Juan Velazquez-Morales. (Attachments: # 1 Declaration of James M. Johnson in support of motion)(Johnson, James) (mme). (Entered: 11/04/2020) |
| 11/04/2020 | 14 | ORDER Granting 13 Plaintiffs Leave to File Excess Pages. Plaintiffs may submit a reply of twenty-two (22) pages in support of their motion for temporary restraining order. Signed by Judge Dana M. Sabraw on 11/4/2020. (mme) (Entered: 11/04/2020) |
| 11/04/2020 | 15 | REPLY to Response to Motion re 3 MOTION for Temporary Restraining Order filed by Erick Aranda-Moreno, Rigoberto Campos-Atrisco, Luis Chavac-Boror, Andrea Contreras-Vergara, Bertin Cruz-Ibarra, Armando Escobar-Mejia, Jeronimo Fernandez-Ferrer, Oliser Hernandez, Filadelfo Morales-Roblero, David Orellana-Ardon, Alvaro Pastor-Narcizo, Pedro Valencia-Ayala, Mauro Varela-Gomez, Elizeo Velazquez-Hernandez, Juan Velazquez-Morales. (Johnson, James) (mme). (Entered: 11/04/2020) |
| 11/09/2020 | 16 | AMENDED COMPLAINT against All Defendants, filed by Erick Aranda-Moreno, Rigoberto Campos-Atrisco, Elizeo Velazquez-Hernandez.New Summons Requested. (Johnson, James) (mme). (Entered: 11/09/2020) QC mail sent on 11/10/2020 re change of address (rmc). (Entered: 11/09/2020) |
| 11/10/2020 | 17 | Summons Issued as to First Amended Complaint.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1.** (Attachments: # 1 1)(mme) (Entered: 11/10/2020) |
| 11/10/2020 | 18 | Minute Entry for proceedings held before Judge Dana M. Sabraw: Motion Hearing held on 11/10/2020 re 3 MOTION for Temporary Restraining Order. Court to issue order. (Court Reporter/ECR Lee Ann Pence). (Plaintiff Attorney Jeremy Delicino, James Johnson present in court). (Defendant Attorney Colin McDonald, Samuel Bettwy present in court. Katherine Parker telephonically). (no document attached) (jak) (Entered: 11/10/2020) |
| 11/16/2020 | 19 | ORDER Granting 3 Motion for Temporary Restraining Order. Plaintiffs motion for temporary restraining order is GRANTED. The Court ENJOINS the Department of Homeland Security and its sub-agencies from making a civil immigration arrest of any individual appearing in federal court in the Southern District of California while that individual is present in, or traveling to and from, court. This Order will expire in fourteen (14) days, on November 30, 2020, unless extended for good cause or by Defendants consent. The parties are ordered to meet and confer by no later than November 23, 2020, to attempt resolution of these matters. Absent resolution, the matter will be heard on Plaintiffs motion for preliminary injunction. The parties shall determine a mutually agreeable hearing date and briefing schedule and submit proposed dates to the Court prior to the expiration of this Order. Signed by Judge Dana M. Sabraw on 11/16/2020. (mme) (Entered: 11/16/2020) |
| 11/19/2020 | 20 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Motion Hearing) held on 11/10/2020 before Judge Dana M. Sabraw. Court Reporter/Transcriber: Lee Ann Pence. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 12/10/2020. Redacted Transcript Deadline set for 12/21/2020. Release of Transcript Restriction set for 2/17/2021. (akr) (Entered: 11/20/2020) |

| | | |
|---|---|---|
| 11/30/2020 | 21 | Joint MOTION for Order *regarding Preliminary Injunction Briefing* by Gregory Archambeault, Aaron Heitke, Tony H. Pham, Rodney S. Scott, U.S. Immigration and Customs Enforcement, Chad Wolf. (Parker, Katherine) (mme). (Entered: 11/30/2020) |
| 11/30/2020 | 22 | ORDER Re: Preliminary Injunction Briefing. Signed by Judge Dana M. Sabraw on 11/30/2020. (jmr) (jms). (Entered: 11/30/2020) |
| 12/17/2020 | 23 | Joint MOTION for Extension of Time to File *Joint Supplemental Submission* by Gregory Archambeault, Aaron Heitke, Tony H. Pham, Rodney S. Scott, U.S. Immigration and Customs Enforcement, Chad Wolf. (Parker, Katherine) (mme). (Entered: 12/17/2020) |
| 12/17/2020 | 24 | ORDER Granting 23 Joint Motion for Extension of Time to File. The parties shall submit their joint supplement to the record no later than January 4, 2021. All other aspects of the November 30, 2020 order remain unchanged. Signed by Judge Dana M. Sabraw on 12/17/2020. (mme) (Entered: 12/17/2020) |
| 12/31/2020 | 25 | Joint MOTION for Extension of Time to File *Joint Supplemental Submission* by Gregory Archambeault, Aaron Heitke, Tony H. Pham, Rodney S. Scott, U.S. Immigration and Customs Enforcement, Chad Wolf. (Parker, Katherine) (mme). (Entered: 12/31/2020) |
| 01/04/2021 | 26 | ORDER Granting 25 Joint Motion for Extension of Time to File. The parties shall submit their joint supplement to the record no later than January 6, 2021. All other aspects of the November 30, 2020 order remain unchanged. Signed by Judge Dana M. Sabraw on 1/4/21. (mme) (Entered: 01/04/2021) |
| 01/06/2021 | 27 | NOTICE *Joint Supplemental Submission* by Gregory Archambeault, Aaron Heitke, Tony H. Pham, Rodney S. Scott, U.S. Immigration and Customs Enforcement, Chad Wolf (Parker, Katherine) (mme). (Entered: 01/06/2021) |
| 01/07/2021 | 28 | NOTICE Regarding Exhibit Attachment by Gregory Archambeault, Aaron Heitke, Tony H. Pham, Rodney S. Scott, U.S. Immigration and Customs Enforcement, Chad Wolf re 27 Notice (Other) (Attachments: # 1 Declaration of Bradley J. Blazer)(Parker, Katherine) (mme). (Entered: 01/07/2021) |
| 01/28/2021 | 29 | ORDER Setting Status Conference. Status Conference set for 2/5/2021 01:30 PM before Chief Judge Dana M. Sabraw. The parties may appear telephonically. Signed by Chief Judge Dana M. Sabraw on 1/28/2021.(mme) (Entered: 01/29/2021) |
| 02/04/2021 | 30 | NOTICE of Change of Hearing: Upon request of counsel, Status Conference set for 2/5/2021 is reset to 2/12/2021 10:00 AM before Chief District Judge Dana M. Sabraw. (no document attached) (jak) (Entered: 02/04/2021) |
| 02/12/2021 | 31 | Minute Entry for proceedings held before Chief District Judge Dana M. Sabraw: Status Conference held on 2/12/2021. Joint oral request to continue - Granted.(Status Conference set for 4/16/2021 10:30 AM in Courtroom 13A before Chief District Judge Dana M. Sabraw.)(Court Reporter LeeAnn Pence). (Plaintiff Attorney Jeremy Delicino present in court, James Johnson telephonically). (Defendant Attorney David Leshner present in court, Samuel Bettwy telephonically). (no document attached) (jak) (Entered: 02/12/2021) |
| 04/15/2021 | 32 | NOTICE of Change of Hearing: Upon request of counsel, Status Conference set for 4/17/2021 is reset to 4/28/2021 09:30 AM in Courtroom 13A before Chief District Judge Dana M. Sabraw. (no document attached) (jak) (Entered: 04/15/2021) |
| 04/28/2021 | 33 | NOTICE of Voluntary Dismissal by Erick Aranda-Moreno, Rigoberto Campos-Atrisco, Jose Carillo-Valdez, Luis Chavac-Boror, Andrea Contreras-Vergara, Bertin Cruz-Ibarra, Armando Escobar-Mejia, Jeronimo Fernandez-Ferrer, Fernando Girarte-Alcala, Oliser Hernandez, Filadelfo Morales-Roblero, David Orellana-Ardon, Alvaro Pastor-Narcizo, |

CM/ECF - casd

| | | |
|---|---|---|
| | | Pedro Valencia-Ayala, Mauro Varela-Gomez, Elizeo Velazquez-Hernandez, Juan Velazquez-Morales (Johnson, James) (mme). (Entered: 04/28/2021) |
| 04/28/2021 | 34 | Minute Entry for proceedings held before Chief District Judge Dana M. Sabraw: Status Conference held on 4/28/2021. Plaintiff has filed a voluntary dismissal. (Court Reporter/ECR Lee Ann Pence). (Plaintiff Attorney Jeremy Delicino). (Defendant Attorney Colin McDonald, Samuel Bettwy (telephonically). (no document attached) (jak) (Entered: 04/28/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/19/2024 09:09:55 | | | |
| **PACER Login:** | andrewychiang | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:20-cv-02060-DMS-KSC |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

SER-198

1    JEREMY DELICINO (CA Bar 296120)
2    550 West C Street, Suite 620
    San Diego, California 92101
3    jeremy@jeremydelicino.com
    (619) 357-6677
4

5    JAMES JOHNSON (CA Bar 229811)
    100 Wilshire Boulevard, Suite 700
6    Santa Monica, California 90401
    james@johnsontrial.com
7    (424) 272-6680

8    Counsel for Plaintiffs

9

10            **UNITED STATES DISTRICT COURT**

11          **SOUTHERN DISTRICT OF CALIFORNIA**

12

13    Pedro Valencia-Ayala, Filadelfo      CASE NO.    **'20 CV 2060 DMS KSC**
14    Morales-Roblero, Andrea Contreras-
    Vergara, Bertin Cruz-Ibarra, Oliser      Complaint for Declaratory Judgment and
15    Hernandez, Mauro Varela-Gomez,      Injunctive Relief
    Alvaro Pastor-Narcizo, Armando
16    Escobar-Mejia, Luis Chavac-Boror,
    Elizeo Velazquez-Hernandez, David
17    Orellana-Ardon, Jeronimo Fernandez-
    Ferrer, Juan Velazquez-Morales,
18    Rigoberto Campos-Atrisco, and Erick
    Aranda-Moreno.
19

20

21         Plaintiff-Petitioners,

22       v.

23

24    U.S. IMMIGRATION AND
    CUSTOMS ENFORCMENT, TONY
25    H. PHAM, in his official capacity as
    Senior Official Performing the Duties
26    of the Director, Gregory
    Archambeault, U.S. Department of
27    Homeland Security, Rodney S. Scott,
    Customs and Border Protection,
28

1  Aaron Heitke, Customs and Border
2  Protection, and Chad Wolf, in his
3  official capacity as Acting Secretary
   of the United States Department of
4  Homeland Security.

5      Defendant-Respondents.

6

7

8                    **<u>INTRODUCTION</u>**

9      1.     This case presents a challenge to the federal government's policy
10 permitting civil courthouse arrests in the Federal District Court for the Southern
11 District of California, brought by a group of people charged with illegal entry in
12 violation of 8 U.S.C. § 1325 as part of the government's Operation Streamline.
13 Based on specific findings by a federal judge that each plaintiff is not a sufficient
14 flight risk or sufficiently dangerous to remain in federal custody, each was released
15 on bail and remains out of custody pending upcoming hearings in their respective
16 petty offense misdemeanor criminal prosecutions. The judges' findings were well
17 founded, as each plaintiff has appeared for their hearings. In fact, Defendants *count*
18 *on* Plaintiffs' lack of flight risk, lying in wait to arrest them again when they do
19 appear for their hearings. Since the beginning of Operation Streamline in the
20 Southern District of California in 2018, officers from the Department of Homeland
21 Security (DHS), comprised of Immigration and Customs Enforcement (ICE) and
22 Customs and Border Protection (CBP), have patrolled the courtrooms and
23 courthouses of the United States District Court in the Southern District of
24 California. In effect, they punish people for respecting federal court orders to appear
25 for their criminal hearings.  By insisting Plaintiffs be re-arrested for their removal
26 process, these agencies threaten the integrity of the criminal proceedings and ignore
27 the reasonable alternative, namely that their interests in initiating the removal
28 process for these Plaintiffs – individuals who have been found to be neither flight

<div align="center">2</div>

1  risks nor dangers to the community and who indeed appear when the government

2  orders them to – can be accomplished without arresting them.

3      2.    Plaintiffs assert their rights to be free from *civil* arrest in this

4  Complaint. To be clear, Plaintiffs do not argue that the Defendants could not

5  effectuate criminal arrests in the courthouse. But DHS arrests that merely place a

6  person in immigration proceedings are civil arrests. *See I.N.S. v. Lopez-Mendoza*,

7  468 U.S. 1032, 1039 (1974) (holding that deportation proceedings are "purely"

8  civil); *Arizona v. United States*, 567 U.S. 387, 407 (2012) (holding that "it is not a

9  crime for a removable alien to remain present" in the United States and that

10  deportation proceedings are civil, even if criminal conduct is the reason for the

11  deportation).

12      3.    DHS officers attend hearings related to the Plaintiffs' petty

13  misdemeanor prosecutions equipped with handcuffs and ready to civilly arrest

14  Plaintiffs should the misdemeanor cases conclude. The anticipated arrests occur

15  regardless of how the misdemeanor cases end, whether it be through a Government

16  motion to dismiss, the Court's granting of a defense motion to dismiss, a guilty

17  verdict or an acquittal after trial. The outcome of the case makes no difference –

18  the officers are waiting to effectuate a warrantless civil arrest in the courtroom or

19  in the hallway outside the courtroom.

20      4.    Despite widespread opposition to this practice, DHS has not only

21  refused to stop it, but has issued formal policies authorizing civil courthouse arrests.

22  DHS's courthouse arrest policies, and its extensive practice of conducting civil

23  arrests in courthouses, are unprecedented in American history. DHS's courthouse

24  arrest policies are arbitrary and capricious for a multitude of reasons including their

25  failure to explain this historic deviation in policy, the inconsistent application of the

26  policies, and the policies' failure to advance legitimate immigration enforcement

27  interests.

28

<center>3</center>
<center>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</center>

5.    Defendants have already had Plaintiffs in custody and processed their biometrics and backgrounds, including all information necessary for civil immigration enforcement purposes. They have no interest in re-arrest for those reasons. Their only interest is to keep Plaintiffs incarcerated for their civil immigration cases. But Plaintiffs have established that their incarceration is not required for their immigration cases, as they have a proven track record of appearing for court hearings. Even for individuals whose removal is "expedited" and will not require a more lengthy immigration court process, Defendants can accomplish those interests outside the sanctity of the courthouse and without threatening to undermine the integrity of the court's well-established criminal and bail systems.

6.    In addition to deviating from prior policy, the U.S. Supreme Court long ago recognized a privilege against civil arrests for those attending court on official business—a privilege that traces its roots back to English common law and rests on the common-sense principle that the judicial system cannot function if parties and witnesses fear that their appearance in court will be used as a trap.

7.    DHS's decision to flout the long-standing common-law privilege against civil courthouse arrests and to commandeer the courtrooms of the Southern District of California for federal civil immigration purposes has led Plaintiffs to reasonably fear civil arrest should they appear in court at their upcoming court dates. They know that when their case ends, an immigration agent lurking in the courtroom will be ready to civilly arrest them and place them in removal proceedings. DHS's policy to civilly arrest them in court following the conclusion of their misdemeanor prosecutions forces the Plaintiffs to choose between coming to court as ordered and exercising their common-law right to be free from civil arrest in court.

8.    In addition to the Plaintiffs' own fear of civil arrest, Plaintiffs' First, Fifth and Sixth Amendment rights to present witnesses and to a public trial are

4

1    violated because the policy instills fear in potential witnesses and court observers
2    who themselves have reason to fear civil arrest.

3        9.    DHS's civil-courthouse-arrest policies not only undermine the
4    administration of justice in the Southern District of California, they are also illegal
5    for at least four reasons.

6        10.    First, DHS's courthouse arrest policies are arbitrary and capricious in
7    violation of the Administrative Procedures Act (APA) because the policies are
8    insufficiently explained, fail to consider all relevant factors, and depart from prior
9    policy without reasoned explanation. Further, DHS's implementation of the
10   policies is inconsistent. ICE's policy states that arrests will take place "inside" the
11   courthouses or at "non-public entrances and exits," but arrests do not always take
12   place inside the courthouse. For example, officers chased a client and his lawyer
13   down Broadway adjacent to the courthouse and arrested the client. The lawyer
14   asked the officers to identify themselves and to produce a warrant, and the officers
15   refused and further ordered the lawyer to back away under threat of arrest if he did
16   not cooperate. ICE arrests outside of a courthouse are an arbitrary and capricious
17   application of its policy. *See Washington v. U.S. Dep't of Homeland Sec.*, No. C19-
18   2043 TSZ, 2020 WL 1819837, at *26–27 (W.D. Wash. Apr. 10, 2020) (ruling that
19   ICE's practice of arresting immigrants outside courthouses, instead of inside as the
20   policy states, presents a plausible claim that the policy is arbitrary and capricious
21   under the APA).

22       11.    Second, Congress never authorized DHS to conduct civil courthouse
23   arrests because it never abrogated the longstanding and well-settled common-law
24   privilege against such arrests. The Supreme Court has recognized that the common-
25   law privilege against civil courthouse arrests is "well settled." *Stewart v. Ramsay*,
26   242 U.S. 128, 129 (1916). When Congress acts in an area governed by "long-
27   established and familiar" common-law principles, Congress is presumed to retain
28   those principles. *United States v. Texas*, 507 U.S. 529, 534 (1993). Here, where

5

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Congress granted the federal government a general civil-arrest power to enforce

2    civil immigration laws, Congress retained traditional common-law limitations on

3    that arrest power—including that such arrests cannot be made against parties and

4    witnesses attending court on official business. Because the INA does not grant the

5    federal government authority to conduct civil courthouse arrests in violation of the

6    common-law privilege, DHS's policies authorizing such arrests, and its policies to

7    conduct such arrests, exceed DHS's statutory authority and must be set aside under

8    the Administrative Procedure Act (APA). *See* 5 U.S.C. § 706(2).

9        12.    Third, DHS's policies violate the constitutional right of access to the

10   courts, which prohibits "systemic official action [that] frustrates a plaintiff or

11   plaintiff class in preparing and filing suits." *Christopher v. Harbury*, 536 U.S. 403,

12   413, 415 & n.12 (2002). Conditioning litigants' ability to access the courts on

13   risking civil arrest creates precisely such impermissible frustration. Indeed,

14   common-law courts created the privilege against civil courthouse arrest to prevent

15   the intolerable chilling effect of such arrests, explaining that the fear of arrest would

16   "prevent [parties and witnesses'] approach," obstructing "the administration of

17   justice." *Halsey v. Stewart*, 4 N.J.L. 366, 368 (N.J. 1817). Plaintiffs are all charged

18   with misdemeanor petty offenses and have the right to present a defense under the

19   Sixth Amendment. Plaintiffs know, however, that if they come to court as ordered

20   they face the specter of civil courthouse arrest whether they win or lose their case.

21       13.    Fourth, DHS conducts the civil courthouse arrests without a warrant

22   authorizing the arrests as required by law. 8 U.S.C. § 1357(a)(2). Pursuant to section

23   1357(a)(2), DHS must have "reason to believe" that the arrestee is violating

24   immigration law *and* that the arrestee is "likely to escape before a warrant can be

25   obtained. . . ." DHS may be able to assert that there is reason to believe that

26   Plaintiffs have violated immigration law, but Plaintiffs' pretrial release on bond and

27   compliance with their release conditions defeat any argument that they pose a flight

28   risk. DHS could have sought a warrant in the months while Plaintiffs' criminal

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

prosecutions were pending and they were released on bond.  DHS did not. Failure to obtain a warrant during the pendency of Plaintiffs' criminal cases is the product of indolence, not necessity, and it violates Plaintiffs' statutory and constitutional rights.

14.     For these reasons, and as set forth below, Plaintiffs ask this Court to declare that DHS's policies authorizing civil arrests in the federal courthouses of the Southern District of California are unlawful, to declare that DHS's practice of failing to obtain a warrant for courthouse arrests is illegal, and to enjoin DHS from such activity.

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1346 (original jurisdiction). This Court has further remedial authority under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202 *et seq.* The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702.

16.     Venue is proper in the Southern District of California because this is an action against an officer, employee, and/or agency of the United States, and a substantial part of the events or omissions giving rise to this action have occurred in this judicial district. *See* 28 U.S.C. § 1391(e)(1).

## PARTIES

17.     Plaintiffs are charged in the Southern District of California with illegal entry in violation of 8 U.S.C. § 1325. Plaintiffs' criminal cases are pending, and he/she is actively litigating the case. Plaintiffs have seen immigration officers waiting in court presumably to arrest him/her at prior court appearances if the case had concluded, and believes that he/she faces likely civil immigration arrest in court following conclusion of the criminal prosecution. The following are the Plaintiffs, their criminal case numbers, and their next listed court date on the criminal case.

7

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

a.  Pedro Valencia-Ayala, 19MJ23473-MDD. Mr. Valencia's next court date is October 21, 2020 at 1:30 p.m. for a bench trial.

b.  Filadelfo Morales-Roblero, 19MJ24442-AHG. Mr. Morales's next court date is October 26, 2020 at 2:30 p.m. for a bench trial.

c.  Andrea Contreras-Vergara, 19MJ24177-MSB. Ms. Contreras's next court date is October 30, 2020 at 9:30 a.m. for a bench trial.

d.  Bertin Cruz-Ibarra, 19MJ24351-MSB. Mr. Cruz's next court date is set for November 6, 2020 at 1:30 p.m. for a motions hearing and bench trial.

e.  Oliser Hernandez, 19MJ23508-MSB. Mr. Hernandez's next court date is November 9, 2020 at 1:30 p.m. for a bench trial.

f.  Mauro Varela-Gomez, 19MJ23438-MSB. Mr. Varela's next court date is November 12, 2020 at 2:00 p.m. for a bench trial.

g.  Alvaro Pastor-Narcizo, 19MJ24548-LL. Mr. Pastor's next court date is November 17, 2020 at 10:00 a.m. for a bench trial.

h.  Armando Escobar-Mejia, 20MJ20283-LL. Mr. Escobar's next court date is November 18, 2020 at 10:00 a.m. for a bench trial.

i.  Luis Chavac-Boror, 19CR3424-MSB. Mr. Chavac's next court date is November 19, 2020 at 1:00 p.m. for a motions *in limine* hearing and bench trial.

j.  Elizeo Velazquez-Hernandez, 19CR3066-KSC. Mr. Velazquez's next court date is November 20, 2020 at 1:30 p.m. for a bench trial.

k.  David Orellana-Ardon, 19CR3190-MDD. Mr. Orellana's next court date is November 23, 2020 at 1:30 p.m. for a bench trial.

l.  Jeronimo Fernandez-Ferrer, 19CR3668-KSC. Mr. Fernandez's next court date is December 2, 2020 at 2:30 p.m. for a bench trial.

m.  Juan Velazquez-Morales, 20MJ20275-MDD. Mr. Velazquez's next court date is December 8, 2020 at 1:30 p.m. for a bench trial.

8

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

n. Rigoberto Campos-Atrisco, 19mj24683-KSC. Mr. Campos's next court date is December 11, 2020 at 1:30 p.m. for a bench trial.

o. Erick Aranda-Moreno, 19MJ23381-MDD. Mr. Aranda's next court date is December 17, 2020 at 1:30 p.m. for a bench trial.

18. Defendant U.S. Immigration and Customs Enforcement is a federal agency charged with enforcement of federal immigration laws, including execution of ICE Directive No. 11072.1 entitled "Civil Immigration Actions Inside Courthouses," dated January 10, 2018.

19. Defendant Tony H. Pham is the Senior Official performing the duties of the Director of U.S. Immigration and Customs Enforcement. On information and belief, Defendant Pham is responsible for executing the courthouse arrest policy. Defendant Pham is sued in his official capacity.

20. Defendant Gregory Archambeault is the San Diego Field Office Director of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations. He is charged with ICE enforcement in the San Diego area. Field Office Director Archambeault is sued in his official capacity.

21. Defendant Rodney S. Scott is the Chief of the United States Border Patrol. On information and belief, Defendant Scott is responsible for executing CBP's courthouse arrest policy. Defendant Scott is sued in his official capacity.

22. Defendant Aaron Heitke is the Chief Patrol Agent for CBP in the San Diego Sector. He is charged with CBP enforcement in the San Diego area. Defendant Heitke is sued in his official capacity.

23. Defendant the Department of Homeland Security is a cabinet department of the U.S. government, which oversees Defendant U.S. Immigration and Customs Enforcement and United States Border Patrol.

24. Defendant Chad Wolf is the Acting Secretary of the Defendant DHS. Acting Secretary Wolf is responsible for executing relevant provisions of Executive Order 13,768, entitled "Enhancing Public Safety in the Interior of the United

9

States" (the "EO 13,768" or "Executive Order"), issued on January 25, 2017. Acting Secretary Wolf is sued in his official capacity.

## **FACTUAL ALLEGATIONS**

**I.      DHS's courthouse arrest policies**

25.     Shortly after taking office, on January 25, 2017, the President issued "Executive Order 13,768: Enhancing Public Safety in the Interior of the United States."

26.     Through Executive Order 13,768, the President abandoned past deportation prioritization programs embraced by both the Bush and Obama Administrations and called for the deportation of anyone potentially removable from the United States—likely more than 11 million people.

27.     The stated policy of Executive Order 13,768 was to "[m]ake use of all available systems and resources to ensure the efficient and faithful execution of the immigration laws of the United States." Executive Order 13,768(2)(b).

28.     One way DHS has attempted to use "all available systems and resources" to implement Executive Order 13,768 is to use court appearances by civil and criminal parties, witnesses, and non-parties to execute a civil immigration arrest.

29.     Since 2018, DHS has attended federal court appearances in the Southern District of California for alleged non-citizens charged with illegal entry who have been released on bond and arrested nearly all of them in the courtroom, or courthouse, following conclusion of the cases.

30.     Defendants acknowledge the practice of courthouse arrests and condone its continued use.

31.     DHS has made clear that *anyone* who is subject to arrest by DHS may be arrested in the courthouse, and courthouse arrests are not limited solely to defendants in criminal matters.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

32.    ICE Policy No. 10029.2 recognizes the following "Sensitive Locations" where immigration actions (i.e., arrests, interviews, searches, and surveillance) shall neither occur nor focus on unless exigent circumstances exist:

> a. Schools (including pre-schools, primary schools, secondary schools, post-secondary schools up to and including colleges and universities, and other institutions of learning such as vocational or trade schools);
>
> b. Hospitals;
>
> c. Churches, synagogues, mosques or other institutions of worship, such as buildings rented for the purpose of religious services;
>
> d. The site of a funeral, wedding, or other public religious ceremony; and
>
> e. A site during the occurrence of a public demonstration, such as a march, rally or parade.

33.    ICE Policy No. 10029.2 recognizes the preceding list of "Sensitive Locations" is not an exclusive list, and DHS officers are required to consult with their supervisors if the location of a planned enforcement operation could reasonably be viewed as being at or near a sensitive location.

34.    However, ICE has refused to recognize courthouses as "Sensitive Locations" and maintains that it possesses full discretion to civilly arrest individuals in and around any courthouse. Similarly, CBP has refused to recognize courthouses as "Sensitive Locations."

35.    On January 10, 2018, ICE formalized its Civil Courthouse Arrest Policy in ICE Directive No. 11072.1, entitled "Civil Immigration Actions Inside Courthouses."

36.    Rather than recognizing courthouses as "Sensitive Locations," ICE's Civil Courthouse Arrest Policy "sets forth [ICE's] policy regarding civil immigration enforcement inside federal, state, and local courthouses."

---

11

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

37.     The courthouse arrest policy purports to vest ICE with the unbridled and boundless discretion to make civil arrests in and around virtually *any* courthouse location when ICE deems it "necessary."

38.     The courthouse arrest policy states that ICE's courthouse arrests will "include" actions against "specific, target aliens with criminal convictions, gang members, national security or public safety threats, aliens who have been ordered removed from the United States but have failed to depart, and aliens who have re-entered the country illegally after being removed."

39.     The courthouse arrest policy does not *limit* its arrests to these "target aliens." The policy provides that "[a]liens encountered during a civil immigration enforcement action inside a courthouse" who are not "targeted alien[s] . . . will not be subject to . . . enforcement action, *absent special circumstances*." However, the courthouse arrest policy provides no information concerning what ICE considers "special circumstances," and simply states that "ICE officers and agents will make enforcement determinations on a case-by-case basis in accordance with federal law and consistent with U.S. Department of Homeland Security (DHS) policy."

40.     Problematically, the ICE courthouse arrest policy does not state what this DHS policy is, and instead cross-references two other internal DHS memoranda which say nothing about courthouse arrests and one of which explicitly states that DHS "no longer will exempt classes or categories of removable aliens from potential enforcement."[1]

41.     Just like ICE, CBP does not consider courthouses to be sensitive locations according to its website. CBP's website states that "enforcement actions at courthouses will only be executed against individuals," who were listed as priorities in a prior memorandum. But this memorandum was expressly rescinded by Secretary Kelly, and the website further states that CBP will seek the "arrest of

---

[1] *See* Elaine C. Duke, Acting Secretary of Homeland Security, Memorandum on Rescission of Deferred Action for Childhood Arrivals (Sept 5, 2017).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

non-targeted individuals" during some undefined "exigent circumstances" at courthouses.

42. The policies fail to account for significant issues, including the historic sanctity of courthouses and the chilling impact the policies will have on the people released on bond by a federal court.

43. Ultimately, the courthouse arrest policy simply formalizes aspects of Executive Order 13,768, which vested DHS with unfettered discretion to use courthouses as a trap to arrest *anyone* suspected of a civil immigration violation— including criminal defendants who are honoring their bond conditions while charged with petty offenses, victims, witnesses, and parties to civil proceedings.

**II.** The common-law privilege against civil arrest

44. The common-law privilege against civil arrest while attending court on official business is longstanding, tracing its origins back at least to the English courts in the eighteenth century.

45. In England, and in the early years of this country, civil arrest, or civil capias, was a common means for initiating civil proceedings. *See* Nathan Levy, Jr., *Mesne Process in Personal Actions at Common Law and the Power Doctrine*, 78 Yale L.J. 52, 61-70 (1968). The possibility that such civil arrests could take place in court, however, posed a significant problem for the judicial system: If a party or witness's appearance in one case could be used as a trap for a civil arrest in *another* case, many parties and witnesses would not attend court. To avoid this problem, courts both in England and the United States—including the U.S. Supreme Court— recognized and strictly enforced an "inflexib[le]" privilege against the civil arrest of parties or witnesses attending court. *Page Co. v. MacDonald*, 261 U.S. 446, 448 (1923). As the Supreme Court explained, "the due administration of justice requires that a court shall not permit interference with the progress of a case pending before it, by the service of process in other suits, which would prevent, or the fear of which might tend to discourage, the voluntary attendance of those whose presence is

13

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  necessary or convenient to the judicial administration in the pending litigation."
2  *Lamb v. Schmitt*, 285 U.S. 222, 225 (1932).

3      46.    The common-law privilege against civil arrest while attending court
4  on official business is longstanding, tracing its origins back at least to English courts
5  in the eighteenth century. Blackstone's *Commentaries on the Laws of England*
6  explained the common-law rule that "[s]uitors, witnesses, and other persons,
7  necessarily attending any courts of record upon business, are not to be arrested
8  during their actual attendance, which includes their necessary coming and
9  returning." 3 William Blackstone, *Commentaries on the Laws of England* 289
10  (1769); *see also* 6 Matthew Bacon, *A New Abridgment of the Law* 530 (London, A.
11  Strahan, 7th ed. 1832) ("[A]ll [] persons whatsoever, are freed from arrests so long
12  as they are in view of any of the courts at Westminster, or if near the courts, though
13  out of view, lest any disturbance may be occasioned to the courts or any violence
14  used."). This principle was repeatedly endorsed by the English courts, which held
15  that, "for the purpose of justice," and "to encourage witnesses to come forward
16  voluntarily," they are privileged from arrest "in coming, in staying, and in
17  returning" from court. *The King v. Holy Trinity in Wareham*, 99 Eng. Rep. 531
18  (1782); *see also Meekins v. Smith*, 126 Eng. Rep. 363 (1791) ("[A]ll persons who
19  had relation to a suit which called for their attendance, whether they were compelled
20  to attend by process or not, (in which number bail were included,) were [e]ntitled
21  to privilege from arrest *eundo et redundo*, provided they came bona fide."); *Spence
22  v. Stuart*, 102 Eng. Rep. 530 (1802); *Ex Parte Byne*, 35 Eng. Rep. 123 (1813).

23      47.    The U.S. Supreme Court adopted this privilege and held that it bars
24  service of any other civil process while attending court. For instance, in *Stewart v.
25  Ramsay*, 242 U.S. 128 (1916), the Court described the privilege as "well settled,"
26  explaining that a litigant "should be permitted to approach [the courts], not only
27  without subjecting himself to evil, but even free from the fear of molestation or
28  hindrance. He should also be enabled to procure, without difficulty, the attendance

14

of all such persons as are necessary to manifest his rights." *Id.* at 129. The Court described it as particularly firmly established that there was an "exemption from arrest," or "capias," and held that this exemption applied to any civil process to protect the "necessities of the judicial administration, which would be often embarrassed, and sometimes interrupted, if the suitor might be vexed with process while attending upon the court for the protection of his rights, or the witness while attending to testify." *Id.* at 130. The Court later emphasized the "necessity of [the rule's] inflexibility" in order to serve its purpose of protecting litigants and witnesses in appearing in court. *Page Co.*, 261 U.S. at 448; *see also Long v. Ansell*, 293 U.S. 76, 83 (1934) (Brandeis, J.) (describing "the common-law rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit, are immune from service in another"); *Lamb*, 285 U.S. at 225.

48. DHS's practice of civilly arresting people in the federal courthouses of the Southern District of California who are present for official court business unduly infringes upon Plaintiffs' common-law right to be free from civil courthouse arrest.

**III. DHS officers are routinely present in the U.S. courthouses in the Southern District of California to effectuate civil immigration arrests of Plaintiffs when they appear in court for their criminal prosecutions**

49. Immigration officers have arrested scores of people inside the federal courthouses of the Southern District of California.

50. Immigration officers attend nearly every court hearing for defendants who have posted bond in cases originating out of the District's "§ 1325 Duty" calendar. They attend these hearings so they can effectuate a civil courthouse arrest following the conclusion of the case. That means immigration officers are present and poised to conduct immigration arrests at every misdemeanor illegal entry court hearing and trial in the Southern District of California where the defendant is on bond.

---

15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

51.     When immigration officers attend the Plaintiffs' hearings, they usually sit in the back of the courtroom and observe the entire proceeding.

52.     The officers are equipped with handcuffs and plan to effectuate a civil arrest to place the defendant in immigration custody at the conclusion of the criminal case.

## IV.   DHS officers conduct courthouse arrests without warrants in the U.S. Courthouses in the Southern District of California

53.      On information and belief, Plaintiffs believe that DHS intends to effectuate warrantless immigration arrests of plaintiffs coming to court, while present at court, or leaving court in connection with their pending criminal cases.

54.     Plaintiffs have been out of custody on bond for months, are in compliance with the conditions of their release including attending all court hearings for the petty misdemeanor charges, and they do not present a risk of flight before DHS could obtain a warrant.

## V.   DHS's civil courthouse arrest policies harm Plaintiffs by forcing them to appear in court believing that they could be subjected to an unlawful civil arrest in the courthouse at any time

55.     Plaintiffs are all charged with a criminal offense and have a Sixth Amendment right to testify on their own behalf at trial. At trial, their credibility as defendants would surely be challenged on cross examination. The Plaintiffs would then be permitted to call character witnesses under Fed. R. Evid. 608. But the Plaintiffs are all alleged to be undocumented aliens in the United States and their character witnesses may be similarly undocumented.

56.     Plaintiffs' decision  whether to testify at trial and call character witnesses, or other witnesses, in support of their defense is chilled by the looming presence of immigration officers in court. Plaintiffs fear that full exercise of their rights to present a defense could lead to the arrest of undocumented witnesses or members of the public who come to court to observe the proceedings.

16

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## CAUSES OF ACTION

### COUNT I
**DHS's Courthouse Arrest Policy is Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Not in Accordance with Law in Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)**

57.   Plaintiffs incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

58.   The Administrative Procedure Act (APA) instructs courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Accordingly, defendants may only exercise authority conferred by statute. *City of Arlington v. FCC*, 569 U.S. 290, 297-98 (2013).

59.   DHS's enforcement policy that "Department personnel have full authority to arrest or apprehend an alien whom an immigration officer has probable cause to believe is in violation of the immigration laws," Exhibit L at 4, is a final agency action subject to review under the Administrative Procedure Act.

60.   DHS's policies regarding courthouse arrest are arbitrary and capricious because Defendants do not sufficiently explain to whom the policies apply, fail fully to consider the foreseeable harms and/or costs of the policies, do not adequately explain its prioritizing of civil arrests in or near courthouses over the harms triggered by those arrests, and do not adequately justify the change from Defendants' prior policies.

61.   DHS's application of their policies are further arbitrary and capricious as applied to the Plaintiffs because all of the Plaintiffs have been ruled *not* to be a risk of flight when the magistrate set bond in their criminal prosecutions. Plaintiffs are all in compliance with the conditions of their pretrial release, which is further evidence that their arrest at court does not further a legitimate need by ICE to arrest them because their removal can be accomplished without detaining them anew. Moreover, Defendants are not complying with their own policies.

17

62. Defendants' violation causes ongoing harm to Plaintiffs.

**COUNT II**
**DHS's Courthouse Arrest Policies Exceed Statutory Authority in Violation of the Administrative Procedures Act, 5 U.S.C. § 706(2)(C)**

63. Plaintiffs incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

64. The Administrative Procedure Act instructs courts to "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations...." 5 U.S.C. § 706(2)(C).

65. There exists a longstanding common-law privilege against civil arrest of witnesses, parties, and others attending court on official business recognized by both federal and state courts.

66. The validity of DHS authorizing civil arrest of parties and witnesses attending court depends on whether the general grant of power to conduct civil arrests somehow abrogated the well-settled common law privilege that civil arrests cannot be used to arrest parties, witnesses and others attending court on official business.

67. Given the "longstanding [] principle that statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar principles," a statute must "speak directly to the question addressed by the common law" to "abrogate a common-law principle." *Texas*, 507 U.S. at 534 (1993) (internal quotation marks and alterations omitted). The statute authorizing DHS to conduct civil immigration arrests does not "speak directly to the question addressed by the common law"—*i.e.*, it does not speak to whether DHS can use a party or witness's appearance in court as a trap for purposes of a civil arrest. Instead, the statute simply authorizes arrest and detention, while saying nothing about how, when, or where such arrests may take place. *See* 8 U.S.C. §§ 1226(a), 1357(a). Thus, the power Congress granted to DHS to conduct civil arrests

18
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

inherently contains within it the common-law limitation that parties, witnesses, and others attending court on official business are privileged from civil arrest.

68.     To the extent there is any ambiguity concerning whether the INA incorporates or abrogates the common-law privilege, the constitutional concerns raised by DHS's courthouse arrest policies resolve that ambiguity in favor of interpreting the statute to limit DHS's authority. *See Clark v. Martinez*, 543 U.S. 371, 380-82 (2005) (when there are "competing plausible interpretations of a statutory text," courts should apply "the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts").

69.     Abrogating the common-law privilege would violate the Constitutional right of access to the courts, which prohibits "systemic official action [that] frustrates a plaintiff or plaintiff class in preparing and filing suits." *Christopher v. Harbury*, 536 U.S. 403, 413, 415 & n.12 (2002). Such "frustrat[ion]" includes not only policies that ban access outright, but also those that obstruct access. *E.g., id.* at 413. Forcing noncitizen litigants to risk civil arrest in order to access the courts creates such impermissible frustration.

70.     Abrogating the privilege would also infringe on Plaintiffs' Sixth Amendment rights. *See infra* Count IV.

71.     DHS's policies authorize civil courthouse arrests that Congress never authorized DHS to conduct. The policies are thus "in excess of statutory jurisdiction, authority, or limitations," and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." This Court should therefore hold it unlawful and set it aside under the Administrative Procedure Act.

72.     DHS arrests based on alleged civil immigration infractions are considered civil in nature.

73.     Congress' general grant of power to DHS to conduct civil arrests did not abrogate the well-settled common law privilege that prohibits civil arrests of parties, witnesses and others attending court on official business.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

74.     DHS's courthouse arrest policies authorizing civil arrests of people in, or traveling to or from, courthouses, and DHS's practice of carrying out civil arrests against individuals attending federal courthouses in the Southern District of California courts on official business, thus exceed DHS's statutory authority.

75.     DHS's courthouse arrest policies are therefore "in excess of statutory jurisdiction, authority, or limitations," in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C).

76.     Defendants' violation causes ongoing harm to Plaintiffs.

<div align="center">

**COUNT III**
**DHS's Courthouse Arrest Policies Violate the Right of Access to the Courts**

</div>

77.     Plaintiffs incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

78.     Defendants' actions deprive Plaintiffs of meaningful access to the federal courthouses of the Southern District of California in violation of Plaintiffs' rights under the United States Constitution.

79.     Policies that ban access outright and policies that obstruct the right of access to Courts in more subtle ways are prohibited.

80.     Forcing noncitizens accused of crimes to choose between exercising their right to stand trial or risk being subjected to a civil arrest at a federal courthouse in the Southern District of California impermissibly frustrates the right of access to courts, as protected by the First, Fifth, and Sixth Amendments to the United States Constitution.

81.     DHS's courthouse arrest policies were adopted by Defendants without full consideration of the foreseeable harms of their policy, without adequate explanation of their prioritizing civil arrests in or around courthouses over those harms, and without adequate justification of the change from Defendants' prior policies on courthouse arrests.

<div align="center">

20
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

</div>

82.    The courthouse arrest policies are therefore unconstitutional because they infringe on Plaintiffs' right to access the courts free from fear of civil arrest.

83.    The courthouse arrest policies cause ongoing harm to Plaintiffs.

## COUNT IV
### DHS's Courthouse Arrest Policies Violate Plaintiff's Sixth Amendment Rights

84.    Plaintiffs incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

85.    DHS's courtroom arrest policies violate Plaintiffs' Sixth Amendment rights because they frustrate Plaintiffs' access to the courts.

86.    A "fundamental element of due process of law" is criminal defendants' "right to present a defense," which includes the "right to offer the testimony of witnesses, and to compel their attendance, if necessary." *Washington v. Texas*, 388 U.S. 14, 19 (1967). Government acts that "cause[] the loss or erosion" of favorable testimony violate that right. *United States v. Hoffman*, 832 F.2d 1299, 1303 (1st Cir. 1987). DHS's courthouse arrest policies threaten noncitizen witnesses with potential civil arrest upon appearance in court, likely depriving many criminal defendants of key testimony. Criminal defendants also have the right to testify on their own behalf, *see e.g.*, *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987), and to be present at crucial phases of the trial, *see e.g.*, *Illinois v. Allen*, 397 U.S. 337, 338 (1970). DHS's courthouse arrest policies impermissibly condition a criminal defendant's exercise of these rights on exposing oneself to potential civil immigration arrest.

87.    Defendants' actions deprive Plaintiffs of meaningful access to the federal courthouses of the Southern District of California in violation of Plaintiffs' rights under the Sixth Amendment of the United States Constitution.

88.    Defendants' violation causes ongoing harm to Plaintiffs.

**COUNT V**
**DHS's Warrantless Courthouse Arrests Violate 8 U.S.C. § 1357(a)(2) because Plaintiffs Are Not a Flight Risk and the Arrests therefore Violate the Administrative Procedures Act, 5 U.S.C. § 706(2)(A), (C)**

89.     Plaintiffs incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

90.     Plaintiffs allege that DHS has not obtained a warrant for their arrest in compliance with 8 U.S.C. § 1357(a)(2). Section 1357(a)(2) authorizes DHS to make warrantless arrests only if (1) there is "reason to believe" the alien is present in the United States in violation of immigration law; <u>and</u> (2) the alien "is likely to escape before a warrant can be obtained for his arrest. . . ."

91.     Courts have continually recognized and required strict adherence to § 1357. *See Arizona v. United States*, 567 U.S. 387, 408, 410 (2012) (holding that an Arizona statute was preempted because it purported to give Arizona law enforcement greater warrantless arrest authority "than Congress has given to trained federal immigration officers," emphasizing that warrantless arrest authority is limited to situations where there is a likelihood of escape before a warrant can be obtained); *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995) (holding that this statute requires an individualized determination of flight risk); *United States v. Meza-Campos*, 500 F.2d 33 (9th Cir. 1975) (applying an individualized likelihood-of-escape analysis).[2]

---

[2] *See also*, *De La Paz v. Coy*, 786 F.3d 367, 376 (5th Cir. 2015) ("[E]ven if an agent has reasonable belief, before making an arrest, there must also be a likelihood of the person escaping before a warrant can be obtained for his arrest."); *Morales v. Chadbourne*, 793 F.3d 208, 216 (1st Cir. 2015) (quoting § 1357(a)(2)) ("Without a warrant, immigration officers are authorized to arrest an alien only if they have "*reason to believe that the alien so arrested* is in the United States in violation of any [immigration] law or regulation and *is likely to escape before a warrant can be obtained for his arrest*."); *United States v. Harrison*, 168 F.3d 483, 1999 WL 26921, at *4 (4th Cir. 1999) (unpublished) (explaining that "the critical question remains did the INS believe Harrison was likely to flee before a warrant could be obtained. In making such a determination, a court examines the objective facts with the knowledge of the INS Agents"; rejecting the Government's position "that in every case in which an alien is deportable an arrest can be made without a warrant"); *Westover v. Reno*, 202 F.3d 475, 479-80 (1st Cir. 2000) (commenting

22
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

92.     DHS cannot show that Plaintiffs pose a risk of escape before it can obtain a warrant. Plaintiffs are all out of custody on bond in their petty offense prosecutions, and their release on bond required a magistrate judge to rule that they do not pose an unreasonable risk of flight. Moreover, Plaintiffs' criminal cases have all been pending for many months, and DHS could have used this time to obtain a warrant. Even if DHS can establish a reason to believe that Plaintiffs are present in the United States in violation of immigration law, it cannot establish that Plaintiffs are "likely to escape" before a warrant can be obtained when it has failed to obtain a warrant during the months while Plaintiffs' criminal cases have been pending.

93.     Plaintiffs seek to enjoin DHS from arresting them without a warrant while at court, and on their way to and from court appearances mandated by their petty offense prosecutions. Plaintiffs conclusively show that they are not "likely to escape before a warrant can be obtained," § 1357(a)(2), because they are in compliance with the court-ordered conditions of bond.

94.     Plaintiffs' cases have all been pending for months and the length of time that their cases have been pending has afforded DHS sufficient time to obtain a warrant.

95.     Plaintiffs' compliance with court orders for the pendency of their criminal cases and appearance in court as ordered defeats any argument that they pose a risk of flight before a warrant can be obtained. The Court should therefore enjoin DHS from arresting Plaintiffs without a warrant while on their way to court, at court, or departing court in connection with their illegal entry prosecutions.

---

that an immigration arrest was "in direct violation" of § 1357(a)(2) because "[w]hile INS agents may have had probable cause to arrest Westover by the time they took her into custody, there is no evidence that Westover was likely to escape before a warrant could be obtained for her arrest").

23

**COUNT VI**
**DHS's Warrantless Courthouse Arrests Violate Plaintiffs' Fourth Amendment Rights**

96.     Plaintiffs incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

97.     The Fourth Amendment guarantees Plaintiffs the right to be free from "unreasonable searches and seizures. . ." Plaintiffs assert that DHS intends to arrest them when they appear in court for their illegal entry prosecutions without a warrant.

98.     "[U]nlike illegal entry, mere unauthorized presence in the United States is not a crime." *Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012). DHS's warrantless courthouse arrests are not in response to new criminal activity; rather, DHS's warrantless courthouse arrests are used to place people in civil immigration removal proceedings.

99.     DHS's warrantless courthouse arrests are not authorized by law, and the arrests violate Plaintiffs' Fourth Amendment rights to be free from unreasonable government seizure and arrest.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.     Issue an Order holding unlawful, vacating, and setting aside DHS's courthouse arrest policies.

b.     Declare that DHS's courthouse arrest policies are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of 5 U.S.C. § 706(2)(A).

c.     Declare DHS's courthouse arrest policies are in excess of Defendants' statutory jurisdiction, authority, or limitations in violation of 5 U.S.C. § 706(2)(C).

d.     Declare that DHS's courthouse arrest policies violate the First, Fourth, and Sixth Amendments to the United States Constitution.

24
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

e.   Enjoin Defendants and all of their officers, employees, agents, and anyone acting in concert with them, from implementing, applying, or taking any action whatsoever under the DHS's courthouse arrest policies and from civilly arresting parties, witnesses, and others attending, being present at, or departing from federal courthouses in the Southern District of California.

f.   Declare DHS's warrantless courthouse arrests to be in violation of 5 U.S.C. § 706(2)(A), (C) and the Fourth Amendment.

g.   Enjoin Defendants and all of their officers, employees, agents and anyone acting in concert with them, from effectuating warrantless immigration arrests of people present in court without demonstrating that they are unable to obtain a warrant because the individual circumstances of the arrestee show that he is likely to escape before a warrant can be obtained.

h.   Grant such other relief as the Court deems just and proper.

Respectfully submitted,

Dated:  October 20, 2020                    _s/ James M. Johnson_
                                           James M. Johnson
                                           EMAIL: james@johnsontrial.com

                                           Jeremy Delicino
                                           Email: jeremy@jeremydelicino.com

                                           Attorneys for Plaintiffs

25

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

SER-223

1   JEREMY DELICINO (CA Bar 296120)
    550 West C Street, Suite 620
2   San Diego, California 92101
3   jeremy@jeremydelicino.com
    (619) 357-6677
4
    JAMES JOHNSON (CA Bar 229811)
5   100 Wilshire Boulevard, Suite 700
    Santa Monica, California 90401
6   james@johnsontrial.com
7   (424) 272-6680

8   Counsel for Plaintiffs

9

10              **UNITED STATES DISTRICT COURT**

11            **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  Pedro Valencia-Ayala, Filadelfo        Case No. 3:20-CV-2060-DMS-KSC
    Morales-Roblero, Andrea Contreras-
14  Vergara, Bertin Cruz-Ibarra, Oliser    The Honorable Dana M. Sabraw
15  Hernandez, Mauro Varela-Gomez,         **MOTION FOR TEMPORARY**
    Alvaro Pastor-Narcizo, Armando         **RESTRAINING ORDER**
16  Escobar-Mejia, Luis Chavac-Boror,
17  Elizeo Velazquez-Hernandez, David
    Orellana-Ardon, Jeronimo Fernandez-
18  Ferrer, Juan Velazquez-Morales,
19  Rigoberto Campos-Atrisco, and Erick
20  Aranda-Moreno.

21          Plaintiff-Petitioners,

22          v.

23
    U.S. IMMIGRATION AND
24  CUSTOMS ENFORCMENT, TONY
25  H. PHAM, in his official capacity as
    Senior Official Performing the Duties
26  of the Director, Gregory
27  Archambeault, U.S. Department of
    Homeland Security, Rodney S. Scott,
28  Customs and Border Protection,

Aaron Heitke, Customs and Border
Protection, and Chad Wolf, in his
official capacity as Acting Secretary
of the United States Department of
Homeland Security.

Defendant-Respondents.

2
MOTION FOR TEMPORARY RESTRAINING ORDER

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................. ii

I.    Introduction.........................................................................................1

II.   Statement of facts ..............................................................................2

    A.   The Implementation of the DHS Courthouse Arrest Policy..............2

    B.   Immigration Enforcement in the Courthouses of the Southern District of California...................................................................5

    C.   Plaintiffs are at risk of imminent harm.............................................7

III.  Argument .............................................................................................8

    A.   Plaintiffs have a substantial likelihood of success on the merits........9

        1.   Plaintiffs are likely to succeed on Counts I-III because DHS's change in courthouse arrest policy is arbitrary and capricious, and because they assert a clearly established common-law right to be free from civil arrest in court...........9

            a.   ICE's Courthouse Arrest Policy is arbitrary and capricious in violation of the APA (Count I)...............10

            b.   DHS's courthouse arrest policies are in violation of clearly established law (Count II) and violate Plaintiffs' rights of access to the courts (Count III) because they violate the common-law right against civil courthouse arrest ................................................15

                i.   The U.S. Supreme Court recognizes a longstanding federal common-law privilege against civil arrest while attending court...........15

                ii.   The INA incorporated the privilege against civil courthouse arrest.........................................20

        2.   Plaintiffs are likely to succeed on Count IV because ICE's practice of arresting people in court violates Plaintiffs' Sixth Amendment rights ......................................21

        3.   Plaintiffs are likely to succeed on Counts V &VI because ICE's practice of arresting people in court without a warrant is clearly prohibited by statute and the constitution...................................................................22

            a.   ICE's practice of making courthouse arrests without a warrant violates 8 U.S.C. § 1357(a)(2)........22

            b.   In the absence of statutory authority for warrantless arrests, the practice of conducting courthouse arrests without a warrant violates the Fourth Amendment. ...............................................26

    B.   Absent relief, Plaintiffs are likely to suffer irreparable harm...........27

    C.   The balance of equities and public interest weigh heavily in Plaintiffs' favor...............................................................................28

IV.   Conclusion ........................................................................................30

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Federal Cases**                                                        **Page(s)**

*Arizona Dream Act Coal. v. Brewer,*
   757 F.3d 1053 (9th Cir. 2014) ........................................................ 28

*Arizona v. United States,*
   567 U.S. 387 (2012) .................................................................. 9, 23

*Astoria Fed. Sav. & Loan Ass'n v. Solimino,*
   501 U.S. 104 (1991) ...................................................................... 20

*Bechtel v. FCC,*
   10 F.3d 875 (D.C. Cir. 1997) ....................................................... 10

*Burlington Truck Lines, Inc. v. United States,*
   371 U.S. 156 (1962) ...................................................................... 14

*Christopher v. Harbury,*
   536 U.S. 403 (2002) ...................................................................... 14

*Citizens to Pres. Overton Park, Inc. v. Volple,*
   401 U.S. 402 (1971) ...................................................................... 10

*City of Arlington v. FCC,*
   569 U.S. 290 (2013) ...................................................................... 20

*Civil Aeronautics Bd. v. Delta Air Lines Inc.,*
   367 U.S. 316 (1961) ........................................................................ 9

*Davila v. United States,*
   247 F. Supp. 3d 650 (W.D. Pa. 2017) .......................................... 24

*Deck v. Missouri,*
   544 U.S. 622 (2005) ...................................................................... 28

*Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc.,*
   448 F. 3d 1118 (9th Cir. 2006) ....................................................... 9

*Doe v. McAleenan,*
   415 F. Supp. 3d 971 (S.D. Cal. 2019) ........................................... 8

*Encino Motorcars, LLC v. Navarro,*
   136 S. Ct. 2117 (2016) ............................................................ 11, 13

ii

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ...................................................................... 11, 13

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ............................................................................ 9

*George v. United States, No. 3:19-cv-01557-BAS-BLM*,
    2019 WL 4962979 (S.D. Cal. Oct. 7, 2019) ...................................... 8

*Guzman v. Shewry*,
    552 F.3d 941 (9th Cir. 2009) ............................................................ 9

*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017) ......................................................... 26

*I.N.S. v. Lopez-Mendoza*,
    468 U.S. 1032 (1984) ................................................................. 18, 19

*Illinois v. Allen*,
    397 U.S. 337 (1970) ............................................................. 14, 21, 28

*Isabrandsten Co. v. Johnson*,
    343 U.S. 779 (1952) ....................................................................... 20

*Lamb v. Schmitt*,
    285 U.S. 222 (1932) ................................................................. 16, 17

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ....................................................................... 14

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ..................................................... 26- 28

*Mobile Oil Corp. v. Higginbotham*,
    436 U.S. 618 (1978) ....................................................................... 20

*Morales v. Chadbourne*,
    793 F.3d 208 (1st Cir. 2015) .......................................................... 22

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ..................................................................... 10, 13

*Mountain High Knitting, Inc. v. Reno*,
    51 F.3d 216 (9th Cir. 1995) ........................................................... 22

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999) ....................................................................... 15

iii

*Nava v. Dep't of Homeland Sec.*,
   435 F. Supp.3d 880 (N.D. Ill. 2020) ................................................................ 22

*New York v. U.S. Immigration & Customs Enf't*,
   __ F. Supp. 3d. ___, 2020 WL 3067715 (S.D.N.Y. June 10, 2020) .............. 17

*Page Co. v. MacDonald*,
   261 U.S. 466 (1923) ........................................................................................ 16

*Phelps Dodge Corp. v. NLRB*,
   313 U.S. 177 (1941) ........................................................................................ 11

*Pimentel v. Dreyfus*,
   670 F.3d 1096 (9th Cir. 2012) .......................................................................... 8

*R.I.L.-R v. Johnson*,
   80 F. Supp. 3d 164 (D.D.C. 2015) ................................................................ 10

*Rock v. Arkansas*,
   483 U.S. 44 (1987) .................................................................................. 14, 21

*Ryan v. U.S. Immigration & Customs Enf't*,
   __ F.3d ___, 2020 WL 5201945 (1st Cir. 2020) .......................................... 17

*SEC v. Chenery Corp.*,
   (Chenery I), 318 U.S. 80 (1943) .................................................................... 11

*SEC v. Chenery Corp.*,
   (Chenery II), 332 U.S. 194 (1947) ................................................................ 11

*Sekhar v. United States*,
   570 U.S. 729 (2013) ...................................................................................... 1-3

*Stewart v. Ramsay*,
   242 U.S. 128 (1916) ................................................................................. 15- 19

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ............................................................................ 8

*Tejada-Mata v. INS*,
   626 F.2d 721 (9th Cir. 1980) .................................................................... 19, 22

*Trump v. Vance*,
   140 S. Ct. 2412 (2020) .................................................................................. 17

*U.S. Postal Serv. v. Postal Regulatory Comm'n*,
   785 F.3d 740 (D.C. Cir. 2015) ...................................................................... 12

iv

*United States v. Abdi,*
  463 F.3d 547 (6th Cir. 2006) ...................................................... 23- 25

*United States v. Abdi,*
  2005 WL 6119695 (S.D. Ohio Sept. 12, 2005) ........................................ 23, 25

*United States v. Bautista-Ramos,*
  2018 WL 5726236 (N.D. Iowa Oct. 15, 2018) ................................. 25

*United States v. Cantu,*
  519 F.2d 494 (7th Cir. 1975) ........................................ 23

*United States v. Hoffman,*
  832 F.2d 1299 (1st Cir. 1987) ........................................ 21

*United States v. Khan,*
  324 F. Supp. 2d 1177 (D. Colo. 2004) ........................................ 24

*United States v. Pacheco-Alvarez,*
  227 F. Supp. 3d 863 (S.D. Ohio 2016) ........................................ 23

*United States v. Texas,*
  507 U.S. 529 (1993) ........................................ 20

*United States v. Watson,*
  423 U.S. 411 (1976) ........................................ 26

*Venetian Casino Resort, LLC v. EEOC,*
  530 F.3d 925, 931 (D.C. Cir. 2008) ........................................ 10

*Warsoldier v. Woodford,*
  418 F.3d 989 (9th Cir. 2005) ........................................ 26

*Washington v. Texas,*
  388 U.S. 14 (1967) ........................................ 21

*Washington v. U.S. Dep't of Homeland Sec.,*
  2020 WL 1819837 (W.D. Wash. Apr. 10, 2020 ............................. 12

*Washington v. U.S. Dep't of State,*
  2019 WL 5892505 (W.D. Wash. Nov. 12, 2019) ............................. 12, 13, 17

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ........................................ 8

*Zepeda v. I.N.S.,*
  753 F.2d 719 (9th Cir. 1983) ........................................ 27

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Federal Statutes**

5 U.S.C. § 706(2)(A) ................................................................. 10

8 U.S.C. § 1101(a)(15)(U) ......................................................... 11

8 U.S.C. § 1325 .......................................................................... 6

8 U.S.C. § 1357 .................................................................. *passim*

8 U.S.C. § 1226(a) .............................................................. 19, 20

18 U.S.C. § 3051(a) ................................................................... 24

18 U.S.C. § 3052 ....................................................................... 24

18 U.S.C. § 3053 ....................................................................... 24

18 U.S.C. § 3056(c)(1)(C) ......................................................... 24

**Executive Orders**

Executive Order 13,768 ......................................................... 3, 5

**Rules**

Fed. R. Evid. 608 ...................................................................... 28

**Regulations**

8 C.F.R. § 287.8(c)(2)(ii) ......................................................... 23

**Other**

*William Blackstone, Commentaries on the Laws of England,*
     289 (1768) ................................................................. 16, 17

*David D. Cole, Against Citizenship as a Predicate for Basic Rights,*
     75 FORDHAM L. REV. 2541 (2007) ............................... 18

*Christopher N. Lasch, A Common-Law Privilege to Protect State and Local
Courts During the Crimmigration Crisis,*
     127 Yale L.J. Forum 410 (2017). ..................................... 15

*William Tidd, The practice of Superior Courts of Law in Personal Actions and
Ejectment, Etc,.* 88 (9th ed. 1833) ...................................... 15

*The King v. Inhabitants of the Holy Trinity in Wareham,*
     (1782) 99 Eng. Rep. 530 ........................................... 15, 16

*Orchard's Case,*
     (1828) 38 Eng. Rep. 987 ................................................. 15

vi

## I.    **Introduction**

For almost two years DHS[1] officers have occupied the courthouses of the Southern District of California in order to effectuate unlawful civil arrests of non-citizens attending court.[2] DHS officers have arrested individuals present on bond whether they are found guilty or not guilty of illegally entering the United States. The DHS officershave systematically commandeered the courthouse to serve as a trap to arrest immigrants without regard to the serious impact the arrests have on court participants, the public, and the court itself. Urgent action is required because Plaintiffs' upcoming court dates are fast approaching, and they fear unlawful civil courthouse arrest absent court intervention. The Court must enjoin DHS from continuing its lawless and harmful practice of conducting warrantless civil arrests in court.

DHS officers' practice of conducting civil immigration arrests in court is unlawful for at least four distinct reasons, and the Court should issue a Temporary Restraining Order and then a Preliminary Injunction to prevent future unlawful arrests. First, the courthouse arrest policies are arbitrary and capricious because they are insufficiently explained, fail to consider all relevant factors, and depart from prior policy without reasoned explanation. Second, Congress never authorized DHS to conduct civil courthouse arrests because it never abrogated the well-settled common-law privilege against such arrests in court. It has long been recognized that when lawmakers pass a statute, absent express indication otherwise, the new law "brings the old soil with it." *Sekhar v. United States*, 570 U.S. 729, 733 (2013) (citation omitted). The "old soil" here—the privilege against civil courthouse arrests—traces its roots to English common law.

---

[1] Throughout this pleading, references to "DHS," include its sub-agencies, ICE and CBP and their agents and officers.

[2] Thought this pleading, Plaintiffs challenge DHS's authority to *civilly* arrest Plaintiffs. At no point do Plaintiffs argue that DHS's authority to *criminally* arrest Plaintiffs is impermissible.

Third, DHS's policies violate the Constitutional right of access to the courts which frustrates Plaintiffs' First, Fifth and Sixth Amendment rights. Fourth, and finally, DHS conducts the civil arrests without a warrant as required by statute and the Fourth Amendment. Thus, this Court must take action to protect the integrity of the judicial process by enjoining Defendants from making civil courthouse arrests.

## II.   Statement of facts

At the direction of the President, DHS has substantially increased its enforcement actions related to alleged violations of civil immigration law. In doing so, DHS has targeted courthouses as locations for all manner of civil immigration actions, including arrests. This includes authorizing the arrests of parties, witnesses, and even victims involved in criminal prosecutions. Here, in the Southern District of California, DHS has implemented this directive by conducting dozens of courthouse arrests of individuals charged with illegal entry. These arrests have occurred inside the federal courthouse—and often inside a courtroom. Moreover, the arrests are occurring in the absence of a civil arrest warrant.

### A.   Implementation of the DHS Courthouse Arrest Policy

For more than 15 years under both the Bush and Obama Administrations, published policies governed the federal government's immigration enforcement priorities and exercise of prosecutorial discretion. *See* Exhibits A-J. These policies set forth factors to consider when deciding whom to prioritize for deportation, with the highest priority given to noncitizens who endangered national security or public safety because of terrorism or espionage, had convictions for felony or aggravated felony crimes, participated in criminal gang activity, or fugitives who evaded immigration controls. *Id.* These became known as "Priority 1" noncitizens. *See* Exhibits D, H, I, J.

Recognizing the significant disruption that often results when civil immigration arrests are made in public, DHS also specified locations where, in the absence of exigent circumstances, immigration arrests were not permitted. These

<div align="center">2</div>

included schools, hospitals, places of worship, weddings, and funerals. *See* Exhibits F, G. Under the courthouse policies, arrests could "only be undertaken against Priority 1 aliens" and could not be used to target "individuals who may be 'collaterally' present" at the courthouse, including family members, friends, or persons other than the "specific, targeted" individual. *Id.*

On January 25, 2017, the President issued Executive Order 13,768 entitled "Enhancing Public Safety in the Interior of the United States." Through Executive Order 13,768, the President abandoned past deportation prioritization programs embraced by both the Bush and Obama Administrations and called for the deportation of anyone potentially removable from the United States—likely more than 11 million people. This order directed the executive branch to "[m]ake use of all available systems and resources to ensure the efficient and faithful execution of the immigration laws of the United States." Executive Order 13,768 Sec.2(b).

Pursuant to the Executive Order, then DHS Secretary John Kelly rescinded all but two of DHS's directives, memoranda, and field guidance governing immigration enforcement, including the DHS policies limiting immigration enforcement actions at courthouses. *See* Exhibit L at 2. Secretary Kelly announced that going forward "Department personnel have full authority to arrest or apprehend an alien whom an immigration officer has probable cause to believe is in violation of the immigration laws." *Id*. at 4. But Secretary Kelly allowed for the "exercise of prosecutorial discretion" for arrests "on a case-by-case basis in consultation with the head of the field office component, where appropriate, of CBP, ICE, or USCIS that initiated or will initiate the enforcement action, regardless of which entity actually files any applicable charging documents: CBP Chief Patrol Agent, CBP Director of Field Operations, ICE Field Office Director, lCE Special Agent-in-Charge, or the USCIS Field Office Director, Asylum Office Director or Service Center Director." *Id*.

On January 10, 2018, ICE formalized its Civil Courthouse Arrest Policy in ICE Directive No. 11072.1, entitled "Civil Immigration Actions Inside Courthouses." *See* Exhibit M. Rather than recognizing courthouses as "Sensitive Locations," ICE's civil courthouse arrest policy *targets* courthouses as opportune locations for civil immigration arrests, interviews, searches, and surveillance. The courthouse arrest policy vests ICE with the unbridled and boundless discretion to make civil arrests in and around virtually any courthouse location when ICE deems it "necessary."

The courthouse arrest policy states that ICE's courthouse arrests will "include" actions against "specific, target aliens with criminal convictions, gang members, national security or public safety threats, aliens who have been ordered removed from the United States but have failed to depart, and aliens who have re-entered the country illegally after being removed."

But the courthouse arrest policy does not *limit* its arrests to these "target aliens." The Policy provides that "[a]liens encountered during a civil immigration enforcement action inside a courthouse" who are not "targeted alien[s] . . . will not be subject to . . . enforcement action, *absent special circumstances*." *See* Exhibit M. However, the Policy provides no information concerning what ICE considers "special circumstances," and simply states that "ICE officers and agents will make enforcement determinations on a case-by-case basis in accordance with federal law and consistent with U.S. Department of Homeland Security (DHS) policy." *Id*.

The courthouse arrest policy does not define this DHS policy, but instead cross-references two other internal DHS memoranda which say nothing about courthouse arrests and one of which explicitly states that DHS "no longer will exempt classes or categories of removable aliens from potential enforcement." *See* Exhibit N. The other includes Secretary Kelly's statement that "Department personnel have full authority to arrest or apprehend an alien whom an immigration

MOTION FOR TEMPORARY RESTRAINING ORDER

1  officer has probable cause to believe is in violation of the immigration laws."
2  Exhibit L at 4.

3      ICE's website has a list of frequently asked questions including what types
4  of arrests will take place at courthouses. *See* Exhibit O. The answers to the
5  frequently asked questions plainly state that ICE does not consider courthouses
6  sensitive locations, and the answers make clear that courthouses arrests are legal in
7  ICE's view and will continue unabated.

8      Unlike ICE, it does not appear that CBP has issued a directive regarding
9  courthouse arrests. The CBP website, however, offers a contradictory answer to a
10  frequently asked question, "Are courthouses sensitive locations?" Exhibit P. Just
11  like ICE, the answer plainly states CBP does not consider courthouses sensitive
12  locations. The answer then initially states that "enforcement actions at courthouses
13  will only be executed against individuals," who were listed as priorities in a prior
14  memorandum. *Id*. But this memorandum, Exhibit I, was expressly rescinded by
15  Secretary Kelly. *See* Exhibit L at 2. And the next sentence of the answer provides
16  for the "arrest of non-targeted individuals" during some undefined "exigent
17  circumstances." Exhibit P.

18      Ultimately, the current memoranda, directives and website answers simply
19  formalize Executive Order 13,768, which vested DHS with unfettered discretion to
20  use courthouses as a trap to arrest *anyone* suspected of a civil immigration
21  violation—including criminal defendants, victims, witnesses, and parties to civil
22  proceedings.

23      **B.**    **Immigration Enforcement in the Courthouses of the Southern**
24          **District of California.**

25      Immigration officers have arrested scores of people inside the federal
26  courthouses for the Southern District of California. Immigration officers attend
27  nearly every court hearing of individuals released on bond facing charges of
28  violating 8 U.S.C. § 1325 in order to effectuate a civil courthouse arrest following

MOTION FOR TEMPORARY RESTRAINING ORDER

the conclusion of the case. That means immigration officers are present and poised to conduct civil immigration arrests at every misdemeanor illegal entry trial in the Southern District of California where the defendant is on bond.

Attached as exhibits are a number of declarations by defense counsel regarding the immigration officers' well-known practice of attending court appearances and arresting on-bond defendants upon the conclusion of their criminal cases. *See* Declarations of Leila W. Morgan; Chandra L. Peterson; Chloe S. Dillon; Ryan W. Stitt. When "Streamline" defendants are released on bond, immigration officers routinely attend each of their court appearances with the intent to arrest them if their criminal case concludes. *Id.* No counsel recalls any case concluding without a civil immigration arrest occurring at the courthouse after a "Streamline" case concluded. *Id.*

When immigration officers attend the Plaintiffs' hearings, they usually sit in the back of the courtroom and observe the entire proceeding. The officers are equipped with handcuffs and plan to effectuate a civil arrest to place the defendant in immigration custody at the conclusion of the criminal case. *See* Compl. ¶ 52.

Despite the fact that these operations are planned long in advance, the courthouse arrests appear to take place without a warrant. The attorneys assigned to the criminal misdemeanor illegal reentry cases are granted access to the Plaintiffs' A-files, which would contain any arrest warrants. Moreover, attorneys have repeatedly inquired whether arresting officers had obtained a warrant—none have claimed to possess a warrant and no warrant has been presented. *See* Declaration of Sean McGuire, ¶¶ 6-7; Declaration of Chandra Peterson, ¶¶ 18-20; Declaration of Chloe S. Dillon, ¶¶ 12-13; Declaration of Ryan W. Stitt, ¶¶ 5-6.

Each of the Plaintiffs have been out of custody on bond for months, are in compliance with the conditions of their release, and do not present a risk of flight before DHS could obtain a warrant. Plaintiffs prove that they are not a flight risk by adhering to their bond conditions and appearing in court when ordered.

MOTION FOR TEMPORARY RESTRAINING ORDER

**C.** **Plaintiffs are at risk of imminent harm**

Plaintiffs are all ordered to appear in court for a bench trial where they expect DHS officers to be waiting to civilly arrest them at the conclusion of the trial. Plaintiffs seek a Temporary Restraining Order because they are at risk of suffering irreparable harm – unlawful courthouse arrest – without court intervention. Below is a list of each Plaintiff, their criminal case number, and the next scheduled court date. Of note, Mr. Valencia-Ayala is scheduled for trial on October 21, 2020, Ms. Contreras-Vergara is scheduled for trial on October 30, 2020, and Mr. Cruz-Ibarra is scheduled for trial on November 6, 2020.

1. Pedro Valencia-Ayala, 19MJ23473-MDD. Mr. Valencia's next court date is October 21, 2020 at 1:30 p.m. for a bench trial.

2. Filadelfo Morales-Roblero, 19MJ24442-AHG. Mr. Morales's next court date is October 26, 2020 at 2:30 p.m. for a bench trial.

3. Andrea Contreras-Vergara, 19MJ24177-MSB. Ms. Contreras's next court date is October 30, 2020 at 9:30 a.m. for a bench trial.

4. Bertin Cruz-Ibarra, 19MJ24351-MSB. Mr. Cruz's next court date is set for November 6, 2020 at 1:30 p.m. for a motions hearing and bench trial.

5. Oliser Hernandez, 19MJ23508-MSB. Mr. Hernandez's next court date is November 9, 2020 at 1:30 p.m. for a bench trial.

6. Mauro Varela-Gomez, 19MJ23438-MSB. Mr. Varela's next court date is November 12, 2020 at 2:00 p.m. for a bench trial.

7. Alvaro Pastor-Narcizo, 19MJ24548-LL. Mr. Pastor's next court date is November 17, 2020 at 10:00 a.m. for a bench trial.

8. Armando Escobar-Mejia, 20MJ20283-LL. Mr. Escobar's next court date is November 18, 2020 at 10:00 a.m. for a bench trial.

7

9. Luis Chavac-Boror, 19CR3424-MSB. Mr. Chavac's next court date is November 19, 2020 at 1:00 p.m. for a motions *in limine* hearing and bench trial.

10. Elizeo Velazquez-Hernandez, 19CR3066-KSC. Mr. Velazquez's next court date is November 20, 2020 at 1:30 p.m. for a bench trial.

11. David Orellana-Ardon, 19CR3190-MDD. Mr. Orellana's next court date is November 23, 2020 at 1:30 p.m. for a bench trial.

12. Jeronimo Fernandez-Ferrer, 19CR3668-KSC. Mr. Fernandez's next court date is December 2, 2020 at 2:30 p.m. for a bench trial.

13. Juan Velazquez-Morales, 20MJ20275-MDD. Mr. Velazquez's next court date is December 8, 2020 at 1:30 p.m. for a bench trial.

14. Rigoberto Campos-Atrisco, 19mj24683-KSC. Mr. Campos's next court date is December 11, 2020 at 1:30 p.m. for a bench trial.

15. Erick Aranda-Moreno, 19MJ23381-MDD. Mr. Aranda's next court date is December 17, 2020 at 1:30 p.m. for a bench trial.

## III. <u>Argument</u>

To obtain a temporary restraining order or preliminary injunction the movant must establish (1) that they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm; (3) the balance of equities favors them; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *George v. United States*, No. 3:19-cv-01557-BAS-BLM, 2019 WL 4962979, at *4 (S.D. Cal. Oct. 7, 2019). The Ninth Circuit applies a sliding scale approach, under which a stronger showing of one element may offset a weaker showing of another. *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Because the legal standard for issuing a temporary restraining order and a preliminary injunction are the same, the two remedies are analyzed together. *Doe v. McAleenan*, 415 F. Supp. 3d 971, 976 (S.D. Cal. 2019) ("The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary

1  injunction."); *see, e.g.*, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d
2  832, 839 n.7 (9th Cir. 2001) ("Because our analysis is substantially identical for the
3  injunction and the TRO, we do not address the TRO separately.").

4      Here, the Plaintiffs are likely to prevail on the merits and they will suffer
5  irreparable harm—unlawful courthouse arrest—in the absence of relief. The
6  balance of hardships is clearly in their favor, and the public interest also favors
7  relief because unlawful civil arrest in court chills public participation in the judicial
8  process.

9      **A.**    **Plaintiffs have a substantial likelihood of success on the merits**

10      To succeed on this element, "at 'an irreducible minimum, the moving party
11  must demonstrate a fair chance of success on the merits, or questions serious
12  enough to require litigation.'" *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009)
13  (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo, Inc.*, 448 F. 3d 1118,
14  1124 (9th Cir. 2006)).

15          1.    <u>Plaintiffs are likely to succeed on Counts I-III because</u>
16              <u>DHS's change in courthouse arrest policy is arbitrary and</u>
17              <u>capricious, and because they assert a clearly established</u>
            <u>common-law right to be free from civil arrest in court</u>

18      DHS's civil arrest authority is subject to constitutional, statutory, and
19  common law limits. *See Arizona v. United States*, 567 U.S. 387, 413 (2012); *Civil*
20  *Aeronautics Bd. V. Delta Air Lines Inc.*, 367 U.S. 316, 322 (1961) (where an agency
21  is "entirely a creature of Congress," the "determinative question is not what the
22  [agency] thinks it should do but what Congress has said it can do").

23      Defendants' courthouse arrest policies violate the Administrative Procedure
24  Act (APA) in at least two ways. First, the Policy is arbitrary and capricious because
25  ICE failed to adequately explain the basis for its policy, failed to consider all
26  relevant factors, and departed from prior policies without sufficient explanation.
27  Second, the Courthouse Arrest Policy violates the APA because it is contrary to a

28

MOTION FOR TEMPORARY RESTRAINING ORDER

1  long established and firmly entrenched common-law privilege against civil
2  courthouse arrest.

3

4         a.   *ICE's Courthouse Arrest Policy is arbitrary and*
5              *capricious in violation of the APA (Count I)*

6         The APA "sets forth the procedures by which federal agencies are
7  accountable to the public and their actions subject to review by the courts." *Franklin*
8  *v. Massachusetts*, 505 U.S. 788, 796 (1992). To ensure that agency action is lawful
9  and properly reasoned, reviewing courts conduct a "thorough, probing in-depth
10  review" of the agency's reasoning along with a "searching and careful" inquiry into
11  the facts supporting it. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402,
12  415-16 (1971). Following that review, a court "shall" set aside agency action found
13  to be "arbitrary, capricious, an abuse of discretion, or otherwise not in according
14  with the law." 5 U.S.C. § 706(2)(A).

15        Agency policy, and not just formal rulemaking, is subject to arbitrary-and-
16  capricious review. *See, e.g.*, *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925,
17  931-35 (D.C. Cir. 2008) (agency policy that was not subject to notice-and-comment
18  rulemaking nonetheless held arbitrary and capricious); *Bechtel v. FCC*, 10 F.3d
19  875, 887 (D.C. Cir. 1997) (same). And agency policy need not be reduced to writing
20  fully (or at all) in order to trigger judicial review. *Venetian Casino Resort*, 530 F.3d
21  at 929-30 (although the finer details of agency's unwritten policy remained
22  "unclear," "the record leaves no doubt the Commission has a policy of disclosing
23  confidential information"); *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C.
24  2015) ("Agency action . . . need not be in writing to be final and judicially
25  reviewable.").

26        Agency policy may be found arbitrary and capricious for many reasons,
27  including if the agency fails adequately to explain the basis for its decisions, fails
28  to consider all relevant factors, or departs from prior policies without a "reasoned

<div align="center">10</div>

MOTION FOR TEMPORARY RESTRAINING ORDER

1  explanation." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463

2  U.S. 29, 43 (1983). Here, DHS's courthouse arrest policies violate the APA in each

3  of these ways.

4        DHS's courthouse arrest policies are insufficiently explained and do not

5  account for the agency's change from its prior policy. To be valid, agency action

6  "must be set forth with such clarity as to be understandable." *SEC v. Chenery Corp.*

7  *(Chenery II)*, 332 U.S. 194, 196 (1947). If an agency wants its policy upheld, courts

8  must not "be expected to chisel that which must be precise from what the agency

9  has left vague and indecisive." *Id.* at 196-97; *see also*, *SEC v. Chenery Corp.*

10  *(Chenery I)*, 318 U.S. 80, 94 (1943) ("The administrative process will best be

11  vindicated by clarity in its exercise.") (quoting *Phelps Dodge Corp. v. NLRB*, 313

12  U.S. 177, 197 (1941)). Where an agency changes its previous position, the agency

13  must additionally 1) "display awareness that it is changing its position," 2) "show

14  that there are good reasons for the new policy," and 3) balance those good reasons

15  against "engendered serious reliance interests." *Encino Motorcars, LLC v. Navarro*,

16  136 S. Ct. 2117, 2126-27 (2016); *see also*, *FCC v. Fox Television Stations, Inc.*,

17  556 U.S. 502, 515 (2009) (alteration to prior agency position requires "more

18  detailed justification than what would suffice for a new policy created on a blank

19  slate."). The courthouse arrest policies fail all of these requirements.

20        First, DHS has not set forth the courthouse arrest policies in a way that can

21  be understood by those affected by it. Although DHS repeatedly has confirmed that

22  policies exists, *see* Exhibits L, M, O, P, it has given ambiguous statements about

23  whether and when it will be employed against victims, witnesses, and other

24  noncitizens who pose no threat to public safety. *Compare* Exhibit M *with* Exhibit

25  O. DHS also fails to meaningfully explain how the courthouse arrest policies can

26  operate without contravening Congress's directives *requiring* certain noncitizens to

27  participate in legal proceedings in order to be eligible for federally authorized

28  immigration programs. *See* 8 U.S.C. § 1101(a)(15)(U) (encouraging victims and

---

11

witnesses to help with local criminal investigations and prosecutions, including by testifying in court).

Even worse for understandability, the portions of DHS's courthouse arrest policies conflict with its actual implementation. For example, while the policies addresses arrests "inside" courthouses or at "non-public entrances and exits," *see* Exhibits M, P, arrests do not always occur inside the courthouse. *See* Declaration of Sean McGuire (detailing incident where his client was arrested outside the courthouse and immigration officers refused to produce a warrant upon request). Such "inconsistent application" of a policy "proves the point" of its arbitrariness and capriciousness. *U.S. Postal Serv. v. Postal Regulatory Comm'n*, 785 F.3d 740, 744 (D.C. Cir. 2015).

Mr. McGuire's declaration is a telling example of the inconsistency in DHS's Policy. Mr. McGuire attended court with his on-bond client charged with misdemeanor illegal entry. *See* Declaration of Sean McGuire, ¶¶ 2-3. Mr. McGuire's client was found not guilty at the hearing and they left the courthouse together and were walking east on Broadway Street when uniformed immigration officers came running toward them. *Id*. at ¶¶ 3-5. Mr. McGuire asked the agent to identify himself and if he had a warrant for his client's arrest. *Id*. at ¶ 6. The immigration officer did not respond and told Mr. McGuire to back up or he would be arrested too. *Id*. Mr. McGuire watched as his client was taken into custody and walked back into the courthouse under arrest. *Id*. at ¶ 7.

The State of Washington brought a similar lawsuit against DHS and its sub-agencies of ICE and CBP challenging the policies at issue in the instant case and the district court issued a preliminary injunction preventing ICE from conducting courthouse arrests. *Washington v. U.S. Dep't of Homeland Sec.*, No. C19-2043 TSZ, 2020 WL 1819837, at *26–27 (W.D. Wash. Apr. 10, 2020) (denying ICE's motion to dismiss claim that ICE's courthouse arrest policy violates the APA and the First and Sixth Amendments). The court furthered ruled that ICE's practice of

MOTION FOR TEMPORARY RESTRAINING ORDER

1  arresting immigrants outside courthouses, instead of inside as the policy states,
2  presents a plausible claim that the policy is arbitrary and capricious under the APA.
3  *Id*. This Court should similarly rule that DHS's policy is arbitrary and capricious
4  because DHS's application of the policy is inconsistent and cannot reasonably be
5  understood by those affected by it.

6      Second, the DHS's courthouse arrest policies fail all three requirements that
7  an agency must follow when it reverses a prior policy. DHS's public statements and
8  memorandum, ICE's written Directive, and ICE and CBP FAQ documents nowhere
9  "display awareness" of the preceding 15 years of published immigration
10 enforcement priorities, *see* Exhibits A-M, O, P, two of which applied specifically
11 to courthouse arrests. *See* Exhibits H, J; *Encino Motorcars*, 136 S. Ct. at 2126;
12 *Washington v. U.S. Dep't of State*, No. C18-1115RSL, 2019 WL 5892505, at *8
13 (W.D. Wash. Nov. 12, 2019) ("[G]iven the agency's prior position . . . it must do
14 more than simply announce a contrary position."). DHS likewise provides no "good
15 reasons for the new policy." *Encino Motorcars*, 136 S. Ct. at 2126,

16     Third, DHS has not balanced the reasons for its new policy against serious
17 reliance interests engendered by its prior courthouse policies, which led individual
18 litigants and court officials to expect that noncitizens could appear in court without
19 risk of civil arrest. Each of the Plaintiffs is ordered to appear for their next court
20 dates. Failure to appear could result in bond forfeiture and new criminal charges,
21 but Plaintiffs also know that appearing will subject them to civil courthouse arrest.
22 The new policies do not even acknowledge these "serious reliance interests," let
23 alone take them "into account." *Fox Television Stations, Inc.*, 556 U.S. at 515.
24 Because the courthouse arrest policies are not clear and do not explain its departure
25 from prior policy, it fails APA review.

26     Last, the courthouse arrest policies fail to consider the serious and predictable
27 harms to the Plaintiffs' individual constitutional rights by frustrating their access to
28 the courts. Even where an agency explains the basis for its action, it will still flunk

<div align="center">13</div>

1    APA review if the agency fails to consider all relevant factors and articulate a
2    "rational connection between the facts found and the choice made." *State Farm*,
3    463 U.S. at 43. In order to be "reasoned decision making," agencies must "look at
4    the costs as well as the benefits" that will flow from their actions. *Id*. at 52. Where
5    an agency "entirely failed to consider an important aspect of the problem," its action
6    is arbitrary and capricious. *Id.* at 43. DHS failed to consider the Courthouse Arrest
7    Policy's impact on Plaintiffs' First[3], Fifth[4] and Sixth[5] Amendment rights, and it
8    therefore fails APA review.

9        DHS further fails to explain why Plaintiffs, who have all been found *not* to
10   pose a risk of flight by a federal magistrate, must be arrested in court in order to be
11   removed from the United States. The courthouse arrest policies only target people
12   who demonstrate that they are not a flight risk by appearing in court when ordered.
13   Plaintiffs have all demonstrated by their continued compliance with their conditions
14   of bond that they are not a risk of flight, which minimizes any necessity that ICE
15   may claim to arrest them in order for them to be removed.

16       DHS offers "no findings and no analysis . . . to justify the choice" to adopt a
17   policy with such significant implications for the orderly administration of justice.
18   *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167 (1962). In light of
19   this failure, the APA "will not permit" the courthouse arrest policies to remain in
20   place. *Id.*

21       In sum, the courthouse arrest policies violate the APA. DHS failed to
22   adequately explain the basis for its decisions, failed to consider all relevant factors,
23   and departed from prior policies without a reasoned explanation. Plaintiffs are
24   highly likely to prevail on the merits of their APA claims.

25

---

26   [3] *Christopher v. Harbury*, 536 U.S. 403, 413, 415 & n.12 (2002).
27   [4] *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).
28   [5] *See e.g., Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987); *Illinois v. Allen*, 397 U.S. 337, 338 (1970).

MOTION FOR TEMPORARY RESTRAINING ORDER

> **b.    DHS's courthouse arrest policies are in violation of clearly established law (Count II) and they violate Plaintiffs' rights of access to the courts (Count III) because they violate the common-law right against civil courthouse arrest**

A deeply rooted common-law privilege against civil arrest at the courthouse protects Plaintiffs' right to access the court "free from the fear of molestation or hindrance" as well as the Court's interest in "the necessities of [] judicial administration." *See Stewart v. Ramsay*, 242 U.S. 128, 130 (1916). This deeply rooted right to be free from civil arrest in court is centuries old, and it prohibits DHS's practice of effectuating courthouse arrests

> i    The U.S. Supreme Court recognizes a longstanding federal common-law privilege against civil arrest while attending court

Before the United States was founded, civil suits were initiated in England through the arrest, or *capias ad respondendum*, of the defendant by a government official in order to secure the defendant's appearance. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). This practice deterred parties from "com[ing] forward voluntarily" for fear they would be seized at the courthouse and held on an unrelated matter. *The King v. Inhabitants of the Holy Trinity in Wareham*, (1782) 99 Eng. Rep. 530, 531. Courthouse arrests also risked "perpetual tumults" that were "altogether inconsistent with the decorum which ought to prevail in a high tribunal." *Orchard's Case*, (1828) 38 Eng. Rep. 987, 987. "[T]he privilege had two distinct strands, one protecting persons coming to and from their business with the courts, and the other protecting the place of the court and its immediate vicinity." Christopher N. Lasch, *A Common-Law Privilege to Protect State and Local Courts During the Crimmigration Crisis*, 127 Yale L.J. Forum 410 (2017).

MOTION FOR TEMPORARY RESTRAINING ORDER

In response to these problems, and in order to protect "the purposes of justice," English courts adopted a privilege barring government officers from making civil arrests at court. *Holy Trinity in Wareham*, 99 Eng. Rep. at 530. The freedom from arrest extended beyond the courtroom and the courthouse grounds, covering parties and witnesses traveling to and from court. *See, e.g.*, William Tidd, *The practice of Superior Courts of Law in Personal Actions and Ejectment, Etc.* 88-89 (9th ed. 1833) ("The parties to a suit, and their attorneys and witnesses, are, for the sake of public justice, protected from arrest, in coming to, attending upon, and returning from the courts, or, as it usually termed eundo, morando, et redeundo."); 3 William Blackstone, *Commentaries on the Laws of England* 289 (1768) ("Suitors, witnesses, and other persons, necessarily attending *any* courts of record upon business, are not to be arrested during their actual attendance, which necessarily includes their coming and returning.").

The Supreme Court long ago affirmed that this traditional common-law privilege against civil arrests at the courthouse persists under federal law. In *Stewart v. Ramsay*, the Court restated the privilege, explaining "[t]he true rule, well founded in reason and sustained by the greater weight of authority, is that suitors . . . as well as witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going." 242 U.S. at 129. The Court surveyed state cases, which followed the rule "with few exceptions," and noted "the Federal circuit and district courts have consistently sustained the privilege." *Id.* at 130–131. In fact, *Stewart* expanded the rule to preclude not only arrests but also service of process, which had replaced civil arrest as the manner of initiating civil suits. *Id.* at 129. The Court later reaffirmed the rule and clarified that it applies whether or not the civil arrest invokes the authority of the court in which the arrest is made. *Page Co. v. MacDonald*, 261 U.S. 466, 447–48 (1923) (holding a person may not be served process at federal court to initiate a proceeding in a separate state court because all

16

1  courts have equal interests in the orderly administration of judicial proceedings);

2  *see also Lamb v. Schmitt*, 285 U.S. 222, 225 (1932) ("the due administration of

3  justice requires that a court shall not permit interference with the progress of a case

4  pending before it, by the service of process in other suits, which would prevent, or

5  the fear of which might tend to discourage, the voluntary attendance of those whose

6  presence is necessary or convenient to the judicial administration in the pending

7  litigation.").

8        William Blackstone's influential treatise that says "no arrest can be made in

9  the king's presence, nor within the verge of his royal palace, nor in any place where

10  the king's justices are actually sitting." William Blackstone, *Commentaries on the*

11  *Laws of England 766* (1877). Blackstone is unequivocal in stating that "no arrest"

12  shall take place in court.

13        Despite Blackstone, *Stewart*, *Page Co.*, and *Lamb*'s clarity that civil arrests

14  and service of civil process in court violates the common law, the First Circuit in

15  *Ryan v. U.S. Immigration & Customs Enf't*, __ F.3d ___, 2020 WL 5201945 (1st

16  Cir. 2020) recently rejected the application of the common-law privilege against

17  arrest for immigration arrests on behalf of the "sovereign."

18        This Court should not accept *Ryan*'s flawed reasoning. The decision is in

19  conflict with the Washington and New York decisions[6] in addition to the Supreme

20  Court precedent in *Stewart*, *Page Co.*, and *Lamb*. The *Ryan* decision framed the

21  issue as whether there was a clear common-law right to be free from civil arrest "on

22  behalf of a sovereign." 2020 WL 5201945, at *9. Importantly, at common law, the

23  right against civil arrest when at court applied for *all* cases, and no exception existed

24  for suits brought by a sovereign. *See e.g.*, William Blackstone, *Commentaries on*

25  _____

26  [6] *See New York v. U.S. Immigration & Customs Enf't*, __ F. Supp. 3d. ___, 2020 WL 3067715 (S.D.N.Y. June 10, 2020) (granting injunction and declaratory relief against ICE); *Washington v. U.S. Dep't of Homeland Sec.*, No. C19-2043 TSZ, 2020 WL 1819837, at *26–27 (W.D. Wash. Apr. 10, 2020) (denying ICE's motion to dismiss claim that ICE's courthouse arrest policy violates the Administrative Procedures Act and the First and Sixth Amendment).

27

28

<center>17</center>

<center>MOTION FOR TEMPORARY RESTRAINING ORDER</center>

*the Laws of England* 766 (1877) ("no arrest" can be made while in court for a civil action). Nevertheless, the court in *Ryan* framed the issue as whether there was a common-law right to be free from arrest by the sovereign, and unsurprisingly found a dearth of cases addressing this newly-formed distinction between civil arrests generally and civil arrests on behalf of a sovereign. *Ryan* extrapolated that the lack of case law differentiating between civil arrests generally and civil arrests on behalf of a sovereign must mean that suits initiated by the sovereign are treated differently than suits initiated by an individual. *Ryan*, 2020 WL 5201945, at *9.

The Achilles heel of the court's reasoning in *Ryan* is that the Executive Branch is not the King and it is therefore not entitled to exceptions owed to a "sovereign." Our judicial system does not carve out special protection for the benefit of the "sovereign." The Supreme Court recently reiterated this bedrock principle when it held that President Trump could not assert the King's privilege against service of process. *Trump v. Vance*, 140 S. Ct. 2412, 2431 (2020) ("Since the earliest days of the Republic, "every man" has included the President of the United States." And rejecting President Trump's assertion of a common-law privilege that exempted the King of service of process). In contrast to the English monarchy, our government has three independent and co-equal branches. This is a radical shift from England where the courts were the King's courts and the judges the King's judges.

This fundamental shift in governmental structure must be accounted for when interpreting the common-law right against civil courthouse arrest. By protecting litigants, the privilege also protects the courts' ability to adjudicate disputes. While there may have been no reason to protect the King's courts from lawsuits brought by the King himself, modern courts certainly enjoy protection against trespass by the Executive. That rationale resonated with the United States Supreme Court in *Stewart*, which reasoned that the common-law rule against civil

<div align="center">18</div>

<div align="center">SER-249</div>

1   arrest in court extended to the service of civil process in court in part because of

2   "the necessities of [] judicial administration." *See Stewart*, 242 U.S. at 130.

3       In addition to incorrectly framing the issue as what is protected by the

4   common-law right to be free from civil arrest by a sovereign when no such

5   distinction had been made previously, the court in *Ryan* ignored the myriad ways

6   that respondents in immigration proceedings are provided far fewer rights than

7   defendants in criminal cases under the theory that immigration proceedings are

8   "purely civil" and deportation is not a punishment.[7]

9       When the Executive initiates a *criminal* case, it must follow all of the rules

10  and adhere to all of the constitutional protections required by an orderly prosecution

11  in an Article III court. While Congress has granted the Executive broad

12  administrative authority under the INA to conduct civil removal proceedings

13  outside of the rigorous judicial process, that delegation provides no authority for

14  the Executive to trample on this Court's disposition of the matters before it. By

15  choosing to forego judicial process and instead conduct civil arrests as part of civil

16  immigration proceedings, the Executive places itself in the same position as any

17  citizen—it can't abuse lawful attendance at court to snatch up a person, thus

18  disrupting court and scaring away future litigants and witnesses.

19      The Court should, therefore, rule consistently with the Court in *Stewart* as

20  well as the Washington and New York district courts and find that the centuries-

21  old common-law right against civil arrest in court bars DHS's courthouse arrests.

22

23

24

---

[7] *See I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038-39 (1984) (listing many ways in which immigration proceedings depart from the Constitutional requirements of criminal cases by putting a burden of proof on respondents, not imposing a proof beyond a reasonable doubt standard, admitting statements in violation of *Miranda*, and admitting even involuntary confessions, among other differences); *see also*, David D. Cole, *Against Citizenship as a Predicate for Basic Rights*, 75 FORDHAM L. REV. 2541, 2544 (2007) ("Time and again, the Administration has argued that foreign nationals do not deserve the same rights as citizens, and that we can do to them what we could not do to ourselves.").

25

26

27

28

19

      ii  The INA incorporated the privilege against civil courthouse arrest

Plaintiffs anticipate that Defendants will argue that the INA conferred broad arrest authority under 8 U.S.C. §§ 1226(a) and 1357(a)(2) to justify their courthouse arrest policies. However, neither provision abrogates the federal common-law privilege against civil courthouse arrest. The courthouse arrest policies therefore exceed agency authority in violation of the APA.

"A deportation proceeding is a purely civil legal action[.]" *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). The INA authorizes civil arrests of noncitizens whom ICE has probable cause to believe are removable from the United States. *Tejada-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Specifically, section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1357(a)(2) authorizes warrantless civil arrests where an agent has probable cause to believe a noncitizen is removable and "is likely to escape before a warrant can be obtained for his arrest." Neither provision mentions courthouses nor references the common-law restriction against civil courthouse arrests. The statutes are wholly silent on *where* arrests can take place.

"Congress is understood to legislate against a backdrop of common law . . . principles." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). Congress may, of course, displace the federal common law through legislation, but only where it makes its "statutory purpose" to do so "evident." *United States v. Texas*, 507 U.S. 529, 534 (1993); *see also Isabrandsten Co. v. Johnson*, 343 U.S. 779, 783 (1952) ("Statutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except where a statutory purpose to the contrary is evident."). "In such cases, Congress does not write upon a clean slate[,]" so "[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the

<div align="center">20</div>

<div align="center">SER-251</div>

common law." *Texas*, 507 U.S. at 534 (quoting *Mobile Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)).

In this case, far from "speak[ing] directly" about immigration arrests at courthouses, the INA's civil arrest provisions are silent about where arrests may occur. 8 U.S.C. §§ 1226(a), 1357(a)(2). Accordingly, this Court should "take it as a given that Congress has legislated with an expectation that the common law principle will apply" as a limit on ICE's civil arrest authority. *Texas*, 507 U.S. at 534; *see also City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) (agencies have only those powers "authoritatively prescribed by Congress."). DHS's courthouse arrest policies ignore the INA's incorporation of longstanding common-law limits, resulting in routine and disruptive violations of courthouse arrest privileges.

        2.    <u>Plaintiffs are likely to succeed on Count IV because ICE's practice of arresting people in court violates Plaintiffs' Sixth Amendment rights</u>

Plaintiffs are also likely to succeed on the merits of Count IV because DHS's courthouse arrest policy impermissibly frustrates their Sixth Amendment rights.

All Plaintiffs are charged with petty misdemeanor criminal offenses and there can be no doubt that the Sixth Amendment applies to their cases. A "fundamental element of due process of law" is criminal defendants' "right to present a defense," which includes the "right to offer the testimony of witnesses, and to compel their attendance, if necessary." *Washington v. Texas*, 388 U.S. 14, 19 (1967). Government acts that "cause[] the loss or erosion" of favorable testimony violate that right. *United States v. Hoffman*, 832 F.2d 1299, 1303 (1st Cir. 1987). By conditioning court appearance on potential civil arrest, DHS's courthouse arrest policies threaten noncitizen witnesses with potential arrest upon appearance in court, likely depriving many criminal defendants of key testimony. Criminal defendants also have the right to testify on their own behalf, *see e.g.*, *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987), and to be present at crucial phases of the trial, *see e.g.*, *Illinois v. Allen*, 397 U.S. 337, 338 (1970). DHS's courthouse arrest

<div align="center">21</div>

policy impermissibly conditions a criminal defendant's exercise of these rights on exposing oneself to potential civil immigration arrest.

Plaintiffs must be present in court when ordered for motion hearings and trial, and they must appear in order to exercise their right to testify or call witnesses. DHS's courthouse arrest policies frustrate Plaintiffs' exercise of these rights by conditioning their exercise on likely civil arrest and is therefore unconstitutional.

        3.    <u>Plaintiffs are likely to succeed on Counts V &VI because ICE's practice of arresting people in court without a warrant is clearly prohibited by statute and the constitution</u>

The practice of conducting warrantless civil arrests on the Plaintiffs violates both 8 U.S.C. § 1357(a)(2) and the Fourth Amendment of the Constitution. The practice violates the statute because warrantless arrests are only permitted when the person being arrested is likely to escape before a warrant can be obtained. The practice violates the Constitution because, absent compliance with 8 U.S.C. § 1357(a)(2), there is no applicable exception to the Fourth Amendment's warrant requirement, e.g., there is no probable cause that the Plaintiffs have committed any criminal offense. For these reasons, Plaintiffs are likely to succeed on the merits of their claims that DHS's courthouse arrest policies is unlawful.

        *a.*    *ICE's practice of making courthouse arrests without a warrant violates 8 U.S.C. § 1357(a)(2)*

Immigration officers are authorized to conduct warrantless arrests in a narrowly circumscribed set of circumstances. The only statutory authorization for warrantless civil immigration arrests is 8 U.S.C. § 1357(a)(2):

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant . . . to arrest any alien in the United States, if he **has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest** . . .

Thus, warrantless arrests are permitted only where there is (1) reason to believe the alien is in the United States in violation of immigration laws, and (2)

<div align="center">22</div>

<div align="center">MOTION FOR TEMPORARY RESTRAINING ORDER</div>

reason to believe the alien is likely to escape before an arrest warrant can be obtained. Courts have uniformly held that "the 'reason to believe' phrase in § 1357 'must be read in light of constitutional standards, so that 'reason to believe' must be considered the equivalent of probable cause.'" *Morales v. Chadbourne*, 793 F.3d 208, 216 (1st Cir. 2015); *Tejeda–Mata v. Immigration & Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980) ("The phrase 'has reason to believe' [in § 1357] has been equated with the constitutional requirement of probable cause.").

The mere fact that a person is not lawfully present in the country is insufficient to establish probable cause that the person "is likely to escape before a warrant can be obtained for his arrest." *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995) (holding that arrests under § 1357(a)(2) require an individualized determination of flight risk). Such an interpretation would be contrary to the statute itself, which requires that immigration officers must have reasonable belief *both* that the alien is in the country illegally *and* that the alien is likely to escape before a warrant can be obtained. *Nava v. Dep't of Homeland Sec.*, 435 F. Supp.3d 880, 891–92 (N.D. Ill. 2020) ("The prescribed particularized determination of a detainee's flight risk is not substantively related to the question whether a non-citizen can lawfully be removed from the United States."). For this reason, the "flight-risk determination is not mere verbiage," *United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 889 (S.D. Ohio 2016), and the statutory requirement of probable cause that the alien is likely to escape "is always seriously applied." *United States v. Cantu*, 519 F.2d 494, 497 (7th Cir. 1975). In fact, the Supreme Court found that an Arizona statute permitting warrantless arrests of removable aliens conflicted with federal law in part because the state statute did not require a finding of a likelihood of escape. *Arizona v. United States*, 567 U.S. 387, 408 (2012) (noting that federal officers may make a warrantless immigration arrest "only where the alien is likely to escape before a warrant can be obtained").

It is impossible for immigration officers to satisfy the second prong of § 1357(a)(2) where they have been aware of an alien's presence for months or even years and have simply elected not to attempt to obtain a warrant. If immigration officers were permitted to satisfy the second prong by simply refusing to obtain a warrant until the last minute despite ample time to do so, it would completely obviate the warrant requirement of § 1357(a)(2). *See also* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). As one court put it, it could not "not overlook the statute's warrant requirement because of bureaucratic sloth." *United States v. Abdi*, 2005 WL 6119695, at *5–7 (S.D. Ohio Sept. 12, 2005) *rev'd and remanded on other grounds*7F7F[8], 463 F.3d 547 (6th Cir. 2006). And, as several courts have observed, it should not take much time to obtain a warrant. *See Davila v. United States*, 247 F. Supp. 3d 650, 668–70 (W.D. Pa. 2017) (noting that "the facts just as easily suggest that [the agent] could have obtained a warrant at some time during the two hours Davila was on the side of the road); *United States v. Khan*, 324 F. Supp. 2d 1177, 1185 (D. Colo. 2004) ("the agents could have requested a warrant and been issued one before or even after they alerted Khan to their presence").

DHS has had ample time to obtain warrants in each of the Plaintiffs' cases. Each of the Plaintiffs' cases has been pending before the Southern District of California in excess of seven months—more than enough time to obtain a warrant, if one can be obtained. Immigration officers cannot manufacture an exigency to

---

[8] On appeal, the Sixth Circuit reversed the suppression of evidence because it found that a violation of 1357(a)(2) did not require suppression, unless the violation also constituted a Fourth Amendment violation. *United States v. Abdi*, 463 F.3d 547, 557 (6th Cir. 2006). In doing so, the Court presumed that there was no probable cause that the defendant was likely to escape. *Id.* The dissent specifically noted that it "agree[d] with the district court, for the reasons stated in its opinion, that there was not probable cause to believe Abdi was an escape risk and that the arrest therefore violated the statute." *Id.* at 568.

24

1   circumvent the warrant requirement by failing to diligently obtain a warrant during

2   the months when Plaintiffs' cases have been pending. Any contrary holding would

3   incentivize immigration officers *not* to seek a warrant, a result at odds with both the

4   language and purpose of the statute.  Unlike other federal law enforcement officers

5   who can make warrantless arrests without a risk-of-escape requirement, Congress

6   specifically limited immigration officers' authority to make warrantless arrests to

7   situations where arrestees pose a risk of escape before a warrant can be obtained.

8   *Compare* 8 U.S.C. § 1357 *with* 18 U.S.C. §§ 3051(a), 3052, 3053, 3056(c)(1)(C).

9         Aside from the impossibility of demonstrating that a warrant could not be

10   obtained when immigration officers had months to do so, there still remains the

11   requirement that there be objective facts creating probable cause that the person is

12   likely to flee if not arrested on the spot. It is particularly difficult to establish

13   probable cause that a person is going to flee when the authorities know where the

14   person lives and the person has repeatedly shown up for legal proceedings. For

15   example, in *United States v. Bautista-Ramos*, a district court found that there was

16   no likelihood of escape where the ICE officers had been aware of Bautista-Ramos's

17   likely presence in the United States for six months at the time of the arrest. 2018

18   WL 5726236, at *7 (N.D. Iowa Oct. 15, 2018). The Court explained that Bautista-

19   Ramos's truthful and non-evasive answers to questions weighed against a finding

20   of likely escape. *Id*. Similarly, the fact that the ICE officers encountered Bautista-

21   Ramos "at a place he routinely visited" was not indicative of a likelihood of escape.

22   *Id.* Finally, the district court noted that they already knew Bautista-Ramos's true

23   name as well as a substantial amount of information about his family in the United

24   States. *Id.*

25         Similarly in *Abdi*, the district court found that there was no evidence

26   establishing risk of escape where the defendant had been aware of the investigation

27   for more than six months "and had neither changed his location nor made any travel

28   plans." 2005 WL 6119695, at *5–7. Each of the Plaintiffs has repeatedly shown up

<div align="center">

25

MOTION FOR TEMPORARY RESTRAINING ORDER

</div>

1   for court, provided information about their identity and whereabouts to the court
2   and the government, and remained in compliance with conditions of pretrial release.
3   Under these circumstances, there is no evidence from which DHS could conclude
4   that Plaintiffs are likely to escape.

5     Ultimately, there are two independent reasons that immigration officers' civil
6   courthouse arrests violate 8 U.S.C. § 1357(a)(2): immigration officers have had in
7   every case many months to obtain the required warrant; and given the
8   circumstances of the Plaintiffs' criminal cases, there is no evidence from which
9   immigration officers could conclude that there is probable cause that Plaintiffs are
10   likely to escape. Plaintiffs are likely to prevail on either basis. However, they need
11   only show a likelihood of prevailing on one, as success on either argument would
12   justify the issuance of a temporary restraining order and ultimately a permanent
13   injunction.

14       *b.* *In the absence of statutory authority for its warrantless*
           *arrests, the practice of conducting courthouse arrests*
15         *without a warrant violates the Fourth Amendment.*

16     A warrantless arrest is reasonable under the Fourth Amendment where the
17   arrest is in public and there is probable cause to believe that a criminal offense has
18   been or is being committed. *United States v. Watson*, 423 U.S. 411, 417–24 (1976).
19   Thus, where an immigration officer has probable cause to arrest someone for
20   committing a criminal offense, the Fourth Amendment is satisfied even if §
21   1357(a)(2) is not. When an immigration officer arrests an individual solely for a
22   civil law violation, however, there is no independent authority for the arrest. In that
23   context, failure to comply with the statute constitutes a Fourth Amendment
24   violation.

25     When DHS conducts courthouse arrests of defendants charged with illegal
26   entry, it is after the conclusion of the criminal proceeding. Thus, the Plaintiffs will
27   have either been convicted, acquitted, or had their charges dismissed. Regardless
28   of the outcome, there is no longer a basis to arrest them for illegal entry into the

<div align="center">26</div>

country. And "unlike illegal entry, mere unauthorized presence in the United States is not a crime." *Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012). Thus, the only lawful authority to arrest is under § 1357(a)(2). If immigration officers fail to comply with the requirements of that statute, the arrest is not only unlawful—it's unconstitutional.

For these reasons, DHS's courthouse arrest policies violate both the statute and the Constitution, and the Plaintiffs have demonstrated a likelihood of success on the merits.

### B.   Absent relief, Plaintiffs are likely to suffer irreparable harm

It is well established that the deprivation of constitutional rights constitutes irreparable injury. *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005).

Plaintiffs are likely to suffer irreparable harm if the Court does not grant a temporary restraining order. Each Plaintiff is ordered to come to court for their respective petty offense misdemeanor prosecutions, and ICE will be waiting. The attached declarations make clear that ICE uses the court appearances for the criminal prosecutions as an opportunity to effectuate a civil removal arrest. *See* Declarations of Leila W. Morgan; Chandra L. Peterson; Chloe S. Dillon; Ryan W. Stitt. Plaintiffs are thus forced to choose between asserting their rights to access the courts and present a defense with their rights to be free from civil arrest at court.

If Plaintiffs are arrested by DHS officers in court, there is no legal mechanism to reverse the arrest. The harm is complete, and Plaintiffs cannot be made whole. DHS's courthouse arrest policies *only* target immigrants who demonstrate that they are not a flight risk by adhering to court orders and appearing when required. Plaintiffs' appearance in court proves that they are not a flight risk. The harm to DHS by granting the Temporary Restraining Order is minimal because

1  Plaintiffs have all proven that they are not a risk of flight. But the harm to Plaintiffs
2  of unlawful civil arrest in Court is great.

3      DHS's courthouse arrest policies cause Plaintiffs ongoing and irreparable
4  harm by infringing on their right to access the courts and defend themselves free
5  from the fear of civil arrest. DHS's courthouse arrest policies similarly harm the
6  public's right to be present in court, and they further infringe on a court's orderly
7  adjudication of matters before it. Plaintiffs must obtain prospective relief in this
8  Court to avert unlawful civil arrest in court. Moreover, Plaintiffs suffer continued
9  harm from the omnipresent specter of courthouse arrest because it impairs their
10  ability to present their defenses in court.

11  ### C.    The balance of equities and public interest weigh heavily in Plaintiffs' favor
12

13      The government "cannot reasonably assert that it is harmed in any legally
14  cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d
15  719, 727 (9th Cir. 1983). The balance of equities thus favors preventing the
16  violation of "requirements of federal law." *Arizona Dream Act Coal. v. Brewer*,
17  757 F.3d 1053, 1069 (9th Cir. 2014). Finally, "it is always in the public interest to
18  prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002
19  (emphasis added).

20      The balance of equities and public interest weigh strongly in Plaintiffs' favor
21  because Defendant's courthouse arrest policies permit Plaintiffs and members of
22  the public alike to be arrested in court. The American Immigration Lawyers
23  Association's amicus brief in support of this motion, and the organization's
24  explanation for why courthouse arrests harm its members, further underscores
25  Plaintiffs' arguments. Defendant's policy chills access to the courts for all people
26  who want to attend court as a party, witness, or observer.

27      "[J]udges must seek to maintain a judicial process that is a dignified process."
28  *Deck v. Missouri*, 544 U.S. 622, 631 (2005). For example, the use of shackles at

MOTION FOR TEMPORARY RESTRAINING ORDER

1   trial is an "affront to the very dignity and decorum of judicial proceedings that the
2   judge is seeking to uphold." *Illinois v. Allen*, 397 U.S. 337, 344 (1970). DHS's
3   courthouse arrests erode the "dignified process" that our court system is designed
4   to exhibit by forcing litigants and the public to sacrifice rights at the expense of
5   vindicating others. Unlawful courthouse arrests are even more invasive and
6   insidious than shackling because they threaten all present in the courtroom with
7   arrest. DHS's courthouse arrest policies chill the public's and Plaintiffs'
8   participation in court by dissuading meaningful participation in the judicial system.

9        For example, Plaintiffs have the right to call character witnesses in their favor
10  if they were to testify and have their credibility contested. *See* Fed. R. Evid. 608.
11  Problematically, Plaintiffs are all accused of being in the United States illegally,
12  and many of the possible character witnesses that they would call are
13  undocumented. The Defendant's policy requires Plaintiffs to choose between
14  presenting a robust defense to the criminal charges and potentially having a witness
15  arrested by DHS officers in court. Choosing between defending one's case and
16  getting someone deported is not a choice our system of justice condones or requires.

17       The threat of immigration arrest impermissibly impedes the public's access
18  to the courts and thus weighs strongly in favor of granting a temporary restraining
19  order.

20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

<div align="center">29</div>

<div align="center">MOTION FOR TEMPORARY RESTRAINING ORDER</div>

<div align="center">SER-260</div>

**IV.  Conclusion**

Urgent action is needed from the Court to prevent irreparable injury to Plaintiffs when they next appear in court for their petty misdemeanor cases. DHS's courthouse arrest policy fails APA review because it is arbitrary and capricious and because it is contrary to a "well settled" common-law privilege against civil arrest in court. It is further illegal because it impermissibly restricts access to the courts and infringes on Plaintiffs' First, Fifth and Sixth Amendment rights. It is finally unlawful because DHS officers are conducting arrests without a warrant as required by statute and the Fourth Amendment. This Court should intervene immediately and grant the temporary restraining order to prevent irreparable injury to Plaintiffs. The temporary restraining order is further in the best interest of the public because it will halt DHS's courthouse arrest practice in the Southern District of California and in so doing cease to chill public participation in the judicial system.

Respectfully submitted,

Dated:  October 20, 2020

*s/ James M. Johnson*

James M. Johnson
EMAIL: james@johnsontrial.com

Jeremy Delicino
Email: jeremy@jeremydelicino.com

Attorneys for Plaintiffs

30

MOTION FOR TEMPORARY RESTRAINING ORDER

2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PEDRO VALENCIA-AYALA, et al.,

Petitioner-Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

Respondent-Defendants.

Case No.:  20-cv-2060-DMS-KSC

**ORDER (1) SUSPENDING CIVIL
ARRESTS AND (2) SETTING
BRIEFING SCHEDULE**

On October 21, 2020, this matter came before the Court for a status conference. Upon agreement of the parties, it is ordered that U.S. Immigration and Customs Enforcement ("ICE") and U.S. Border Patrol ("USBP") shall suspend civil arrests on the grounds of the U.S. District Court for the Southern District of California courthouse complex for a period of three weeks.  This order shall be in effect through November 11, 2020, pending the following briefing schedule:

Respondent-Defendants shall file a response to Petitioner-Plaintiffs' motion for temporary restraining order on or before **October 30, 2020**.  Petitioner-Plaintiffs may file a reply on or before **November 4, 2020**.  Hearing on the motion is set for **November 10, 2020 at 10:00 a.m.**

/ / /

**IT IS SO ORDERED.**

Dated:  October 21, 2020

Hon. Dana M. Sabraw
United States District Judge

ROBERT S. BREWER, JR.
United States Attorney
KATHERINE L. PARKER, SBN 222629
Chief, Civil Division
DAVID D. LESHNER, SBN 207815
Chief, Criminal Division
COLIN M. MCDONALD, SBN 286561
Assistant U.S. Attorney
SAMUEL W. BETTWY, SBN 94918
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7634/7921/9144/7125 / 7751 (fax)
Katherine.parker@usdoj.gov, David.Leshner@usdoj.gov
Colin.McDonald@usdoj.gov, Samuel.bettwy@usdoj.gov

Attorneys for Defendants-Respondents

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO VALENCIA-AYALA, et al., | Case No. 20-CV-02060-DMS-AHG |
| Plaintiffs-Petitioners, | |
| vs. | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | Date: November 10, 2010 Time: 10:00am Hon. Dana M. Sabraw |
| Defendants-Respondents. | |

## DEFENDANTS' RESPONSE IN OPPOSITION

## TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

# CONTENTS

Table of Authorities   ii

I. INTRODUCTION   1

II. FACTUAL BACKGROUND   2

   A. *Plaintiffs' Arrests, Removal Proceedings, and Pending Orders of Removal*   2

   B. *Transfer to USMS for Criminal Prosecutions and Anticipated Resumption of Custody at Conclusion of Prosecutions*   5

III. SUMMARY OF ARGUMENT   7

IV. ARGUMENT   8

   A. *The Resumption of Immigration Custody is Not an Arrest*   8

   B. *Plaintiffs Fail to Establish Subject Matter Jurisdiction to Enjoin Any Prospective "Arrest"*   10

   C. *Plaintiffs Fail to Establish the Propriety of a TRO*   12

      1. *The Legal Framework*   12

      2. *There Is No Common Law Privilege Immunizing Plaintiffs from a Courthouse Immigration "Arrest"*   13

         a. Immigration Arrest Authority   14

         b. Plaintiffs' Claimed Privilege   15

         c. The Original Common Law Privilege and Its Limitations   16

         d. The Common Law Privilege Today   18

         e. The First Circuit's Decision in *Ryan v. ICE*   20

         f. *Ryan* is Right – No Privilege Applies Here   21

   D. Plaintiffs Cannot Establish Likelihood of Success on Any Claim   25

      1. *The APA Claims – Counts 1 and 2*   25

      2. *Right of Access to the Court – Count 3*   28

      3. *Right to Present a Defense – Count 4*   29

      4. *Warrantless Arrests – Counts 5 and 6*   30

   E. Plaintiffs Fail to Establish Irreparable Harm is Likely   31

   F. The Balance of Equities Tips against the Plaintiffs   32

V. CONCLUSION   33

# TABLE OF AUTHORITIES

**Cases**

*Abel v. United States*, 362 U.S. 217 (1960)...............................................................31

*Alcaraz v. United States*, No. C-13-511 MMC,
   2013 WL 4647560 (N.D. Cal. Aug. 29, 2013)....................................................11

*Alder v. Puisy*, 89 E.R. 10 ..........................................................................................16

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ..........................31

*Anderson v. United States*, 612 F.2d 1112 (1979)......................................................13

*Anonymous*, 1 Dowl. 157-58 (1832)............................................................................18

*Arizona Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160 (9th Cir. 2010) .................27

*Arizona v. United States*, 567 U.S. 387 (2012)......................................................14, 24

*Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 85 (D. Md. 2017)...................................11

*Barney v. Rogers*, 83 F.3d 318 (9th Cir.1996)..............................................................8

*Baumhoff v. United States,* 200 F.2d 769 (10th Cir. 1952) ...........................................9

*Bennett v. Spear*, 520 U.S. 154 (1997) .......................................................................26

*Cameron v. Lightfoot*, 96 E.R. 701 (K.B. 1778) .........................................................16

*Cancino-Castellar v. Nielsen*, 338 F. Supp. 3d 1107 (S.D. Cal. 2018)...................2, 12

*Carlson v. Landon*, 342 U.S. 524 (1952)....................................................................11

*Central Trust Co. v. Milwaukee Street Ry. Co.*, 74 F. 442 (E.D. Wis. 1896)................17

*City of El Cenizo, Texas v. Texas*, 890 F.3d 164 (5th Cir. 2018) .................................31

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) .....................................................26

*Commonwealth v. Daniel*, 6 Penn. L.J. 330 (Qtr. Sess. Phila. Co. 1847).....................18

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001).....................................................9

*Demore v. Kim*, 538 U.S. 510 (2003)..........................................................................28

*Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020) ..............................4

*Duncan v. Darst*, 42 U.S. 301 (1843)..........................................................................16

*Dupris v. McDonald*, 554 F. App'x 570 (9th Cir. 2014) ..............................................26

*Erie Railway Co. v. Tompkins*, 304 U.S. 64 (1938).....................................................21

*Employers Mut. Liability Ins. Co. v. Hitchcock*, 158 F. Supp. 783 (E.D. Mo. 1958) .19, 25

*Fiallo v. Bell*, 430 U.S. 787 (1977)..............................................................................24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)) ...29

*Goodwin v. Lordon*, 110 Eng. Rep. 1251 (1834) ........................................................18

*Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423 (1974) ...................................13

*Guardado v. United States*, 744 F. Supp. 2d 482 (E.D. Va. 2010)..............................11

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....................................................18

*Jacob v. Jacobs*, 3 Dowl. 675 (1835)..........................................................................18

*Jenkins v. Currier*, 514 F.3d 1030 (10th Cir. 2008)................................................9, 10

*Johnson v. Gill*, 883 F.3d 756 (9th Cir. 2018) ..............................................................8

*Kareva v. United States*, 9 F. Supp. 3d 838 (S.D. Ohio 2014).....................................11

ii

*Lamb v. Schmitt*, 285 U.S. 222 (1932)..................................................16, 18
*Landon v. Plasencia*, 459 U.S. 21 (1982) .........................................24, 32
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).................................29
*M.S. v. Brown*, 902 F.3d 1076 (9th Cir. 2018).........................................31
*Mesa v. United States*, 837 F. Supp. 1210 (S.D. Fla. 1993),
   *aff'd*, 123 F.3d 1435 (11th Cir. 1997) ...............................................26
*Mountague v. Harrison*, 140 E.R. 753 (K.B. 1857)..................................16
*Moylan v. AMF Overseas Corp.*, 354 F.2d 825 (9th Cir. 1965)................18
*Nachwalter v. Christie*, 805 F.2d 956 (11th Cir. 1986)............................22
*Netograph Mfg. Co. v. Scrugham*, 197 N.Y. 377, 90 N.E. 962 (1910) ........19
*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977)................12
*New York v. ICE*, 2020 WL 3067715 (S.D.N.Y. June 10, 2020)................23
*Nguyen Da Yen v. Kissinger*, 528 F.2d 1194 (9th Cir. 1975). ...................26
*Nken v. Holder*, 556 U.S. 418 (2009)....................................................32
*Page Co. v. MacDonald*, 261 U.S. 446 (1923) ......................................18
*Pasquantino v. United States*, 544 U.S. 349 (2005)................................23
*Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) ...........13
*Reno v. Am.–Arab Anti–Discrimination Comm.*, 525 U.S. 471 (1999).........................10
*Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003)......................................9
*Ryan v. ICE*, 974 F.3d 9 (1st Cir. 2020) ...........................13, 14, 20, 22-24
*Sacora v. Thomas*, 628 F.3d 1059 (9th Cir. 2010)....................................27
*Shuler v. United States*, 531 F.3d 930 (D.C. Cir. 2008) ...........................26
*Silva v. United States*, 866 F.3d 938 (8th Cir. 2017)...............................11
*Sissoko v. Rocha*, 509 F.3d 947 (9th Cir. 2007)......................................11
*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)......................................29
*Stewart v. Ramsay*, 242 U.S. 128 (1916)..............................................18
*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009).......................12
*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832 (9th Cir. 2001)...........12
*Texas Industries, Inc. v. Radcliff Materials, Inc*., 451 U.S. 630 (1981) .......................22
*United States ex rel. Vanorsby v. Acevedo*, 2012 WL 3686787 (N.D. Ill. Aug. 24, 2012).9
*United States v. Bernal-Sanchez*, Case No. 20-mj-20169-JLB)....................................7
*United States v. Butcher*, 926 F.2d 811 (9th Cir. 1991) ........................ 9, 10
*United States v. Craft*, 535 U.S. 274 (2002)..........................................21
*United States v. Fernandez*, Case No. 20-mj-20456-MSB ........................32
*United States v. Fernandez-Ferrer*, Case No. 19-cr-3668-KSC ...................32
*United States v. Hefti*, 879 F.2d 311 (8th Cir. 1989)...............................18
*United States v. Hernandez-Guerrero*, 147 F.3d 1075 (9th Cir. 1998).........................14
*United States v. Laville*, 480 F.3d 187 (3d Cir. 2007).................................9
*United States v. Lett*, 944 F.3d 467 (2d Cir. 2019)....................................5
*United States v. Lopez*, 762 F.3d 852 (9th Cir. 2014) .................................3

iii

*United States v. Morales-Roblero*, Case No. 19-MJ-24442-AHG (S.D. Cal. Sept. 14, 2020) ............................................................................................... 31
*United States v. Polito*, 583 F.2d 48 (2d Cir.1978) ........................................ 9
*United States v. Velazquez-Morales*, Case No. 20-mj-20275-MDD ............ 32
*United States v. Velazquez-Morales*, No. 20MJ20275-MDD-JLS, 2020 WL 5993918 (S.D. Cal. Oct. 9, 2020) ....................................................................... 21, 23
*United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018) ....................... 5
*Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925 (D.C. Cir. 2008) ............... 27
*Washington v. DHS*, 2020 WL 1819837 (W.D. Wash. Apr. 10, 2020) ......................... 23
*Wheely v. Richam*, 92 E.R. 882 (K.B. 1694) .............................................. 16
*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). ......................... 12
*Wood v. Boyle*, 177 Pa. 620, 35 A. 853 (1896). ........................................ 24

**Statutes**

5 U.S.C. § 701(a) ....................................................................................... 25
5 U.S.C. § 706(2)(A) ........................................................................... 25, 26
8 U.S.C. § 1182 ......................................................................................... 14
8 U.S.C. § 1182(b)(5)(A) ........................................................................ 4, 5
8 U.S.C. § 1225 ......................................................................................... 14
8 U.S.C. § 1225(b)(1)(B)(iii)(IV) .............................................................. 4
8 U.S.C. § 1226 .................................................................................... 8, 14
8 U.S.C. § 1226(a) .................................................................................... 14
8 U.S.C. § 1226(c) .................................................................................... 15
8 U.S.C. § 1226(e) ............................................................... 2, 10, 12, 28
8 U.S.C. § 1229(e)(1) ............................................................................... 15
8 U.S.C. § 1231 ................................................................................ 8, 14, 15
8 U.S.C. § 1231(a)(2) ................................................................................. 4
8 U.S.C. § 1231(a)(4) ............................................................................... 21
8 U.S.C. § 1252(b)(9) ................................................................................. 2
8 U.S.C. § 1252(g) ............................................................................. passim
8 U.S.C. § 1357 ..................................................................................... 8, 14
8 U.S.C. § 1357(a)(2) .......................................................................... 14, 30
8 U.S.C. § 1357(a)(3) ............................................................................... 15
8 U.S.C. § 1357(e) .................................................................................... 15
8 U.S.C. § 1367 ....................................................................................... 15

iv

**Regulations**

8 C.F.R. § 1241.8(f) ................................................................4
8 C.F.R. § 235.3(b)(2)(iii) .......................................................4
8 C.F.R. § 235.3(b)(4)(ii) ........................................................4
8 C.F.R. § 235.3(b)(5)(i) ..........................................................4
8 C.F.R. § 241.2(b) ...............................................................30
8 C.F.R. § 287.5(c) ...............................................................14
8 C.F.R. § 287.5(e)(2) ...........................................................30

**Other Authorities**

MATTHEW BACON, A NEW ABRIDGEMENT OF THE LAW (4th ed. 1759)........................17
BLACK'S LAW DICTIONARY (9th ed. 2009)...............................................8
EDWARD P. WEEKS, A TREATISE ON ATTORNEYS AND COUNSELLORS AT LAW (1878).....17
WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)......................................8
WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND.................... 16, 23
William Fletcher, *The General Common Law and Section 34 of the Judiciary Act of 1789: The Example of Marine Insurance*, 97 HARV. L. REV. 1513 (1984)...........22

v

I

INTRODUCTION

This Court should deny Plaintiffs' motion for a temporary restraining order. Conspicuously absent from Plaintiffs' motion is any mention of the true state of their immigration proceedings. After Border Patrol arrested each Plaintiff illegally entering the United States, each Plaintiff was ordered removed from the United States and—with the exception of one Plaintiff who has made claims requiring additional review—is currently subject to an imminently executable order of removal.

Instead of immediately executing these removal orders, Border Patrol transferred custody of the Plaintiffs to the U.S. Marshals Service (USMS) for the purpose of criminal prosecution. And when those prosecutions (and any sentences) are complete, Border Patrol—as required by law—will resume custody of the Plaintiffs to execute the pending removal orders. In other words, contrary to Plaintiffs' allegations, Border Patrol is not indiscriminately arresting undocumented aliens at the federal courthouse. Rather, Border Patrol is prudently tracking its arrestees—paroled out of immigration custody solely for the purpose of criminal prosecution—to resume custody when their criminal cases end and remove them from the United States.

Plaintiffs' request for a TRO is in effect a request for a judicially sanctioned head start in fleeing from immigration officials and avoiding removal from the United States. This would undermine weighty public interests in the execution of Plaintiffs' removal orders. Neither precedent nor prudence supports this endorsement of lawlessness. Plaintiffs' claims do not either. Beyond citing actions and policies that do not apply to Border Patrol—and that do not reflect the actual facts presented here—Plaintiffs primarily rely on an alleged privilege against civil courthouse arrests. But Border Patrol is not conducting arrests. And regardless, no privilege immunizes Plaintiffs from a courthouse arrest. The claimed privilege historically applied only as to private parties making private arrests to initiate private lawsuits. It did not apply to arrests by the sovereign. Moreover, removing any doubt as to the privilege's inapplicability, Congress has given expansive

1   arrest authority to immigration authorities and in fact has passed legislation explicitly

2   contemplating immigration arrests at courthouses. In any event, a discussion of the

3   common law privilege is academic, because this Court lacks jurisdiction to review whether,

4   when, or where immigration arrests may take place. *See* 8 U.S.C. §§ 1226(e), 1252(g). The

5   circuit court has exclusive jurisdiction to review the lawfulness of arrests in removal

6   proceedings, in the context of a petition for review. *See* 8 U.S.C. § 1252(b)(9); *Cancino-*

7   *Castellar v. Nielsen*, 338 F. Supp. 3d 1107, 1116 (S.D. Cal. 2018).

8       Plaintiffs also claim that Border Patrol's presence in the courtroom chills potential

9   undocumented witnesses from testifying on their behalf. These claims are speculative:

10   Plaintiffs do not identity any such witnesses, much less offer reason to believe they possess

11   relevant testimony. Plaintiffs fail every TRO requirement. Their motion should be denied.

II

## FACTUAL BACKGROUND

A.   *Plaintiffs' Arrests, Removal Proceedings, and Pending Orders of Removal*

16       Plaintiffs have no lawful immigration status in the United States. Each was arrested

17   by Border Patrol illegally  entering the United States near the border. Most were hiding

18   behind rocks or under bushes when found. Some have prior criminal convictions in the

19   United States. Several have been deported from the United States previously. One had been

20   deported earlier on the same day he was found back in the United States. There is no dispute

21   that Border Patrol lawfully  and appropriately arrested each of them without a warrant. A

22   fuller recitation of the facts pertaining to each Plaintiff is set forth in the Appendix.

23       Following their arrests, each Plaintiff was placed in removal proceedings. Some

24   entered reinstatement proceedings, while the remainder were placed in expedited removal

25   proceedings. At the conclusion of those proceedings, all of the Plaintiffs were ordered

26   removed from the United States by an authorized immigration official. *See* Exs. 1-15.

27   ///

28   ///

2

For the Plaintiffs ordered removed in reinstatement proceedings, the Department of Homeland Security (DHS) issued warrants of removal on Form I-205. These warrants explicitly command "any immigration officer of the United States" to "*take into custody*" and "remove" the named alien. *See, e.g.*, Ex. 2 (emphasis added). The warrant of removal below, pertaining to Plaintiff Morales-Roblero, is illustrative of the warrants of removal outstanding for him and seven other Plaintiffs (Cruz-Ibarra, Contreras-Vergara, Oliser Hernandez, Pastor-Narciso, Orellana-Ardon, Velazquez-Morales, and Aranda-Moreno).



Ex. 2.

For the remaining Plaintiffs ordered removed in expedited removal proceedings, DHS issued Form I-296, titled "Notice to Alien Ordered Removed/Departure Verification." *See e.g.*, Ex. 1. Form I-296 does not contain the same command to "take into custody" as Form I-205, but the form has the same function—to authorize execution of the removal orders and record the removal of aliens from the United States. *See United States v. Lopez*, 762 F.3d 852, 860 (9th Cir. 2014) ("The only functional difference between the two [forms (I-296 and I-205)] is that a verification of removal is used to record the removal

3

of aliens pursuant to expedited removal procedures, while the warrant of removal records the removal of aliens following a hearing before an immigration judge."). With the exception of one Plaintiff,[1] all of the pending removal orders are immediately executable.

Detention of inadmissible aliens in reinstatement and expedited removal proceedings is mandatory.[2] The one exception is that an alien may be paroled from custody when "required to meet a medical emergency or is necessary for a legitimate law enforcement objective." 8 C.F.R. § 235.3(b)(2)(iii); *see also* § 235.3(b)(4)(ii) (mandatory detention, with parole exception, for credible fear claims); § 235.3(b)(5)(i) (mandatory detention, with parole exception, for those claiming permanent resident status); 8 U.S.C. § 1182(b)(5)(A) ("The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien.").

---

[1] Plaintiff Escobar-Mejia made claims during his expedited removal proceeding that require additional review and adjudication before he can be removed. Detention is mandatory for his forthcoming proceedings, 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), with parole being the only exception. *See* 8 U.S.C. § 1182(b)(5)(A).

[2] *See* 8 C.F.R. § 235.3(b)(2)(iii) ("an alien whose inadmissibility is being considered under this section or who has been ordered removed pursuant to this section shall be detained pending determination and removal . . . ."); 8 C.F.R. § 235.3(b)(4)(ii) ("Pending the credible fear determination by an asylum officer and any review of that determination by an [IJ], the alien shall be detained."); *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1970 (2020) ("It is not disputed that he was apprehended in the very act of attempting to enter this country; that he is inadmissible because he lacks an entry document, see §§ 1182(a)(7)(A), 1225(b)(1)(A)(i); and that, under these circumstances, his case qualifies for the expedited review process, including '[m]andatory detention' during his credible-fear review, §§ 1225(b)(1)(B)(ii), (iii)(IV). Moreover, simply releasing him would not provide the right to stay in the country that his petition ultimately seeks. Without a change in status, he would remain subject to arrest, detention, and removal. §§ 1226(a), 1229a(e)(2)."); 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."); 8 C.F.R. § 1241.8(f) (regulating reinstatement of removal and providing that detention will be in accord with the general provisions on detention after entry of a removal order).

4

Then, when "the purposes of such parole . . . have been served[,] the alien shall forthwith return or be returned to the custody from which he was paroled . . . ." 8 U.S.C. § 1182(b)(5)(A).

### B.   Transfer to USMS for Criminal Prosecutions and Anticipated Resumption of Custody at Conclusion of Prosecutions

Though Plaintiffs are subject to imminent removal from the United States (with the exception of Plaintiff Escobar-Mejia), DHS did not immediately remove them. Instead, to permit their criminal prosecution for their illegal entries, Border Patrol transported Plaintiffs to the Metropolitan Correctional Center (MCC) and transferred them into the custody of USMS. *See* Declaration of Bradley J. Blazer (Blazer Decl.) ¶¶ 3, 7. After the transfer of custody, Plaintiffs then appeared before a U.S. Magistrate Judge to be arraigned on the illegal-entry charge. In each case, the assigned Magistrate Judge ultimately denied the United States' motion to detain incident to the criminal case and ordered the Plaintiffs released on bond under the Bail Reform Act. *See* 18 U.S.C. § 3141 *et seq.* At that time, DHS had authority to revoke parole and retake Plaintiffs into immigration custody or to set a separate bond,[3] but exercised discretion to abstain out of deference to the ongoing

---

[3] Even where a Court has ordered release in a criminal case under the Bail Reform Act, immigration authorities have independent statutory authority under the Immigration and Nationality Act (INA) to keep the alien in immigration custody. *See United States v. Lett*, 944 F.3d 467, 469 (2d Cir. 2019) ("We conclude that there is no conflict between the detention-and-release provisions of the two statutes, and we hold that immigration authorities may lawfully detain a criminal defendant ordered to be released under the BRA pursuant to their authority under the INA to detain aliens seeking admission into the United States who are not 'clearly and beyond a doubt entitled to be admitted' for removal proceedings."); *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018) ("For the foregoing reasons, we hold that ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination."); *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019) ("Detention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities. The Supreme Court has affirmed that civil detention is a constitutionally permissible part of the Congress's broad power over immigration and the Executive's authority to execute that power.").

5

criminal proceedings. *See* Blazer Decl. ¶ 7. Accordingly, Plaintiffs have been residing in the United States under final, executable orders of removal while their criminal cases are pending.

It is unknown whether Plaintiffs will appear for their scheduled trials. A high percentage of illegal entry defendants (approximately forty percent) do not, choosing instead to disappear into the United States. *See* Blazer Decl. ¶ 2. In fact, Plaintiff Morales-Roblero failed to appear at his scheduled bench trial this week (on October 26), and the court issued a warrant for his arrest. *See* Case No. 19MJ24442-AHG, ECF No. 49.

In the event Plaintiffs do appear for their scheduled trials and their cases end, and in the event they do not receive a custodial sentence,[4] then the purpose for Plaintiffs' parole from Border Patrol to USMS will be concluded, and Border Patrol will "forthwith" resume custody of the Plaintiffs to execute the final removal orders.[5] In addition to complying with statutory parole principles, taking such action at the courthouse is prudent for reasons that include safety, security, certainty, and efficiency. *See* Declaration of Jasper Frontiero (Frontiero Decl.) ¶ 6. Doing so at the courthouse also prevents the counterproductive result that occurred last week in Plaintiff Valencia-Ayala's case. Specifically, on October 21, 2020, Valencia-Ayala was found guilty of illegally entering the United States and sentenced to time-served. *See* Case No. 19MJ23473-MDD-JLS, ECF No. 51. Then, due to the current, voluntary agreement not to conduct courthouse arrests pending resolution of Plaintiffs' motion, and despite a pending order for his removal, Valencia-Ayala walked out of the courthouse, and is now at large in the United States.[6] Locating him now to execute the pending removal order will be difficult and will require significant resources. *See, e.g.,* Blazer Decl. ¶ 8.

---

[4] If Plaintiffs receive a custodial sentence, they will be remanded into the custody of the USMS. In that event, the transfer from USMS to Border Patrol custody will occur, not in the courtroom, but at the detention facility when the custodial sentence is complete.

[5] To be clear, despite Plaintiffs' and amici's repeated references to Immigration and Customs Enforcement activity, ICE is not involved here. *See, e.g.*, Frontiero Decl. ¶ 3.

[6] The same occurred with Plaintiff Contreras-Vergara on Friday, October 30.

6

Finally, as U.S. Magistrate Judge Jill L. Burkhardt recently stated, taking Plaintiffs into custody in the courtroom "is the most dignified and safest way for Border Patrol" to do so. Ex. 16 at 3 (Excerpts of Oct. 16, 2020 Proceedings, *United States v. Bernal-Sanchez*, Case No. 20-mj-20169-JLB). Consistent with those remarks, the attached declaration of Border Patrol Agent Jasper Frontiero describes the respectful remand process, as well as the safety and security reasons for conducting the remands in the courtroom. *See* Frontiero Decl. ¶¶ 4-6. Agent Frontiero also states that he has never arrested a witness or family member attending court, and has not heard of any such action by USBP personnel at the courthouse. *See* Frontiero Decl. ¶ 7.

### III

### SUMMARY OF ARGUMENT

Plaintiffs' claims fail from their starting assumption that Border Patrol's actions constitute "arrests." They do not. Border Patrol is simply resuming physical custody, after a period of constructive custody under parole authority, to execute outstanding removal orders. This resolves Plaintiffs' motion altogether. But even if the resumption of custody were construed to be an "arrest," Plaintiffs' claims fail. First, at the outset, the INA explicitly prohibits judicial review of any decision to arrest Plaintiffs and execute their removal orders. Second, as the First Circuit recently held, there is no privilege immunizing Plaintiffs from an immigration arrest at the courthouse. Third, Border Patrol is following the relevant statutory and regulatory immigration scheme; there is no final agency action to contest under the APA, much less "arbitrary or capricious" action. Fourth, Plaintiffs' Sixth Amendment claim—that unnamed undocumented witnesses are chilled from appearing in court—is fatally speculative. Fifth, Plaintiffs' claim that Border Patrol must have a warrant to arrest them runs headlong into the fact that Border Patrol is not making arrests, and ignores that Border Patrol in fact has pending final orders of removal for the Plaintiffs and has issued warrants—or warrant equivalents in the expedited removal context—for their execution. Plaintiffs fail to show likelihood of success on any of their claims.

7

The remaining factors also weigh strongly against a TRO. Plaintiffs are subject to mandatory detention and imminent removal from the United States. There is therefore no cognizable irreparable harm presented by the prospect of Border Patrol "arresting" them at the courthouse. The harms Plaintiffs complain of—arrest and removal—were guaranteed the moment they crossed illegally into the United States and the moment their removal orders became final. For related reasons, the balance of equities and the public interest do not favor the TRO, which would serve only to thwart enforcement of U.S. immigration law. Plaintiffs' TRO motion should be denied.

IV

ARGUMENT

A.    *The Resumption of Immigration Custody is Not an Arrest*

Border Patrol is not "re-arresting" any illegal-entry defendants in court. The arrests already occurred when Border Patrol found them illegally entering the United States, pursuant to their statutory arrest authorities. *See* 8 U.S.C. §§ 1226, 1231, 1357. Subsequently, at all times, Border Patrol maintains custody—physical or constructive—over them. The constructive custody begins when Border Patrol exercises parole authority and transfers physical custody over to the USMS for the purposes of a criminal prosecution.

That physical transfer does not terminate Border Patrol's lawful authority over the parolees. *See Johnson v. Gill*, 883 F.3d 756, 761 (9th Cir. 2018) ("Although 'custody' can mean mere physical possession or control of a person, it may also refer to lawful authority over a person.") (citing BLACK'S LAW DICTIONARY 441 (9th ed. 2009) (defining "constructive custody" as "[c]ustody of a person (such as a parolee or probationer) whose freedom is controlled by legal authority but who is not under direct physical control"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 559 (2002) ("[C]ontrol of a thing or person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it.")); *see e.g., Barney v. Rogers*, 83 F.3d 318, 320 n.1 (9th Cir.1996) ("Parole is the legal fiction whereby an alien is allowed to be physically present in the United States for a specific purpose. The alien is not deemed to have 'entered' the United States as that

8

1   term is used in 8 U.S.C. § 1101(a)(13) of the Immigration and Nationality Act."). Then, as

2   the parole statute explicitly states, when the purposes of a parole have been served, "the

3   alien shall forthwith return or be returned to the custody from which he was paroled . . . ."

4   8 U.S.C. § 1182(b)(5)(A).

5       A transfer of custody is not a re-arrest. *See, e.g.*, *United States v. Laville*, 480 F.3d

6   187 (3d Cir. 2007) (holding that it is aware of no authority that even implies that a custodial

7   transfer constitutes a "new arrest" requiring a separate showing of probable cause); *United*

8   *States ex rel. Vanorsby v. Acevedo*, 2012 WL 3686787 at * 5 (N.D. Ill. Aug. 24, 2012)

9   (holding that merely transferring custody of an individual from one law enforcement

10   agency to another deprives him of nothing he has not already lost by being taken into

11   custody in the first place). Although Border Patrol may transfer corporeal custody to

12   another agency for various law enforcement purposes, Border Patrol retains constructive

13   custody because the transferee law enforcement agency is acting as Border Patrol's agent.

14   *See, e.g.,. Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70-73 (2001) (non-federal entity

15   contracted to detain federal prisoners acts under color of federal authority); *Roman v.*

16   *Ashcroft,* 340 F.3d 314, 320-21 (6th Cir. 2003) (explaining that DHS retains constructive

17   custody of aliens transferred to other law enforcement agencies for housing purposes).

18       Cases involving state parole further illustrate the lack of an "arrest" here. As the

19   Ninth Circuit has stated, "[t]he arrest of a parolee is more like a mere transfer of the subject

20   from constructive custody into actual or physical custody." *United States v. Butcher*, 926

21   F.2d 811, 814 (9th Cir. 1991) (internal quotation marks omitted). The Tenth Circuit

22   explored this parole/arrest distinction, stating:

23       Most courts that have considered the Fourth Amendment implications of
     seizing a parole violator have held that a parolee remains in legal custody
24       during the period of his parole and therefore that the retaking of a parole
25       violator does not constitute an arrest for Fourth Amendment purposes.

26   *Jenkins v. Currier*, 514 F.3d 1030, 1033–34 (10th Cir. 2008) (citing *United States v. Polito,*

27   583 F.2d 48, 54–56 (2d Cir.1978) (collecting cases) and *Baumhoff v. United States,* 200

28   F.2d 769, 770 (10th Cir. 1952) ("It is true that during the time a prisoner is at large on

9

parole he remains in constructive custody.")). Moreover, *Jenkins* observed that the Ninth Circuit, while using the term "arrest" to describe the retaking of a parolee, has "similarly indicated that the full protections of the Fourth Amendment do not apply in such a situation: '[P]robable cause is not required to arrest a parolee for a violation of parole. Warrantless arrests of parole violators are also valid. The arrest of a parolee is more like a mere transfer of the subject from constructive custody into actual or physical custody.'" *Jenkins*, 514 F.3d at 1034 (quoting *Butcher*, 926 F.2d at 814). The same principles apply here—but with even greater force given the statutory authority: Border Patrol is not re-arresting illegal entry defendants; they are resuming custody following completion of their criminal cases.

> B.   *Plaintiffs Fail to Establish Subject Matter Jurisdiction to Enjoin Any Prospective "Arrest"*

Even if Border Patrol's potential courthouse actions were construed to be arrests, any action by Border Patrol to resume custody of Plaintiffs to execute their removal orders is not subject to judicial review, except in the context of removal proceedings. Specifically, 8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdiction stripping provision applies to "three discrete actions that the Attorney General may take: [the] 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999). Further, under 8 U.S.C. § 1226(e), "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e).

10

Here, it is undisputed that Plaintiffs are subject to final, executable orders of removal. And Border Patrol intends to take them back into custody at the conclusion of their criminal proceedings to execute those orders. *See Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of [the] deportation procedure."). Plaintiffs' attempt to enjoin this potential action therefore falls squarely within the jurisdictional bar of § 1252(g). *See Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851, 877 (D. Md. 2017) ("Plaintiff's claim that she was tortiously arrested and imprisoned is directly related to and arises from the Federal Defendants' decision or action to execute the final order of removal against her pursuant to the directive of § 1231. Put differently, Plaintiff seeks to hold the government liable for the Federal Defendants' decision to arrest her based on a final order of removability—this claim falls squarely within the jurisdictional bar of § 1252(g)."). [7] Plaintiffs here go even a step further—seeking to use this Court to prevent an alleged "arrest" before it even happens. The entirety of Plaintiffs' action is barred by 8 U.S.C. § 1252(g), so the TRO motion should be denied.

Furthermore, pursuant to 8 U.S.C. § 1252(b)(9), any judicial review of whether immigration arrests are lawful is exclusively the province of the circuit courts in petition for review proceedings:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under

---

[7] *See also Sissoko v. Rocha*, 509 F.3d 947, 948-49 (9th Cir. 2007) (holding district court lacked jurisdiction to consider damages claim where plaintiff alleged "false arrest" based on alien's detention, where "detention arose from [government agent's] decision to commence expedited removal proceedings"); *Alcaraz v. United States*, No. C-13-511 MMC, 2013 WL 4647560, at *2 (N.D. Cal. Aug. 29, 2013) (finding that FTCA false arrest and imprisonment claim "plainly arises from the decision to execute [a] removal order" and therefore is barred by § 1252(g)); *Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) (finding that § 1252(g) barred FTCA claim stemming from arrest pursuant to removal order); *Guardado v. United States*, 744 F. Supp. 2d 482, 488 (E.D. Va. 2010) (finding that § 1252(g) barred FTCA false imprisonment claim stemming from arrest pursuant to removal order); *Kareva v. United States*, 9 F. Supp. 3d 838, 844-45 (S.D. Ohio 2014) (same).

11

1
2
3
4

this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

5
6
7
8

8 U.S.C. § 1252(b)(9). *See Cancino-Castellar v. Nielsen*, 338 F. Supp. 3d at 1116 ("This issue is clearly cognizable in the PFR process. Accordingly, the Court affirms that it lacks jurisdiction over Plaintiffs' Fourth Amendment probable cause claim pursuant to Section 1252(b)(9)."); *see also* 8 U.S.C. § 1226(e).

9

   C.   *Plaintiffs Fail to Establish the Propriety of a TRO*

10
11

Apart from lack of subject matter jurisdiction, Plaintiffs' motion for a TRO fails on the merits.

12

      1.   *The Legal Framework*

13
14
15
16
17
18
19
20
21
22
23
24
25
26

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). That requires the plaintiff to demonstrate: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation and internal quotation marks omitted). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Id.* at 22.

27

///

28

///

1   The purpose of a TRO is to preserve the status quo before a preliminary injunction
2   hearing may be held. Plaintiffs do not seek to preserve the status quo until this Court may
3   decide their claims. Rather, they ask this Court to essentially decide the dispute at its
4   inception via a TRO that would require cessation of civil courthouse transfers of custody.
5   Such relief is especially disfavored. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S.
6   423, 438–39 (1974) (noting that TROs "should be restricted to serving their underlying
7   purpose of preserving the status quo and preventing irreparable harm just so long as is
8   necessary to hold a hearing, and no longer"); *Reno Air Racing Ass'n, Inc. v. McCord*, 452
9   F.3d 1126, 1131 (9th Cir. 2006) (noting that "courts have recognized very few
10   circumstances justifying the issuance of an ex parte TRO"); *Anderson v. United States*, 612
11   F.2d 1112, 1114 (1979) ("[m]andatory preliminary relief, which goes well beyond simply
12   maintaining the status quo pendente lite, is particularly disfavored, and should not be issued
13   unless the facts and law clearly favor the moving party").

14           2.   *There Is No Common Law Privilege Immunizing Plaintiffs*
15                *from a Courthouse Immigration "Arrest"*

16   The principal argument permeating Plaintiffs' causes of action is that a common law
17   privilege immunizes them from civil courthouses arrests. This argument is meritless.
18   Congress gave the executive branch expansive authority to enforce the immigration laws
19   of the United States, including by permitting arrests for immigration violations wherever
20   an alien is found. No common law privilege limits this authority. Indeed, Plaintiffs cannot
21   cite a single historical case applying the privilege—which applied to private parties seeking
22   to initiate private lawsuits—to an arrest made by the sovereign to further the sovereign's
23   interests. The First Circuit rejected Plaintiffs' argument on much more wide-ranging facts
24   than are presented here. *See Ryan v. U.S. Immigration & Customs Enforcement*, 974 F.3d
25   9 (1st Cir. 2020). The result should be the same here.
26   ///
27   ///
28   ///

13

a.   <u>Immigration Arrest Authority</u>

The federal government "has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). "This authority rests, in part, on . . . its inherent power as sovereign to control and conduct relations with foreign nations." *Id.* (citations omitted). Accordingly, "it has been universally recognized that Congress possesses authority over immigration policy as an incident of sovereignty." *United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1076 (9th Cir. 1998). Exercising its plenary authority, Congress in the INA gave broad arrest authority to the Executive Branch in immigration affairs. *See, e.g.,* 8 U.S.C. §§ 1182, 1225, 1226, 1231, 1357; *Ryan v. ICE*, 974 F.3d at 19 ("The text of the INA confers broad authority upon ICE to conduct civil arrests."). Specifically, Congress provided that "[o]n a warrant issued by the Attorney General,[8] an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Congress also provided that "without [a] warrant," a federal officer may "arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any [] law or regulation and is likely to escape before a warrant can be obtained for his arrest." *Id.* § 1357(a)(2). "On their face, neither of these provisions bars ICE officers from exercising their civil arrest power either in courthouses or against individuals attending court on official business." *Ryan v. ICE*, 974 F.3d at 19.

Indeed, these statutes confer arrest authority that is generally plenary and unqualified. There is no jurisdictional limitation on where these arrests can occur—aliens subject to immigration enforcement may be arrested anywhere in the country. *See* 8 U.S.C. § 1226(a) (providing for arrests "[o]n a warrant" without jurisdictional limitation), § 1357 (providing for warrantless arrests without jurisdictional limitation); 8 C.F.R. § 287.5(c) (similar).

---

[8] Congress has since transferred immigration enforcement functions from the Attorney General to the Secretary of Homeland Security. *See* 6 U.S.C. § 251.

14

When Congress wanted to restrict immigration officers' powers, it did so explicitly—e.g., by authorizing "access to private lands" within "twenty-five miles" of the border, but limiting access to "dwellings," and restricting warrantless entry to "the premises of a farm or other outdoor agricultural operation." *See* 8 U.S.C. § 1357(a)(3), (e). Likewise, with respect to arrest authority, for aliens serving a term of imprisonment, DHS must wait to make an arrest until after the period of imprisonment is complete. *Id.* § 1226(c); *see id.* § 1231. In other words, Congress knew how to limit DHS's arrest authority and made conscious choices about when, where, and how to do so.[9] And Congress included no prohibition on courthouse arrests.

On the contrary, Congress has explicitly contemplated that immigration arrests may—and will—occur at courthouses. For instance, in 2006, Congress provided that when "an enforcement action leading to a removal proceeding" takes places "at a courthouse (or in connection with that appearance of the alien at a courthouse)," then, for certain categories of aliens arrested, the Notice to Appear initiating removal proceedings must include a statement confirming compliance with the confidentiality requirements of 8 U.S.C. § 1367. *See* 8 U.S.C. § 1229(e)(1), (2). Not only is enforcement at courthouses not prohibited, then, it is expressly contemplated by statute.

### b.    Plaintiffs' Claimed Privilege

Despite this backdrop outlining DHS's expansive arrest authority, Plaintiffs claim that a common law privilege against civil courthouse arrests limits this authority and immunizes them from being "arrested" by immigration officials at the courthouse. But the privilege never applied to the sovereign; its roots lie in preventing private parties from making civil courthouse arrests on other private parties in an era where civil arrest was

---

[9] *See generally Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. . . . Had Congress intended to restrict § 1963(a)(1) to an interest in an enterprise, it presumably would have done so expressly as it did in the immediately following subsection (a)(2).") (citations omitted).

15

1  necessary to initiate a civil lawsuit. The privilege did not prevent acts of the sovereign or

2  apply to criminal defendants. In keeping with its historical origins, the modern privilege

3  remains a privilege against service of process, one the Supreme Court has cautioned

4  "should not be enlarged beyond the reason upon which it is founded[.]" *Lamb v. Schmitt*,

5  285 U.S. 222, 225 (1932). Plaintiffs' requested application of the privilege would do just

6  that.

7  <div align="center">c.   The Original Common Law Privilege and Its Limitations</div>

8       Many centuries ago, a civil plaintiff commenced a civil lawsuit by having the

9  defendant arrested pursuant to a writ of *capias ad respondendum*. *See Duncan v. Darst*, 42

10  U.S. 301, 304-07 (1843) (discussing common law writ). The civil arrest gave the court

11  personal jurisdiction over the defendant, who was held to answer the plaintiff's charges in

12  court. *See* 3 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 281-83

13  (1768)[10] (describing use of writ). In this era, a privilege against civil arrest existed for

14  certain persons going to, attending, and leaving courthouses. *See* 3 Blackstone, at 288-90.

15  The privilege did not belong to the person attending, but to the Court itself. *See Cameron*

16  *v. Lightfoot*, 96 E.R. 701, 702 (K.B. 1778) ("But this privilege is not considered as the

17  privilege of the person attending the Court, but of the Court which he attends."}.

18  Accordingly, it was "discretionary with the court to allow it or nor as [would] best advance

19  the interests of justice." *Mountague v. Harrison*, 140 E.R. 753, 753 (K.B. 1857).

20       In addition to its being discretionary, the privilege was limited in other significant

21  ways. For instance, the privilege did not apply to legal action undertaken by the sovereign.

22  As English courts made clear, "certainly no privilege [was] good against the King." *Wheely*

23  *v. Richam*, 92 E.R. 882, 882 (K.B. 1694); *see also Alder v. Puisy*, 89 E.R. 10, 10 n.1

24  ("[T]here is no privilege against the King's process."). Indeed, "the King may sue where

25  he pleases." *Wheely*, 92 E.R. at 882. As an example, in the English system, attorneys had

26

27  ─────────────────

   [10]  *Available at* https://www.google.com/books/edition/Commentaries_on_the_Laws_of

28  _England/laZFAAAAcAAJ?hl=en&gbpv=1&dq=Blackstone+commentaries+volume+3
   +1768.

<div align="center">16</div>

a privilege against courthouse arrest. *See Central Trust Co. v. Milwaukee Street Ry. Co.*, 74 F. 442, 443 (E.D. Wis. 1896) ("The ancient rule in England extended to practicing attorneys generally the privilege from arrest by the ordinary process of court, on the theory that they were 'always supposed to be there attending'") (quoting 3 Blackstone at 289).

An attorney's common law privilege against civil arrest, however, did not extend to matters concerning the sovereign: "In [cases] in which the King alone is concerned, the Officer [of the Court] shall not have Privilege; for it would be unreasonable that the Courts should allow Protection to those who offend against the publick [sic] Peace of the Community and the King's Interest." 4 MATTHEW BACON, A NEW ABRIDGEMENT OF THE LAW 222 (4th ed. 1759) (citations omitted)[11]; *see also* EDWARD P. WEEKS, A TREATISE ON ATTORNEYS AND COUNSELLORS AT LAW § 107, at 200 (1878)[12] (stating general rule that attorneys are immune from arrest coming or going from court, but not against the sovereign: "In England, an attorney is not privileged when the action is wholly at the suit of the king, or if he be sued in exchequer as accountant to the king").

Finally, criminal defendants had no privilege against civil courthouse arrests. As a mid-19th century Pennsylvania Court of Quarter Sessions stated:

> In England, there can be no longer any doubt on this subject. Repeated adjudications have settled, that the privilege from arrest, *eundo morando et redeundo* [going, remaining and returning], is confined to civil proceedings, and a defendant who has been in custody on a criminal charge of felony, and has been acquitted and discharged, is not privileged from arrest on his return home; and the court will not relieve him from such arrest, unless it appears that his apprehension on the criminal charge, was a contrivance by the plaintiff to get him into custody in the civil suit.

---

[11]   *Available at* https://books.google.com/books/about/A_New_Abridgment_of_the_Law.html?id=Uxo2AQAAMAAJ.

[12] *Available at* https://catalog.hathitrust.org/Record/010490487.

17

1  *Commonwealth v. Daniel*, 6 Penn. L.J. 330 (Qtr. Sess. Phila. Co. 1847) (collecting cases);[13]

2  *see Anonymous*, 1 Dowl. 157-58 (1832)[14] (a defendant, when discharged from legal

3  custody, has no privilege from arrest in returning home); *Goodwin v. Lordon*, 110 Eng.

4  Rep. 1251, 1251-52 (1834) (same); *Jacob v. Jacobs*, 3 Dowl. 675, 676-77 (1835) (same).

5  <u>d.    The Common Law Privilege Today</u>

6  Private civil lawsuits are no longer initiated by civil arrests; personal service is all

7  that is required. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("But now the

8  *capias ad respondendum* has given way to personal service of summons or other form of

9  notice . . . ."). Accordingly, by the 20th century, the privilege against civil arrest had

10  transitioned into a narrow privilege against service of process. The Supreme Court has

11  stated "that suitors, as well as witnesses, coming from another state or jurisdiction, are

12  exempt from the service of civil process while in attendance upon court, and during a

13  reasonable time in coming and going." *Stewart v. Ramsay*, 242 U.S. 128, 129 (1916); *see,*

14  *e.g., United States v. Hefti*, 879 F.2d 311, 316 (8th Cir. 1989) ("*Stewart* . . . makes plain

15  that exemption from process is accorded only to non-residents not normally subject to suit

16  in the jurisdiction."). This privilege gave immunity from service of process in a private

17  civil suit, where a party entered a jurisdiction to attend a court proceeding.[15] This privilege

18  is "founded not upon the convenience of the individuals, but of the court itself." *Schmitt*,

19  285 U.S. at 225. Specifically,

20      the due administration of justice requires that a court shall not permit
21      interference with the progress of a cause pending before it, by the service of

22  ---
[13] *Available at*
23  https://www.google.com/books/edition/Pennsylvania_Law_Journal_Reports/vUiTAAAA IAAJ?hl=en&gbpv=1&dq=The+Pennsylvania+Law+Journal+volume+6+1847+Abner&p g=PA49&printsec=frontcover#spf=1593450172856.
24  [14] Alfred S. Dowling's Reports of Cases, *available at*
25  https://catalog.hathitrust.org/Record/008595448 (full text of nine volumes available at this link).
26  [15] *See Schmitt*, 285 U.S. at 225 (service on an Illinois resident when he was in the Northern District of Mississippi "in attendance on the court"); *Page Co. v. MacDonald*, 261 U.S.
27  446, 446-47 (1923) (service on a Canadian resident who was in Massachusetts "in attendance before a special master appointed by the superior court"); *Moylan v. AMF*
28  *Overseas Corp.*, 354 F.2d 825, 829 (9th Cir. 1965) (service on nonresident witness who "came to Guam for the sole purpose of testifying").

18

1
2

process in other suits, which would prevent, or the fear of which might tend to discourage, the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation.

3
4
5
6
7

*Id.* The *Schmitt* court cautioned that "the privilege should not be enlarged beyond the reason upon which it is founded[.]" *Id.* For instance, the privilege would not extend to circumstances where "service was made on one whose attendance was not voluntary, and hence had no tendency to interfere with judicial administration." *Id.* (*citing Netograph Mfg. Co. v. Scrugham*, 197 N.Y. 377, 90 N.E. 962, 962 (1910)).

8
9
10
11
12
13
14
15

Likewise, in *Netograph*, New York's highest court held that a criminal defendant on bail—like the Plaintiffs—was not immune from civil service of process when appearing in criminal court. 197 N.Y. at 378. In such cases, the defendant is "constructively in the custody of the law," "cannot be said to be free to come at will," and therefore could not claim the privilege against service of process. *Id.* And in *Employers Mut. Liability Ins. Co. v. Hitchcock*, 158 F. Supp. 783 (E.D. Mo. 1958), the district court found that a "person attending court upon a criminal indictment . . . is not immune from service of process in another suit either related or unrelated to it." *Id.* at 786. The court stated:

16
17
18
19
20
21
22

The reason for the immunity being the administration of justice by the court in the case in which immunity is sought, when applied to the facts herein, presents this question: What effect could the civil suit have upon the criminal proceedings in which the defendant was compelled to appear? The answer is, absolutely nothing.

There is no voluntary appearance to be effected; there is no delay that could be caused; there is no added preparation incurred, for the issues in each case are based on substantially the same facts; there is no hardship, for apparently the records to be relied upon in each case are within the district; there just isn't rhyme nor reason why the immunity should be invoked.

23
24
25
26
27
28

*Id.* at 785. The Pennsylvania Supreme Court has also noted that "the great preponderance of authority is that the defendant in a criminal case is not privileged from arrest on civil process while attending court to answer a criminal charge"; while there were "a few contrary decisions in the lower courts," there were none in any "court of last resort, . . . to which [the Court] [had] been referred." *Wood v. Boyle*, 177 Pa. 620, 632, 35 A. 853 (1896). ///

19

1                        e.      The First Circuit's Decision in *Ryan v. ICE*

2          The First Circuit recently issued a unanimous opinion in *Ryan v. ICE*, rejecting the

3   common law privilege claimed by Plaintiffs here. In *Ryan*, various persons and

4   organizations, including several District Attorneys, contested ICE's "growing presence" in

5   Massachusetts courthouses and "efforts to arrest allegedly removable noncitizens in and

6   around state courthouses when they appeared for judicial proceedings." *Ryan v. ICE*, 974

7   F.3d at 14. The plaintiffs claimed that ICE's enforcement activity, among other things,

8   "interfere[d] with the ability of prosecutors and defense counsel to resolve criminal charges

9   and the ability of noncitizens to enforce their legal rights in noncriminal areas ranging from

10  domestic violence to employment." *Id.* at 15.

11         The district court determined the plaintiffs were likely to succeed on the merits of

12  their lawsuit and "preliminarily enjoined ICE from implementing [an ICE] Directive or

13  otherwise civilly arresting individuals attending court on official business anywhere in

14  Massachusetts." *Id.* The First Circuit unanimously reversed, "conclud[ing] that the district

15  court abused its discretion in finding that the plaintiffs were likely to succeed on the merits

16  of their argument that the INA implicitly incorporates a common law privilege against civil

17  arrests for individuals attending court on official business." *Id.*

18         As part of its analysis, the First Circuit held that the INA confers "broad authority

19  upon ICE to conduct civil arrests," and that, on its face, nothing in the INA "bars ICE

20  officers from exercising their civil arrest power either in courthouses or against individuals

21  attending court on official business." *Id.* at 19. The court next rejected the argument that

22  Congress "sub silentio" intended to incorporate a common law privilege against civil

23  courthouse arrest into the INA. *Id.* at 20. Instead, "the case law is wholly devoid of any

24  clear precedent on whether the common law in 1952 would have applied the privilege

25  against courthouse arrests to civil immigration arrests." *Id.* at 28. The court observed that

26  "civil immigration arrests are initiated by the sovereign in order to vindicate uniquely

27  sovereign interests rather than private or proprietary interests." *Id.* at 26. And the court

28  found no case suggesting the asserted privilege against civil arrest would extend to "civil

                                              20

1    arrests *on behalf of a sovereign*." *Id.* at 24 (emphasis in original). Further, the court

2    reasoned that "[j]ust as criminal arrests implicate the uniquely sovereign interests in

3    enforcing the penal laws and protecting the public, so too do civil immigration arrests seek

4    to vindicate similar kinds of interests in controlling immigration and the presence of

5    noncitizens in the country." *Id.* at 27. "And just as the common law privilege was not

6    applied to criminal arrests because of these overriding sovereign interests, one would think

7    (for the same reason) that the privilege would not shield civil immigration arrests." *Id.*

8    Ultimately, the court held there was "no principled way to find that the case law in 1952

9    clearly implied that the privilege would have afforded a shield against civil immigration

10   arrests." *Id.* Accordingly, the court reversed the lower court's injunction, concluding the

11   plaintiffs were "unlikely to succeed in demonstrating a long-established and familiar

12   common law rule barring courthouse arrests that can be presumed to have been

13   incorporated into the INA's civil arrest authority." *Id.* at 28.

14            f.      <u>*Ryan* is Right – No Privilege Applies Here</u>

15            As *Ryan* held, there is no common law privilege that immunizes Plaintiffs from an

16   immigration arrest at the courthouse. *See also United States v. Velazquez-Morales*, No.

17   20MJ20275-MDD-JLS, 2020 WL 5993918, at *2 (S.D. Cal. Oct. 9, 2020) ("Finally, the

18   Court agrees with the conclusion of the First Circuit . . . that the common law privilege

19   against courthouse arrests does not apply to civil immigration arrests."). The INA's

20   comprehensive statutory scheme sets no limitations on courthouse arrests; on the contrary,

21   DHS may arrest all aliens except those who are in state criminal custody serving a criminal

22   sentence. *See* 8 U.S.C. § 1231(a)(4). Nor can it be said that the expansive privilege claimed

23   by Plaintiffs—prohibiting the sovereign from making arrests—was "so well established"

24   at the time the INA was codified that it can be assumed Congress considered it and silently

25   incorporated it. *See, e.g.*, *United States v. Craft*, 535 U.S. 274, 288 (2002) (to conclude that

26   Congress meant to incorporate a common law rule, that rule must have been "so well

27   established" that it can be "assume[d]" Congress considered it). The INA was codified long

28   after *Erie Railway Co. v. Tompkins*, 304 U.S. 64 (1938), which foreclosed the freewheeling

21

adoption of new federal-common-law rules. And the First Circuit—like the Plaintiffs here—could not locate any cases extending the privilege to arrests "on behalf of a sovereign."[16] *Ryan*, 974 F.3d at 24. Doing so would make little sense: "Just as criminal arrests implicate the uniquely sovereign interests in enforcing the penal laws and protecting the public, so too do civil immigration arrests seek to vindicate similar kinds of interests in controlling immigration and the presence of noncitizens in the country." *Id.* at 27.[17]

_____

[16] During oral argument in *Ryan*, one judge stated that it "beggars credulity to say that a principle can be long established and familiar when you can't even cite a single analogous case in which the privilege was applied in the manner in which you seek to have the district court apply it." Audio Recording of Ryan Oral Argument at 22:10–22:30 (remarks of First Circuit Judge Bruce M. Selya), *available at* http://media.ca1.uscourts.gov/files/audio/19-1838.mp3.

[17] If the English common law did actually thwart arrests by the sovereign, there is no basis for believing that such a forceful privilege would have been incorporated into the federal common law. To the extent that federal common law exists, *see Erie*, 304 U.S. at 78 ("There is no federal general common law"), there are only a "few and restricted" areas in which "a federal rule of decision is necessary to protect uniquely federal interests, and those in which Congress has given the courts the power to develop substantive law." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981).

Plaintiffs have not and cannot explain how any common law privilege against courthouse arrests carries a "uniquely federal interest," especially in the context of immigration enforcement. On the contrary, as the First Circuit noted, "[t]he fact that civil immigration arrests are initiated by the sovereign to vindicate *uniquely sovereign interests* is crucial to our analysis." *Ryan*, 974 F.3d at 26–27 (emphasis added) (concluding that immigration apprehensions should be treated more like "criminal arrests than like the types of civil arrest at issue in the cases to which plaintiffs advert."). In other words, such a privilege would undermine—not serve—a uniquely federal interest.

Moreover, unlike in *Ryan* and the cases that Plaintiffs cite involving state courthouses, the question here is solely federal. And of course, under the Supremacy Clause, state common law does not apply to the federal government. *See Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986) (state common law "may not re-write a federal statute"). Individual states' state common law is not the same as the "common law," which refers to "a substantial core of uniform law that was administered by the federal and state courts as a general American common law," from which states can and often have derogated. William A. Fletcher, *The General Common Law and Section 34 of the Judiciary Act of 1789: The Example of Marine Insurance*, 97 HARV. L. REV. 1513, 1521 (1984).

22

Plaintiffs invoke Blackstone's Commentaries in an attempt to establish the applicability of the privilege. ECF No. 3 at 17. But the quotation they cite says nothing about arrests by the sovereign. And Blackstone elsewhere made clear that immigration issues were within the exclusive province of the sovereign. *See* 1 Blackstone, Commentaries on the Laws of England 252 (1765) (noting that, as long as foreigners "are under the king's protection; though liable to be sent home whenever the king sees occasion"); *id.* at 362 ("Naturalization cannot be performed but by an act of parliament: for by this an alien is put in exactly the same state as if he had been born in the king's ligeance . . . "). The same principles apply to the federal government's immigration enforcement efforts.

The district court cases Plaintiffs rely on are also not persuasive.[18] *See Washington v. DHS*, 2020 WL 1819837, at *1 (W.D. Wash. Apr. 10, 2020); *New York v. ICE*, 2020 WL 3067715 (S.D.N.Y. June 10, 2020). Neither grapples with *Ryan*'s analysis that any common law privilege did not apply to arrests made by the sovereign. In *New York*, the court even "conceded" that "no case at the time of the [INA] had expressly held that the privilege applied in the exact context of civil immigration arrest"—but nonetheless found the INA silently incorporated the privilege. *Id.* at *5; *cf. Ryan*, 974 F.3d at 23 ("[T]he nonderogation canon only informs the construction of a federal statute when a relevant common law rule was long-established and familiar at the time of the statute's enactment.") (citing *Pasquantino v. United States*, 544 U.S. 349, 359 (2005)).

In *Washington*, in denying a Rule 12(b)(6) motion, the court did not address the merits of the question at all, stating that ICE's arguments regarding the privilege were "more appropriately reserved for a [summary judgment motion]." *Washington*, 2020 WL 1819837 at *10; *see also id.* ("The State has done all that is necessary at this stage of the

---

[18] One court in this district has already agreed with *Ryan*'s reasoning. *See Velazquez-Morales*, 2020 WL 5993918, at *2 ("Finally, the Court agrees with the conclusion of the First Circuit . . . that the common law privilege against courthouse arrests does not apply to civil immigration arrests.").

23

1   litigation, namely to set forth a 'plausible' claim for relief under § 706(2)(C) of the APA.").

2   Moreover, the facts of *New York* and *Washington*—both involving ICE policies, ICE

3   immigration enforcement activity at state courthouses, and state law enforcement agencies

4   as plaintiffs—bear no resemblance to the circumstances here.

5          Plaintiffs contend that the "Achilles heel" of *Ryan*'s reasoning is that the executive

6   branch "is not the King and it is therefore not entitled to exceptions owed to a 'sovereign.'"

7   ECF No. 3 at 18. Plaintiffs, then, as they must, admit any common law privilege did not

8   apply to the sovereign. And their claimed "Achilles heel" is a Trojan horse: as the Supreme

9   Court has repeatedly stated, the federal government *is* the sovereign responsible for

10  immigration enforcement. *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (noting that

11  "control over matters of immigration is a sovereign prerogative, largely within the control

12  of the executive and the legislature"); *id.* at 32 ("the power to admit or exclude aliens is a

13  sovereign prerogative"); *Arizona v. United States*, 567 U.S. 387, 401-02 (2012) ("Federal

14  law makes a single sovereign responsible for maintaining a comprehensive and unified

15  system to keep track of aliens within the Nation's borders."); *Fiallo v. Bell*, 430 U.S. 787,

16  792 (1977) ("Our cases 'have long recognized the power to expel or exclude aliens as a

17  fundamental sovereign attribute exercised by the Government's political departments

18  largely immune from judicial control.'"). As *Ryan* observed, it is too elementary a

19  proposition to "warrant citation of authority that a private party cannot initiate proceedings

20  to remove a noncitizen from the country. Nor does removal remotely resemble any type of

21  civil remedy available to private litigants." *Ryan*, 974 F.3d at 26. Plaintiffs' attempt to

22  invoke a common law privilege to prevent the sovereign from making an immigration

23  arrest at a courthouse fails, fatally undermining their various claims addressed below.

24         In addition to the fact that the privilege applies only to civil arrest in lieu of service

25  of civil process and does not apply against the sovereign, it cannot apply because Plaintiffs

26  are criminal defendants, required to attend their trials. *See Boyle*, 177 Pa. at 632. "There is

27  no voluntary appearance to be effected; there is no delay that could be caused; there is no

28  added preparation incurred, for the issues in each case are based on substantially the same

24

1  facts; there is no hardship, for apparently the records to be relied upon in each case are
2  within the district; there just isn't rhyme nor reason why the immunity should be invoked."
3  *Hitchcock*, 158 F. Supp. at 785.

4      Finally, apart from all the other hurdles that stand in its way, extending the privilege
5  is not appropriate as a matter of discretion. Indeed, there are significant reasons why the
6  immunity should not be invoked here: it serves only to give Plaintiffs the opportunity to
7  avoid the removal process and fade into the United States; it invites a resource-consuming,
8  hide-and-seek contest where aliens sneak through and out of the courthouse—taking the
9  elevator, then the stairs, or perhaps the bridge over to the federal building—then run to
10  their cars downtown; it risks significant and obvious public safety concerns, pushing
11  remands out of the courthouse and onto the street. In sum, even if the privilege had
12  applicability here, invoking it would harm the administration of justice.

13      D.    *Plaintiffs Cannot Establish Likelihood of Success on Any Claim*

14          1.    *The APA Claims – Counts 1 and 2*

15      Plaintiffs' first two claims arise under the Administrative Procedure Act (APA), 5
16  U.S.C. § 706(2)(A). In count one, Plaintiffs claim that "ICE's Courthouse Arrest Policy is
17  arbitrary and capricious" in violation of the APA. ECF No. 3 at 10. But Plaintiffs aim at
18  the wrong target: this case has nothing to do with ICE or ICE policies. As outlined above,
19  this case involves Border Patrol monitoring its arrestees to execute their removal orders
20  when their criminal cases end. Border Patrol's actions are governed solely by the INA and
21  related regulations—which mandate detention for Plaintiffs and execution of their orders
22  of removal—and are guided solely by the broad directives set out in February 2017. *See*
23  Plaintiffs' Exhibit L. In fact, Plaintiffs ultimately concede: "it does not appear that CBP
24  has issued a directive regarding courthouse arrests." ECF No. 3 at 13. Plaintiffs' claims
25  regarding ICE's policies are not relevant here.

26      At any rate, the APA provides that agency action or policy is non-reviewable when
27  (1) a statute precludes judicial review, or (2) the action at issue "is committed to agency
28  discretion by law." 5 U.S.C. § 701(a). Both sections apply here. First, as set forth above, 8

U.S.C. § 1252(g) precludes judicial review of any potential future action to remand Plaintiffs into custody to execute their removal orders. Second, the action at issue is an issue committed to agency discretion. *See Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1199 (9th Cir. 1975) ("[t]he APA generally precludes judicial review of the manner in which the Attorney General chooses to inquire into the immigration status of an alien seeking admission."); *Dupris v. McDonald*, 554 F. App'x 570, 573 (9th Cir. 2014) ("Task Force's determinations of whom to arrest and when to arrest them came within the discretionary function exception."); *Shuler v. United States*, 531 F.3d 930, 934 (D.C. Cir. 2008) (holding that law enforcement official's decision on when to arrest a suspect is a discretionary function); *Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993), *aff'd*, 123 F.3d 1435 (11th Cir. 1997) ("We hold as a matter of law that the function of determining when and how to execute an arrest warrant is quintessentially a discretionary function, involving choices and judgments that are grounded in policy considerations."). This ends the APA analysis altogether.

Apart from nonreviewability, Plaintiffs confuse matters by arguing that ICE's courthouse arrest policy "is arbitrary and capricious because ICE failed to adequately explain the basis for its policy." ECF No. 3 at 18. The "arbitrary or capricious" test applies to final administrative actions taken pursuant to policies, not to policies in the air. *See* 5 U.S.C. § 706(2)(A) ("The reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."). Plaintiffs concede that Border Patrol has no civil courthouse arrest policy, so there is no "final agency action" to review. 5 U.S.C. § 704. *See Bennett v. Spear*, 520 U.S. 154, 175 (1997) ("The APA, by its terms, provides a right to judicial review of all 'final agency action for which there is no other adequate remedy in a court[.]'"); *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("With a few exceptions, if there is no final agency action, there is no basis for review of the government's decision or policy."). *Cf. Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925 (D.C. Cir. 2008) (entertaining a challenge to the agency's decision to adopt a

26

policy that allegedly violated various statutes and an executive order). Plaintiffs instead seek relief from the fact that Border Patrol relies only on its broad statutory and regulatory authorities. As set forth above, Border Patrol's actions here are pursuant to those authorities, which have not been limited by any policy.

Even so, Plaintiffs have not established that Border Patrol's courthouse enforcement actions are "arbitrary or capricious." An agency decision is arbitrary or capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Arizona Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2010) (internal quotation marks omitted). A court must affirm the "agency action if a reasonable basis exists for its decision." *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010) (internal quotation marks omitted).

Border Patrol's prudent monitoring of its arrestees' criminal cases is not arbitrary or capricious. Plaintiffs refer repeatedly to "DHS's courthouse polices" in this discussion, but those are in fact ICE policies—not Border Patrol policies.[19] Plaintiffs also claim that the courthouse enforcement actions "cannot reasonably be understood by those affected by it." ECF No. 3 at 13. That is belied by the very facts in Plaintiffs' motion, such as: "immigration officers are present and poised to conduct civil immigration arrests at every misdemeanor illegal entry trial in the Southern District of California where the defendant is on bond." ECF No. 3 at 13.

///

///

---

[19] Even so, there is no basis for believing that the ICE policies are (1) subject to APA review; or (2) arbitrary or capricious. But for purposes of this case, those policies are irrelevant.

27

Plaintiffs also claim that DHS has "fail[ed] to explain why Plaintiffs, who have all been found *not* to pose a risk of flight by a federal magistrate judge, must be arrested in court in order to be removed from the United States." ECF No. 3 at 14. Their argument is based on the incorrect assumption that Border Patrol is conducting initial arrests when in reality Plaintiffs have already been arrested and are subject to imminent removal—which is precisely why they pose a significant risk of flight. Indeed, Plaintiff Morales-Roblero already failed to appear for his scheduled bench trial earlier this week. It is unknown how many more of the Plaintiffs will fail to appear as well. An alarmingly high percentage of § 1325 defendants fail to appear in this district. *See* Blazer Decl. ¶ 2. In any event, discretionary arrest and bond decisions of DHS and Immigration Judges are not judicially reviewable, apart from constitutional challenges. *See* 8 U.S.C. § 1252(g); 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."). And the Supreme Court has held that detention during removal proceedings is "a constitutional valid aspect of the process," even where "aliens challenged their detention on the grounds that there has been no finding that they are unlikely to appear for their deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 511 (2003).

Finally, beyond the common law privilege issue addressed above, Plaintiffs argue, without elaboration, that by taking them back into custody to execute their warrants of removal, Border Patrol agents would have an "impact on" their First, Fifth, and Sixth Amendment rights and therefore violate the APA. ECF No. 3 at 22. As far as we can tell, these arguments are subsumed in other arguments raised by the Plaintiffs, which we address elsewhere.

### 2.    *Right of Access to the Court – Count 3*

Plaintiffs argue likelihood of success on Count 3 based on the alleged common law privilege against civil courthouse arrests. ECF No. 3 at 15-21. As discussed above, this claim fails.

///

28

### 3.    *Right to Present a Defense – Count 4*

In Count 4, Plaintiffs claim that "DHS's courthouse arrest policy impermissibly frustrates their Sixth Amendment rights." ECF No. 21 at 29. They claim this policy "likely depriv[es] many criminal defendants of key testimony," apparently referring to potential testimony from undocumented aliens.[20] This claim fails at the outset for lack of standing. To establish constitutional standing, a party must show: (1) that he suffered an injury in fact; (2) the injury was fairly traceable to the challenged conduct of the opposing party; and (3) the injury was likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

Here, Plaintiffs' motion contains no facts supporting their assertions. For instance, they claim that witnesses are chilled from appearing in court, but they do not identify who they are, what relevant evidence they have in an illegal-entry case, or whether the witnesses are even unlawfully present in the United States. Likewise, Plaintiffs fail to provide any evidence—because they cannot—showing that any witnesses in illegal-entry cases have been arrested in court. It is not clear how an immigration official could even know that a witness was undocumented. Plaintiffs have not suffered an actual or imminent injury. Their claims are speculative and insufficient to demonstrate injury in fact.[21]

///

---

[20] Later in the brief Plaintiffs state, without any proof, that "many of the possible character witnesses that they would call are undocumented." ECF No. 3 at 37.

[21] For these same reasons, Plaintiffs have not shown "likelihood of irreparable harm" on this issue.

Within their Sixth Amendment argument, Plaintiffs also claim that "DHS's courthouse arrest policy" is unconstitutional because it "impermissibly conditions a criminal defendant's exercise of [the right to testify and be present at crucial phases of trial] on exposing oneself to potential civil immigration arrest." ECF No. 3 at 29-30. But, of course, Plaintiffs are required to appear for their criminal hearings and can freely elect to testify at trial. Moreover, Plaintiffs fail to articulate how any subjective fear on their part of coming to court implicates their right to present a defense. For example, like all criminal defendants, at the conclusion of their trials Plaintiffs may be sentenced to custodial time and be remanded into the custody of USMS. That prospect cannot mean Plaintiffs' Sixth Amendment rights are infringed. In reality, any subjective apprehension Plaintiffs' might feel is because they are unlawfully present in the United States and subject to final, executable orders of removal.

### 4. Warrantless Arrests – Counts 5 and 6

Plaintiffs claim that Border Patrol is conducting warrantless arrests in violation of 8 U.S.C. § 1357(a)(2) and the Fourth Amendment. ECF No. 3 at 30-35. As outlined in the statement of facts above, Border Patrol is not conducting arrests in the courtroom. Moreover, even if the resumption of custody were construed to be an arrest, Plaintiffs omit the fact that eight of them are subject to immediately executable warrants of removal that *command* their arrest and removal. And the remaining Plaintiffs are subject to the functional equivalent of the warrant of removal in the expedited removal context. In other words, if arrest warrants are required, Border Patrol has them.[22] *See Argueta v. U.S. Immigration & Customs Enf't*, No. 08-CV-1652-PGS, 2010 WL 398839, at *3 (D.N.J. Jan. 27, 2010) (stating that a warrant of removal "allows arrest"), *rev'd on other grounds*, 643 F.3d 60 (3d Cir. 2011); *United States v. Segura-Gomez*, No. 4:17-CR-65-FL-1, 2018 WL

---

[22] An arrest warrant in this context refers to an administrative warrant issued by an authorized immigration official, not by a judicial officer. *See* 8 C.F.R. § 287.5(e)(2). And any officer authorized to execute administrative warrants of arrest may execute a warrant of removal. 8 C.F.R. § 241.2(b).

30

6582823, at *8 (E.D.N.C. May 25, 2018) ("[B]y making provision for a removal warrant, the regulations appear to contemplate use of a warrant to effect an arrest pursuant to a removal order."). Moreover, administrative arrests are valid under the Fourth Amendment. *See Abel v. United States*, 362 U.S. 217 (1960); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164 (5th Cir. 2018). Plaintiffs are not likely to succeed on this claim.

E.   Plaintiffs Fail to Establish Irreparable Harm is Likely

Plaintiffs have also not established the likelihood of irreparable harm. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[P]laintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction."). Plaintiffs allege that the irreparable harm would be "unlawful courthouse arrest," ECF No. 3 at 17, but that is merely a tatement of their legal position. As Magistrate Judge Goddard stated recently on this issue, "Defendant's arrest following trial is likely an inevitability if he has no grounds for remaining in the United States legally, and the requested order would not change that circumstance."[23] *United States v. Morales-Roblero*, Case No. 19-MJ-24442-AHG, ECF No. 45 (S.D. Cal. Sept. 14, 2020). Indeed, there is no dispute that the Plaintiffs are subject to pending removal orders. The harm they claim is therefore purely academic—if the TRO issued, Plaintiffs would still be subject to "arrest" anywhere immigration authorities find them the moment the claimed common law privilege lapses. And when remanded into custody, they will be afforded the due process rights that govern their respective removal proceedings. There is no cognizable "irreparable harm" here.

///

///

///

---

[23] This presents another jurisdictional bar to Plaintiffs' claims: redressability. The requested relief would not redress the ultimate harm Plaintiffs fear. *See M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("To establish redressability, a plaintiff must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (quotations omitted).

31

F.    The Balance of Equities Tips against the Plaintiffs

The equities weigh heavily against the Plaintiffs. There is no question they are subject to final, executable orders of removal and that they should therefore be returned to immigration custody following their criminal cases. There is a strong public interest in ensuring the immigration laws of the United States are followed and that Plaintiffs are removed. *See Nken v. Holder*, 556 U.S. 418, 436 (2009) ("There is always a public interest in prompt execution of removal orders."); *Landon*, 459 U.S. at 34 (noting the government's "weighty" interest in "efficient administration of the immigration laws").

On the other hand, granting the TRO will simply give the Plaintiffs an opportunity to evade lawful removal from the United States. Indeed, in the last week, multiple illegal-entry defendants who have long been demanding trial—including several named Plaintiffs—are suddenly rushing into court to plead guilty before this TRO motion hearing, hoping to get time-served sentences. *See, e.g.*, *United States v. Velazquez-Morales*, Case No. 20-mj-20275-MDD, ECF No. 55 (case pending since January 31, 2020; defendant is on bond; trial had been set December 8; however, on October 27, at the request of counsel, a change-of-plea hearing was set for November 5); *United States v. Fernandez-Ferrer*, Case No. 19-cr-3668-KSC, ECF No. 46 (case pending since July 2019; defendant is on bond; trial had been set for December 2; however, on October 28, at the request of counsel, a change-of-plea hearing was set for November 6); *United States v. Fernandez*, Case No. 20-mj-20456-MSB, ECF Nos. 57-59 (case pending since February 25, 2020; defendant is on bond; trial had been set for December 10; however, on October 23, counsel—without acknowledging this lawsuit— requested that trial be *advanced* to November 3; when the court denied this request, counsel set a change-of-plea hearing for November 5).[24] The reason for this sudden rush is obvious: illegal entry defendants want to evade the lawful consequence of their illegal entries and disappear into the United States. Plaintiffs' claimed

---

[24] There are still more examples.

32

1  "equity" fully undermines the administration of justice, and is an "equity" this Court should

2  reject.

3                                                    V

4                                           CONCLUSION

5         Plaintiffs' motion for a TRO should be denied. They falsely equate ICE's interior

6  immigration enforcement efforts to the narrow actions taken in this district by Border Patrol

7  to resume custody of aliens subject to pending orders of removal. These actions do not

8  constitute arrests. And regardless, there is no subject matter jurisdiction over whether,

9  when, or where to conduct an arrest; there is no Border Patrol arrest policy to be reviewed;

10 there is no common law privilege that applies here; and there is no real harm. This Court

11 should deny Plaintiffs' motion.

12         DATED: October 30, 2020

13                                          Respectfully submitted,

14                                          ROBERT S. BREWER, JR.
                                            United States Attorney
15

16                                          KATHERINE L. PARKER
                                            Chief, Civil Division
17
                                            DAVID D. LESHNER
18                                          Chief, Criminal Division

19                                          *s/ Colin M. McDonald*
                                            COLIN M. MCDONALD
20                                          Assistant U.S. Attorney

21                                          *s/ Samuel W. Bettwy*
22                                          SAMUEL W. BETTWY
                                            Assistant U.S. Attorney
23
                                            Attorneys for Defendants-Respondents
24

25

26

27

28

                                                   33

## Appendix

## **Pending Criminal Cases**

1.     **Pedro Valencia-Ayala – 19MJ23473-MDD**

On August 20, 2019, a Border Patrol agent apprehended Valencia-Ayala on State Route 94. Valencia-Ayala admitted he was a citizen of Mexico without documents permitting him to be in the United States. That same day, Valencia-Ayala was placed in expedited removal proceedings and ordered removed from the United States. Ex. 1. That order has not yet been executed, because Valencia-Ayala was referred for criminal prosecution and transferred into the custody of the USMS.

On August 26, 2019, Valencia-Ayala was released on bond in his criminal case. On October 21, 2020, Magistrate Judge Mitchell D. Dembin found Valencia-Ayala guilty of illegal entry and imposed a time-served sentence. Despite a pending order of removal, and having just been found guilty of illegally entering the United States, Valencia-Ayala was not arrested at the courthouse.

The case involving Valencia-Ayala is therefore moot.

2.     **Filadelfo Morales-Roblero – 19MJ24442-AHG**

The case involving Erick Morales-Roblero is also moot and/or not ripe for resolution. On October 26, 2020, Morales-Roblero failed to appear at his scheduled bench trial. The Court issued a warrant, which remains outstanding at this time.

On August 21, 2019, Morales-Roblero was convicted of illegal entry in the District of Arizona and sentenced to 75 days' custody. After serving his sentence, Morales-Roblero was deported from the United States on November 2, 2019. Eighteen days later, on November 20, 2019, a Border Patrol agent found Morales-Roblero standing on the side of the road on State Route 94, approximately 6.5 miles north of the border. Morales-Roblero admitted he was a citizen of Mexico and that he had illegally entered the United States.

After his arrest, an authorized immigration official determined Morales-Roblero was subject to a prior order of removal (from June 2016) and ordered him removed from the United States. There is a pending warrant of removal for Morales-Roblero which commands "any immigration officer of the United States Department of Homeland Security" to "take" Contreras-Vergara "into custody" and "remove [him] from the United States[.]" Ex. 2. That order has not yet been executed because

Morales-Roblero was referred for criminal prosecution and transferred into the custody of the USMS. After several bond modifications, Morales-Roblero was released on bond on January 15, 2020. As stated, he failed to appear his scheduled bench trial on October 26, 2020.

### 3.    Andrea Contreras-Vergara – 19MJ24177-MSB

In October 2019, after a foot chase, a Border Patrol agent apprehended Contreras-Vergara near the border. Contreras-Vergara admitted she was a citizen of Mexico without documents permitting her to be in the United States. At that time, Contreras-Vergara had previously been deported from the United States on two prior occasions (including just 10 days before the instant arrest). After her arrest, an authorized immigration official determined Contreras-Vergara was subject to a prior order of removal (from June 2019) and ordered her removed from the United States. There is a pending warrant of removal for Contreras-Vergara which commands "any immigration officer of the United States Department of Homeland Security" to "take" Contreras-Vergara "into custody" and "remove [her] from the United States[.]" Ex. 3.

That order has not yet been executed, because Contreras-Vergara was referred for criminal prosecution and transferred into the custody of the USMS. On October 15, 2019, Contreras-Vergara was released on bond in her criminal case. On October 30, 2020, U.S. Magistrate Judge Michael S. Berg found Contreras-Vergara guilty of illegal entry and imposed a time-served sentence. Despite a pending order of removal, and having just been found guilty of illegally entering the United States, Contreras-Vergara was not arrested at the courthouse. The case involving Contreras-Vergara is therefore moot.

### 4.    Bertin Cruz-Ibarra – 19MJ24351-MSB

On November 7, 2019, a Border Patrol Agent found Cruz-Ibarra and one other hiding between boulders about 130 yards north of the United States/Mexico border. Cruz-Ibarra admitted he was a citizen of Mexico without documents allowing him to enter or remain in the United States. Following his arrest, an authorized immigration official reinstated Cruz-Ibarra's prior 2017 order of removal and ordered him removed from the United States. There is a pending warrant of removal for Cruz-Ibarra, which commands "any immigration officer of the United States

Department of Homeland Security" to "take" Cruz-Ibarra "into custody" and "remove [him] from the United States[.]" Ex. 4.

That order has not yet been executed, because Cruz-Ibarra was referred for criminal prosecution and transferred into the custody of the USMS. He was released on bond in his criminal case on December 9, 2019. A bench trial is currently set for November 6, 2020.

### 5.   Oliser Hernandez – 19MJ23508-MSB

Oliser Hernandez is a Mexican citizen with no right to enter the United States. He has three prior criminal convictions in the United States, including for a hit-and-run wreck, DUI, and inflicting corporal injury. In November 2018, he was deported from the United States to Mexico. In August 2019, a Border Patrol agent found Hernandez and another individual hiding in a bush near the border. Hernandez admitted he lacked permission to be in the United States. Following his arrest, an authorized immigration official reinstated Hernandez's prior order of removal and ordered him removed from the United States. There is a pending warrant of removal for Hernandez, which commands "any immigration officer of the United States Department of Homeland Security" to "take" Hernandez "into custody" and "remove [him] from the United States[.]" Ex. 5.

That order has not yet been executed, because Hernandez was referred for criminal prosecution and transferred into the custody of the USMS. On October 1, 2019, Hernandez was released on bond in his criminal case. His appearance at hearings has been waived and it does not appear he has appeared in court since that time. His bench trial is currently set for November 10, 2020.

### 6.   Mauro Varela-Gomez – 19MJ23438-MSB

On August 16, 2019, Varela-Gomez was found in a car at the Border Patrol checkpoint. He admitted he was in the United States illegally. Varela-Gomez has been deported from the United States three times, and has a prior conviction for illegal entry under 8 U.S.C. § 1325, for which he received twenty days' custody. Following his arrest, an authorized immigration official reinstated a prior order of removal and ordered Varela-Gomez removed from the United States. There is a pending warrant of removal for Varela-Gomez, which commands "any immigration officer of the United States Department of Homeland Security" to "take" Varela-Gomez "into custody" and "remove [him] from the United States[.]" Ex. 6.

3

That order has not yet been executed, because Varela-Gomez was referred for criminal prosecution and transferred into the custody of the USMS. In his current illegal-entry prosecution, Varela-Gomez was released on bond after eight days in custody (in August 2019). A motion hearing is currently scheduled for November 12, 2020. No trial date is currently set.

### 7.    Alvaro Pastor-Narcizo – 19mj24548-LL

Pastor-Narcizo has three prior criminal convictions in the United States, including two DUIs. For his most recent DUI conviction, Pastor-Narcizo received a custodial sentence of 120 days. Pastor-Narcizo has also been removed from the United States two times, in August 2019 and November 2019. On December 3, 2019, five days after his most recent deportation, a Border Patrol agent found Pastor-Narcizo and two others hiding in a cave near the United States/Mexico border. Pastor-Narcizo admitted he was a citizen of Mexico with no documents permitting him to be in the United States. After his arrest, an authorized immigration official reinstated Pastor-Narcizo's prior order of removal and ordered him removed from the United States. There is a pending warrant of removal for Pastor-Narcizo which commands "any immigration officer of the United States Department of Homeland Security" to "take" Pastor-Narcizo "into custody" and "remove [him] from the United States[.]" Ex. 7.

That order has not yet been executed, because Pastor-Narcizo was referred for criminal prosecution and transferred into the custody of the USMS. Six days after his arrest, on December 9, 2019, Pastor-Narcizo was released on bond in his criminal case. Until recently, trial was set for November 17. However, a change-of-plea hearing with immediate sentencing was just set this week for November 2.

### 8.    Armando Escobar-Mejia – 20mj20283-LL

On January 31, 2020, Escobar-Mejia was found by Border Patrol hiding under a large boulder over twenty miles away from the nearest Port of Entry. He admitted he was a citizen of El Salvador without documents permitting him to be in the United States. Escobar-Mejia was placed in expedited removal proceedings. In those proceedings, Escobar-Mejia made claims that require additional review and adjudication before he can be removed from the United States.

Following his arrest, Escobar-Mejia was referred for criminal prosecution and transferred into the custody of USMS. After three days in custody, Escobar-Mejia

4

was released on bond in his criminal case. His bench trial is currently set for November 18, 2020.

### 9.   **Luis Chavac-Boror – 19CR3424-MSB**

On February 9, 2019, after about an hour of searching, a Border Patrol Agent found Chavac-Boror and one other individual hiding inside a tractor shed 3.5 miles north of the border and 12 miles east of the nearest Port of Entry. Chavac admitted he was a citizen of Guatemala without documents permitting him to be in the United States. The next day, Chavac-Boror was placed in expedited removal proceedings and ordered removed from the United States. Ex. 9.

That order has not yet been executed, because Chavac-Boror was referred for criminal prosecution and transferred into the custody of the USMS. On March 12, 2019, Chavac was released on bond in his criminal case. Until recently, trial was set for November 19. However, a change-of-plea hearing with immediate sentencing was just set this week for November 5.

### 10.   **Elizeo Velazquez-Hernandez – 19CR3066-KSC**

On May 25, 2019, a Border Patrol agent responded to a report of several individuals running north from an area near the border and found Velazquez-Hernandez hiding in brush. Velazquez-Hernandez admitted he was a citizen of Mexico without documents allowing him to enter or reside in the United States. Velazquez-Hernandez has previously been convicted of a DUI offense in the United States. Velazquez-Hernandez was placed in expedited removal proceedings and was ordered removed from the United States. Ex. 10.

That order has not yet been executed, because Velazquez-Hernandez was referred for criminal prosecution and transferred to the custody of the USMS. On June 4, 2019, Velazquez-Hernandez was released on bond in his criminal case. A bench trial is currently set for November 20, 2020.

### 11.   **Jose David Orellana-Ardon – 19CR3190-MDD**

Orellana-Ardon is a citizen of El Salvador with no right to enter the United States. He has previously been deported from the United States three times, most recently in February 2018. On March 22, 2019, a Border Patrol agent found Orellana-Ardon hiding under a bush about 2.5 miles north of the United

States/Mexico border and 18 miles east of the nearest port of entry. After his arrest, an authorized immigration official reinstated a prior order of removal and ordered Orellana-Ardon removed from the United States. There is a pending warrant of removal for Orellana-Ardon which commands "any immigration officer of the United States Department of Homeland Security" to "take" Orellana-Ardon "into custody" and "remove [him] from the United States[.]" Ex. 11.

That order has not yet been executed, because Orellana-Ardon was referred for criminal prosecution and transferred to the custody of the USMS. Orellana-Ardon has already pleaded guilty to attempted illegal entry. His misdemeanor sentencing hearing is currently scheduled for November 23, 2020.

### 12.    Jeronimo Fernandez-Ferrer – 19CR3668-KSC

In July 2019, a Border Patrol agent found Fernandez-Ferrer hiding under a tree near the United States/Mexico border. Fernandez-Ferrer admitted he was a citizen of Mexico without documents permitting him to enter or remain in the United States. Fernandez-Ferrer was placed in expedited removal proceedings and ordered removed from the United States. Ex. 12.

That order has not yet been executed, because Fernandez-Ferrer was referred for criminal prosecution and transferred into the custody of USMS. On July 26, 2019, two days after his arrest, he was released on bond in his criminal case. Until recently, trial was set for December 2. However, a change-of-plea with immediate sentencing was just set this week for November 6.

### 13.    Juan Velazquez-Morales – 20mj20275-MDD

On January 30, 2020, Velazquez-Morales was deported from the United States to Mexico. Later that same day, a scope operator saw an individual crossing into the United States from Mexico, five miles from the nearest Port of Entry. An agent responded and found Velazquez-Morales there, standing next to the border fence. Velazquez-Morales admitted he was a citizen of Mexico without documents permitting him to be in the United States. Velazquez-Morales' prior order of removal was reinstated and Velazquez-Morales was again ordered removed from the United States. There is a pending warrant of removal for Velazquez-Morales, which commands "any immigration officer of the United States Department of Homeland Security" to "take" Velazquez-Morales "into custody" and "remove [him] from the United States[.]" Ex. 13.

<div align="center">6</div>

<div align="center">SER-308</div>

That order has not yet been executed, because Velazquez-Morales was referred for criminal prosecution and transferred into the custody of USMS. On February 21, 2020, he was released on bond in his criminal case. Until recently, trial was set for December 8. However, a change-of-plea with immediate sentencing was just set this week for November 5.

### 14. **Rigoberto Campos-Atrisco – 19mj24683-KSC**

On December 18, 2019, a Border Patrol Agent found Campos-Atrisco and two others hiding behind boulders two miles north of the United States/Mexico border and twenty miles away from the nearest port of entry. Campos-Atrisco admitted he was a citizen of Mexico without documents allowing him to enter or remain in the United States. Campos-Atrisco was placed in expedited removal proceedings and ordered removed from the United States. Ex. 14.

That order has not yet been executed, because Campos-Atrisco was referred for criminal prosecution and transferred into the custody of the USMS. He was released on bond in his criminal case on January 7, 2020. A bench trial is currently set for December 11, 2020.

### 15. **Erick Aranda-Moreno – 19mj23381-MDD**

On August 14, 2019, eight days after his most recent removal, a Border Patrol Agent found Aranda-Moreno and two others in the brush about a half mile north of the United States/Mexico border. Aranda-Moreno admitted he was a citizen of Mexico without documents allowing him to enter or remain in the United States. Following his arrest, an authorized immigration official reinstated Aranda-Moreno's prior order of removal and ordered him removed from the United States. There is a pending warrant of removal for Aranda-Moreno, which commands "any immigration officer of the United States Department of Homeland Security" to "take" Aranda-Moreno "into custody" and "remove [him] from the United States[.]" Ex. 15.

That order has not yet been executed, because Aranda-Moreno was referred for criminal prosecution and transferred into the custody of the USMS. He was released on bond in his criminal case on January 7, 2020. A bench trial is currently set for December 11, 2020.

20cv2060-DMS

# EXHIBIT 1

U.S. DEPARTMENT OF HOMELAND SECURITY

## NOTICE TO ALIEN ORDERED REMOVED/DEPARTURE VERIFICATION

A-File No: ███████ 438

Date: 08/20/2019

Alien's name: PEDRO  VALENCIA-AYALA

You have been found to be inadmissible to the United States under the provisions of section 212(a) of the Immigration and Nationality Act (Act) or deportable under the provisions of section 237 of the Act as a Visa Waiver Pilot Program violator. In accordance with the provisions of section 212(a)(9) of the Act, you are prohibited from entering, attempting to enter, or being in the United States

☒ For a period of 5 years from the date of your departure from the United States as a consequence of your having been found inadmissible as an arriving alien in proceedings under section 235(b)(1) or 240 of the Act.

☐ For a period of 10 years from the date of your departure from the United States as a consequence of your having been ordered removed in proceedings under any section of the Act other than section 235(b)(1) or 240, or of being ordered excluded under section 236 of the Act in proceedings commenced prior to April 1, 1997.

☐ For a period of 20 years from the date of your departure from the United States as a consequence of being found inadmissible and being previously excluded, deported, or removed from the United States.

☐ At any time because in addition to being found inadmissible, you have been convicted of a crime designated as an aggravated felony.

After your removal has been effected, you must request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or U.S. Department of Homeland Security office. Refer to the above file number when requesting forms or information.

---

**WARNING FOR ALL REMOVED ALIENS:** It is a crime under Title 8 United States Code, Section 1326, for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent.  Depending on the circumstances of the removal, conviction for this crime can result in imprisonment of a period of from 2 to 20 years and/or a fine up to $250,000.

---

**SPECIAL NOTICE TO SEX OFFENDERS:** Federal Law requires a convicted sex offender, including an alien who has been removed from or otherwise departed the United States and subsequently returns, to register in each jurisdiction in the United States in which he or she resides, is employed, or is a student.  Violation of this requirement can result in prosecution and imprisonment for up to 10 years under Title 18 United States Code, Section 2250.

---

| ALAIN NICOLAS | BORDER PATROL AGENT | EL CAJON, CALIFORNIA |
|---|---|---|
| (Signature of officer serving warning) | (Title of officer) | (Location of DHS Office) |

## Verification of Removal
(Complete this section for file copy only)

| Departure Date | Port of Departure | | Manner of Departure |
|---|---|---|---|
| Signature of Verifying Officer | | Title of Officer | |



**Photograph of Alien**

**Right Index Finger**

X Pedro VA
(Signature of alien whose fingerprint and photograph appear above)

(Signature of official taking fingerprint)

DHS Form I-296 (1/12)

Page 1 of 1

U.S. Department of Homeland Security | **Notice and Order of Expedited Removal**

## DETERMINATION OF INADMISSIBILITY   Event No:ECJ1908000085

File No: ████ 438

Date: August 20, 2019

In the Matter of: PEDRO  VALENCIA-AYALA

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a) ☐ (6)(C)(i); ☐ (6)(C)(ii); ☒ (7)(A)(i)(I); ☐ (7)(A)(i)(II); ☐ (7)(B)(i)(I); and/or ☐ (7)(B)(i)(II) of the Act, as amended, and therefore are subject to removal, in that:

1. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act. You are not a citizen or national of the United States, you are a native of Mexico, and a citizen of Mexico, and on August 20, 2019 you illegally entered the United States at/near Tecate, California, and you were not inspected by an Immigration Officer.

ROBERT FLORES
_____
Border Patrol Agent
Name and title of immigration officer (Print)

_____
Signature of immigration officer

## ORDER OF REMOVAL
## UNDER SECTION 235(b)(1) OF THE ACT

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.

ROBERT FLORES
_____
Border Patrol Agent
Name and title of immigration officer (Print)

_____
Signature of immigration officer

IGNACIO DIAZ
_____
ACTING WATCH COMMANDER
Name and title of supervisor (Print)

_____
Signature of supervisor, if available

☐ Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).

| CERTIFICATE OF SERVICE |
|---|
| I personally served the original of this notice upon the above-named person on ___8/20/2019___ |
| (Date) |
| _____ |
| Signature of immigration officer |

Form I-860 (Rev 08/01/07)

SER-312

# EXHIBIT 2

U.S. Department of Homeland Security

# Warrant of Removal/Deportation

File No: ███ 724
Event No: BRF2011000204
Date: November 20, 2019

## To any immigration officer of the United States Department of Homeland Security:

ERICK RUBIN MORALES-ROBLERO

_____
(Full name of alien)

who entered the United States at   OTAY MESA, CALIFORNIA   on   November 18, 2019
(Place of entry)                                    (Date of entry )

is subject to removal/deportation from the United States, based upon a final order by:

☒ an immigration judge in exclusion, deportation, or removal proceedings
☐ a designated official
☐ the Board of Immigration Appeals
☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
Section 241(a)(5) of the INA.

I, the undersigned officer of the United States, by virtue of the power and authority vested in the
Secretary of Homeland Security under the laws of the United States and by his or her direction,
command you to take into custody and remove from the United States the above-named alien,
pursuant to law, at the expense of:
THE DEPARTMENT OF HOMELAND SECURITY.

_____
(Signature of immigration officer)

WATCH COMMANDER
(Title of immigration officer)

November 20, 2019        San Diego, California
_____
(Date and office location)

Form I-205 (Rev. 08/01/07) N

*85*

SER-314

To be completed by immigration officer executing the warrant:

Name of alien being removed:                                              ███ 724

ERICK RUBIN MORALES-ROBLERO

**Port, date, and manner of removal:** _____



Photograph of alien
removed



Right index fingerprint
of alien removed

_____
(Signature of alien being fingerprinted)

EMERY E. DAWSON
BORDER PATROL AGENT
_____
(Signature and title of immigration officer taking print)

Departure witnessed by: _____
(Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____
_____
_____
_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.     ☐

Departure Verified by: _____
(Signature and title of immigration officer)

Form I-205 (Rev. 08/01/07) N

*84*

U.S. Department of Homeland Security

## Notice of Intent/Decision to Reinstate Prior Order

File No. ██████724

Event No: BRF2011000204

FINS #:19485905          Date: **November 20, 2019**

Name: **ERICK RUBIN MORALES-ROBLERO**

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 24 1.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of _____**REMOVAL**_____ entered against you. This intent
(Deportation / exclusion / removal)
is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on _____**April 25, 2016**_____ at
(Date)
**NEW ORLEANS, LOUISIANA**
(Location)

2. You have been identified as an alien who:

   ☒ was removed on _____**November 02, 2019**_____ pursuant to an order of deportation / exclusion / removal.
   (Date)

   ☐ departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or
   (Date)
   after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about **November 18, 2019** at or near **OTAY MESA, CALIFORNIA**
(Date)                          (Location)

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* **SPANISH** *language.*

**EMERY E. DAWSON**                            _(signature)_
(Printed or typed name of official)          (Signature of officer)

**BORDER PATROL AGENT**
(Title of officer)

### Acknowledgment and Response

I ☐ do  ☒ do not wish to make a statement contesting this determination.

11-20-19            _(signature)_
(Date)              (Signature of Alien)

### Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

**November 20, 2019**    **SAN DIEGO, CALIFORNIA**    _Scott Zimmerl (signature)_
(Date)                   (Location)                   (Signature of authorized deciding official)

Scott Zimmer                                          **WATCH COMMANDER**
(Printed or typed name of official)                  (Title)

Form I-871 (Rev. 08/01/07)

82

SER-316

# EXHIBIT 3

U.S. Department of Homeland Security

# Warrant of Removal/Deportation

File No: ▓▓▓▓ 963
Event No: BLV2010000046
Date: October 10, 2019

**To any immigration officer of the United States Department of Homeland Security:**

ANDREA DENISE CONTRERAS-VERGARA

(Full name of alien)

who entered the United States at TECATE, CALIFORNIA on October 09, 2019

(Place of entry)                          (Date of entry )

is subject to removal/deportation from the United States, based upon a final order by:

☐ an immigration judge in exclusion, deportation, or removal proceedings
☒ a designated official
☐ the Board of Immigration Appeals
☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
Section 241(a)(5) of the INA.

I, the undersigned officer of the United States, by virtue of the power and authority vested in the
Secretary of Homeland Security under the laws of the United States and by his or her direction,
command you to take into custody and remove from the United States the above-named alien,
pursuant to law, at the expense of:
THE DEPARTMENT OF HOMELAND SECURITY.

SEAN PETERSON

(Signature of immigration officer)

ACTING PATROL AGENT IN CHARGE

(Title of immigration officer)

October 09, 2019                    SAN DIEGO, CALIFORNIA

(Date and office location)

Form I-205 (Rev. 08/01/07) N

SER-318

To be completed by immigration officer executing the warrant:
Name of alien being removed:

ANDREA DENISE CONTRERAS-VERGARA

963

**Port, date, and manner of removal:** _____



Photograph of alien
removed



Right index fingerprint
of alien removed

_Andrea Denisse C.V._
(Signature of alien being fingerprinted)

**JESUS E. VALDOVINOS**
**BORDER PATROL AGENT**
(Signature and title of immigration officer taking print)

Departure witnessed by: _____
(Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____
_____
_____
_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.   ☐

Departure Verified by: _____
(Signature and title of immigration officer)

Form I-205 (Rev. 08/01/07) N

| U.S. Department of Homeland Security | **Notice of Intent/Decision to Reinstate Prior Order** |

File No. ███ **963**
Event No: **BLV2010000046**
FINS #: **1281157300**    Date: **October 10, 2019**

Name: **ANDREA DENISE CONTRERAS-VERGARA**

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 24 1.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of _____ **REMOVAL** _____ entered against you. This intent
<div align="center">(Deportation / exclusion / removal)</div>
is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on _____ **June 10, 2019** _____ at
<div align="center">(Date)</div>
 **SAN DIEGO, CALIFORNIA** _____
<div align="center">(Location)</div>

2. You have been identified as an alien who:

   ☒ was removed on _____ **September 30, 2019** _____ pursuant to an order of deportation / exclusion / removal.
<div align="center">(Date)</div>

   ☐ departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or
<div align="center">(Date)</div>
   after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about _____ **October 09, 2019** _____ at or near **TECATE, CALIFORNIA** _____
<div align="center">(Date)                    (Location)</div>

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* **SPANISH** _____ *language.*

**JESUS E. VALDOVINOS** _____
<div align="center">(Printed or typed name of official)</div>

_____ (Signature of officer)

**BORDER PATROL AGENT** _____
<div align="center">(Title of officer)</div>

---

### Acknowledgment and Response

I ☐ do ☒ do not wish to make a statement contesting this determination.

**10/10/2019** _____        ✗ Andrea Dniese C. V. _____
<div align="center">(Date)                              (Signature of Alien)</div>

---

### Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

**October 09, 2019** _____    **SAN DIEGO, CALIFORNIA** _____    _____ (Signature of authorized deciding official)
<div align="center">(Date)                 (Location)</div>

**SEAN PETERSON** _____    **ACTING PATROL AGENT IN CHARGE** _____
<div align="center">(Printed or typed name of official)                           (Title)</div>

Form I-871 (Rev. 08/01/07)

# EXHIBIT 4

U.S. Department of Homeland Security

**Warrant of Removal/Deportation**

File No: █████████ 096
Event No: BLV2011000045
Date: November 07, 2019

**To any immigration officer of the United States Department of Homeland Security:**

BERTIN  CRUZ-IBARRA
_____
(Full name of alien)

who entered the United States at    TECATE, CALIFORNIA      on   November 07, 2019
                                    (Place of entry)                  (Date of entry )

is subject to removal/deportation from the United States, based upon a final order by:

☐   an immigration judge in exclusion, deportation, or removal proceedings
☒   a designated official
☐   the Board of Immigration Appeals
☐   a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
Section 241(a)(5) of the INA.

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Secretary of Homeland Security under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:
THE DEPARTMENT OF HOMELAND SECURITY.

MICHAEL W. DAVIS
(Signature of immigration officer)

ACTING PATROL AGENT IN CHARGE
(Title of immigration officer)

November 07, 2019          SAN DIEGO, CALIFORNIA
(Date and office location)

Form I-205 (Rev. 08/01/07) N

SER-322

To be completed by immigration officer executing the warrant:
Name of alien being removed:

096

**BERTIN   CRUZ-IBARRA**

**Port, date, and manner of removal:** _____



Photograph of alien
removed



Right index fingerprint
of alien removed

_____
(Signature of alien being fingerprinted)
**DAVID WILLIAMS**
**Border Patrol Agent**
_____
(Signature and title of immigration officer taking print)

Departure witnessed by: _____
(Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____
_____
_____
_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.   ☐

Departure Verified by: _____
(Signature and title of immigration officer)

Form I-205 (Rev. 08/01/07) N

**U.S. Department of Homeland Security**

# Notice of Intent/Decision to Reinstate Prior Order

File No. ████ 096
Event No: BLV2011000045
FINS #: 1234117599      Date: **November 07, 2019**

Name: **BERTIN  CRUZ-IBARRA**

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 24 1.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of _____ **REMOVAL** _____ entered against you. This intent
(Deportation / exclusion / removal)

is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on **September 23, 2017** at
   (Date)
   **IMPERIAL, CALIFORNIA**
   (Location)

2. You have been identified as an alien who:

   [x] was removed on **September 23, 2017** pursuant to an order of deportation / exclusion / removal.
   (Date)

   [ ] departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or
   (Date)
   after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about **November 07, 2019** at or near **TECATE, CALIFORNIA**
   (Date)                          (Location)

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* **SPANISH** *language.*

**DAVID WILLIAMS**
(Printed or typed name of official)                          (Signature of officer)

**Border Patrol Agent**
(Title of officer)

## Acknowledgment and Response

I [ ] do  [x] do not  wish to make a statement contesting this determination.

**11/7/19**
(Date)                                                        (Signature of Alien)

## Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

**November 07, 2019**      **SAN DIEGO, CALIFORNIA**
(Date)                          (Location)                          (Signature of authorized deciding official)

**MICHAEL W. DAVIS**                                    **ACTING PATROL AGENT IN CHARGE**
(Printed or typed name of official)                          (Title)

Form I-871 (Rev. 08/01/07)

# EXHIBIT 5

U.S. Department of Homeland Security

# Warrant of Removal/Deportation

File No: █████████ 058
Event No: BRF1908000183
Date: August 22, 2019

## To any immigration officer of the United States Department of Homeland Security:

OLISER   HERNANDEZ

_____
(Full name of alien)

who entered the United States at    TECATE, CALIFORNIA    on  August 21, 2019
                                    (Place of entry)              (Date of entry )

is subject to removal/deportation from the United States, based upon a final order by:

- ☒  an immigration judge in exclusion, deportation, or removal proceedings
- ☐  a designated official
- ☐  the Board of Immigration Appeals
- ☐  a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
Section 241(a)(5) of the INA.

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Secretary of Homeland Security under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:
THE DEPARTMENT OF HOMELAND SECURITY.

_____
(Signature of immigration officer)
CHRISTOPHER HOFFMAN
WATCH COMMANDER
(Title of immigration officer)

August 23, 2019              San Diego, California
_____
(Date and office location)

Form I-205 (Rev. 08/01/07) N

134

To be completed by immigration officer executing the warrant:
Name of alien being removed:

OLISER   HERNANDEZ

058

**Port, date, and manner of removal:**



Photograph of alien
removed



Right index fingerprint
of alien removed

X

(Signature of alien being fingerprinted)

VIKTOR ZAGOROV
BORDER PATROL AGENT

(Signature and title of immigration officer taking print)

Departure witnessed by:

(Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.  ☐

Departure Verified by:

(Signature and title of immigration officer)

Form I-205 (Rev. 08/01/07) N

*133*

| U.S. Department of Homeland Security | **Notice of Intent/Decision to Reinstate Prior Order** |
|---|---|

File No. ▓▓▓▓ 058

Event No: BRF1908000183

FINS #: 1176584513    Date: **August 22, 2019**

Name: OLISER   HERNANDEZ

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 24 1.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of _____ **REMOVAL** _____ entered against you. This intent

(Deportation / exclusion / removal)

is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on _____ **August 30, 2017** _____ at

(Date)

**LOS ANGELES, CALIFORNIA**

(Location)

2. You have been identified as an alien who:

   [X] was removed on **November 19, 2018** pursuant to an order of deportation / exclusion / removal.

   (Date)

   [ ] departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or

   (Date)

   after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about **August 21, 2019** at or near **TECATE, CALIFORNIA**

   (Date)                                    (Location)

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* **SPANISH** *language.*

**VIKTOR ZAGOROV**

(Printed or typed name of official)                    (Signature of officer)

**BORDER PATROL AGENT**

(Title of officer)

### Acknowledgment and Response

I [ ] do [X] do not  wish to make a statement contesting this determination.

09/23/19

(Date)                                    (Signature of Alien)

### Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

**August 23, 2019**      **SAN DIEGO, CALIFORNIA**

(Date)                    (Location)                    (Signature of authorized deciding official)

Christopher Herman

(Printed or typed name of official)                    **WATCH COMMANDER**

(Title)

Form I-871 (Rev. 08/01/07)

*131*

# EXHIBIT 6

U.S. Department of Homeland Security

## Warrant of Removal/Deportation

File No: ███████ 899
Event No: CAO1908000078
Date: August 16, 2019

### To any immigration officer of the United States Department of Homeland Security:

MAURO  VARELA-GOMEZ

_____
(Full name of alien)

who entered the United States at  TECATE, CALIFORNIA  on  August 16, 2019
(Place of entry)  (Date of entry )

is subject to removal/deportation from the United States, based upon a final order by:

☐ an immigration judge in exclusion, deportation, or removal proceedings
☒ a designated official
☐ the Board of Immigration Appeals
☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
Section 241(a)(5) of the INA.

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Secretary of Homeland Security under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:
THE DEPARTMENT OF HOMELAND SECURITY.

ERIC VITO
(Signature of immigration officer)

ACTING PATROL AGENT IN CHARGE
(Title of immigration officer)

August 16, 2019          SAN DIEGO, CALIFORNIA
(Date and office location)

Form I-205 (Rev. 08/01/07) N

*39*

To be completed by immigration officer executing the warrant:
Name of alien being removed:                                                    ███ 899

MAURO   VARELA-GOMEZ

**Port, date, and manner of removal:** _____



Photograph of alien
removed



Right index fingerprint
of alien removed

_____
(Signature of alien being fingerprinted)

ALYSSA GOBEL
Border Patrol Agent
_____
(Signature and title of immigration officer taking print)

Departure witnessed by: _____
(Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____
_____
_____
_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.      ☐

Departure Verified by: _____
(Signature and title of immigration officer)

Form I-205 (Rev. 08/01/07) N

*38*

U.S. Department of Homeland Security                    **Notice of Intent/Decision to Reinstate Prior Order**

File No. ███████ 899
Event No: CAO1908000078
FINS #: 1119917563      Date: **August 16, 2019**

Name: **MAURO   VARELA-GOMEZ**

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 24 1.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of _____**REMOVAL**_____ entered against you. This intent
                                                                                                      (Deportation / exclusion / removal)
is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on ____**June 26, 2011**____ at
                                                                                                        (Date)
**EL PASO, TEXAS**
_____
   (Location)

2. You have been identified as an alien who:

   ☒ was removed on ____**July 27, 2011**____ pursuant to an order of deportation / exclusion / removal.
                              (Date)

   ☐ departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or
                                          (Date)
   after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about ___**August 16, 2019**___ at or near **TECATE, CALIFORNIA**
                                                                    (Date)                            (Location)

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* **SPANISH** *language.*

**ALYSSA GOBEL**
_____
(Printed or typed name of official)                         (Signature of officer)

                                                            **Border Patrol Agent**
                                                            (Title of officer)

---

### Acknowledgment and Response

I ☐ do  ☒ do not wish to make a statement contesting this determination.

08/16/2019
(Date)                                                           X_____
                                                                    (Signature of Alien)

---

### Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

**August 16, 2019**      **SAN DIEGO, CALIFORNIA**
(Date)                        (Location)                         (Signature of authorized deciding official)

**ERIC VITO**                                                   **ACTING PATROL AGENT IN CHARGE**
_____                                       _____
(Printed or typed name of official)                             (Title)

Form I-871 (Rev. 08/01/07)  *36*

# EXHIBIT 7

U.S. Department of Homeland Security

# Warrant of Removal/Deportation

**File No:** ███████ 445
**Event No:** BLV2012000012
**Date:** December 04, 2019

## To any immigration officer of the United States Department of Homeland Security:

ALVARO   PASTOR-NARCIZO

(Full name of alien)

who entered the United States at **TECATE, CALIFORNIA** on **December 03, 2019**

(Place of entry)                    (Date of entry )

is subject to removal/deportation from the United States, based upon a final order by:

- ☒ an immigration judge in exclusion, deportation, or removal proceedings
- ☐ a designated official
- ☐ the Board of Immigration Appeals
- ☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
**Section 241(a)(5) of the INA.**

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Secretary of Homeland Security under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:
**THE DEPARTMENT OF HOMELAND SECURITY.**

MITCHELL STROUD

(Signature of immigration officer)

**ACTING WATCH COMMANDER**

(Title of immigration officer)

December 04, 2019          SAN DIEGO, CALIFORNIA

(Date and office location)

Form I-205 (Rev. 08/01/07) N

SER-334

To be completed by immigration officer executing the warrant:
Name of alien being removed:

█████ **445**

ALVARO   PASTOR-NARCIZO

**Port, date, and manner of removal:** _____



Photograph of alien
removed



Right index fingerprint
of alien removed

_____
(Signature of alien being fingerprinted)

ALVARO GALLO
BORDER PATROL AGENT
_____
(Signature and title of immigration officer taking print)

Departure witnessed by: _____
(Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____
_____
_____
_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.     ☐

Departure Verified by: _____
(Signature and title of immigration officer)

Form I-205 (Rev. 08/01/07) N

**U.S. Department of Homeland Security**

# Notice of Intent/Decision to Reinstate Prior Order

File No. ███ **445**

Event No: BLV2012000012

**FINS #:18264685**   Date: **December 04, 2019**

Name: **ALVARO   PASTOR-NARCIZO**

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 24 1.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of _____ **REMOVAL** _____ entered against you. This intent
(Deportation / exclusion / removal)
is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on _____ **August 13, 2019** _____ at
(Date)
**TACOMA, WASHINGTON**
(Location)

2. You have been identified as an alien who:

   ☒ was removed on _____ **November 28, 2019** _____ pursuant to an order of deportation / exclusion / removal.
   (Date)

   ☐ departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or
   (Date)
   after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about _____ **December 03, 2019** _____ at or near **TECATE, CALIFORNIA**
(Date)                                (Location)

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* **SPANISH** _____ *language.*

**ALVARO GALLO**
(Printed or typed name of official)

(Signature of officer)

**BORDER PATROL AGENT**
(Title of officer)

---

## Acknowledgment and Response

I ☐ do  ☑ do not  wish to make a statement contesting this determination.

**12/04/19**
(Date)

X _____
(Signature of Alien)

---

## Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

**December 04, 2019**      **SAN DIEGO, CALIFORNIA**
(Date)                          (Location)

(Signature of authorized deciding official)

**MITCHELL STROUD**
(Printed or typed name of official)

**ACTING WATCH COMMANDER**
(Title)

Form I-871 (Rev. 08/01/07)

# EXHIBIT 8

U.S. DEPARTMENT OF HOMELAND SECURITY

## NOTICE TO ALIEN ORDERED REMOVED/DEPARTURE VERIFICATION

A-File No: ▓▓▓▓ 482

Date: 02/01/2020

Alien's name: ARMANDO ANTONIO ESCOBAR-MEJIA

You have been found to be inadmissible to the United States under the provisions of section 212(a) of the Immigration and Nationality Act (Act) or deportable under the provisions of section 237 of the Act as a Visa Waiver Pilot Program violator. In accordance with the provisions of section 212(a)(9) of the Act, you are prohibited from entering, attempting to enter, or being in the United States

☒ For a period of 5 years from the date of your departure from the United States as a consequence of your having been found inadmissible as an arriving alien in proceedings under section 235(b)(1) or 240 of the Act.

☐ For a period of 10 years from the date of your departure from the United States as a consequence of your having been ordered removed in proceedings under any section of the Act other than section 235(b)(1) or 240, or of being ordered excluded under section 236 of the Act in proceedings commenced prior to April 1, 1997.

☐ For a period of 20 years from the date of your departure from the United States as a consequence of being found inadmissible and being previously excluded, deported, or removed from the United States.

☐ At any time because in addition to being found inadmissible, you have been convicted of a crime designated as an aggravated felony.

After your removal has been effected, you must request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or U.S. Department of Homeland Security office. Refer to the above file number when requesting forms or information.

**WARNING FOR ALL REMOVED ALIENS:** It is a crime under Title 8 United States Code, Section 1326, for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent. Depending on the circumstances of the removal, conviction for this crime can result in imprisonment of a period of from 2 to 20 years and/or a fine up to $250,000.

**SPECIAL NOTICE TO SEX OFFENDERS:** Federal Law requires a convicted sex offender, including an alien who has been removed from or otherwise departed the United States and subsequently returns, to register in each jurisdiction in the United States in which he or she resides, is employed, or is a student. Violation of this requirement can result in prosecution and imprisonment for up to 10 years under Title 18 United States Code, Section 2250.

| JASON LECLAIRE | BORDER PATROL AGENT | BOULEVARD, CALIFORNIA |
|---|---|---|
| (Signature of officer serving warning) | (Title of officer) | (Location of DHS Office) |

## Verification of Removal
(Complete this section for file copy only)

| Departure Date | Port of Departure | Manner of Departure |
|---|---|---|
| Signature of Verifying Officer | | Title of Officer |



**Photograph of Alien**

**Right Index Finger**

_____
(Signature of alien whose fingerprint and photograph appear above)

_____
(Signature of official taking fingerprint)

DHS Form I-296 (1/12)                                          Page 1 of



**U.S. Department of Homeland Security**                              **Notice and Order of Expedited Removal**

## DETERMINATION OF INADMISSIBILITY

Event No: BLV2001000302

File No: ▓▓▓▓▓482

Date: **February 01, 2020**

In the Matter of: **ARMANDO ANTONIO ESCOBAR-MEJIA**

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a) ☐ (6)(C)(i); ☐ (6)(C)(ii); ☒ (7)(A)(i)(I); ☐ (7)(A)(i)(II); ☐ (7)(B)(i)(I); and/or ☐ (7)(B)(i)(II) of the Act, as amended, and therefore are subject to removal, in that:

**1. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act.  You are not a citizen or national of the United States, you are a native of El Salvador and citizen of El Salvador, and on January 31, 2020, you illegally entered the United States at/near Tecate, California, and you were not inspected by an Immigration Officer.**

**JASON LECLAIRE**

**BORDER PATROL AGENT**
Name and title of immigration officer (Print)                          Signature of immigration officer

## ORDER OF REMOVAL
### UNDER SECTION 235(b)(1) OF THE ACT

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.

**JASON LECLAIRE**

**BORDER PATROL AGENT**
Name and title of immigration officer (Print)                          Signature of immigration officer

**SEAN PETERSON**

**ACTING WATCH COMMANDER**
Name and title of supervisor (Print)                          Signature of supervisor, if available

☐ Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).

### CERTIFICATE OF SERVICE

I personally served the original of this notice upon the above-named person on ___2/1/20___
                                                                                                                            (Date)

_____
Signature of immigration officer

Form I-860 (Rev. 08/0 )

SER-339

# EXHIBIT 9

U.S. DEPARTMENT OF HOMELAND SECURITY

## NOTICE TO ALIEN ORDERED REMOVED/DEPARTURE VERIFICATION

A-File No: ████ 902

Date: 02/10/2019

Alien's name: LUIS AROLDO CHAVAC-BOROR

You have been found to be inadmissible to the United States under the provisions of section 212(a) of the Immigration and Nationality Act (Act) or deportable under the provisions of section 237 of the Act as a Visa Waiver Pilot Program violator. In accordance with the provisions of section 212(a)(9) of the Act, you are prohibited from entering, attempting to enter, or being in the United States

☒ For a period of 5 years from the date of your departure from the United States as a consequence of your having been found inadmissible as an arriving alien in proceedings under section 235(b)(1) or 240 of the Act.

☐ For a period of 10 years from the date of your departure from the United States as a consequence of your having been ordered removed in proceedings under any section of the Act other than section 235(b)(1) or 240, or of being ordered excluded under section 236 of the Act in proceedings commenced prior to April 1, 1997.

☐ For a period of 20 years from the date of your departure from the United States as a consequence of being found inadmissible and being previously excluded, deported, or removed from the United States.

☐ At any time because in addition to being found inadmissible, you have been convicted of a crime designated as an aggravated felony.

After your removal has been effected, you must request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or U.S. Department of Homeland Security office. Refer to the above file number when requesting forms or information.

**WARNING FOR ALL REMOVED ALIENS:** It is a crime under Title 8 United States Code, Section 1326, for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent. Depending on the circumstances of the removal, conviction for this crime can result in imprisonment of a period of from 2 to 20 years and/or a fine up to $250,000.

**SPECIAL NOTICE TO SEX OFFENDERS:** Federal Law requires a convicted sex offender, including an alien who has been removed from or otherwise departed the United States and subsequently returns, to register in each jurisdiction in the United States in which he or she resides, is employed, or is a student. Violation of this requirement can result in prosecution and imprisonment for up to 10 years under Title 18 United States Code, Section 2250.

| JON BOWEN | BORDER PATROL AGENT | PINE VALLEY, CALIFORNIA |
|---|---|---|
| (Signature of officer serving warning) | (Title of officer) | (Location of DHS Office) |

## Verification of Removal
(Complete this section for file copy only)

| Departure Date | Port of Departure | | Manner of Departure |
|---|---|---|---|
| Signature of Verifying Officer | | Title of Officer | |



**Photograph of Alien**

α Luis Chavac Boror

(Signature of alien whose fingerprint and photograph appear above)



**Right Index Finger**

(Signature of official taking fingerprint)

DHS Form I-296 (1/12)

Page 1 of 1

SER-341

U.S. Department of Homeland Security        **Notice and Order of Expedited Removal**

## DETERMINATION OF INADMISSIBILITY

Event No: CAO1902000075

File No: ███████ 902

Date: February 10, 2019

In the Matter of: LUIS AROLDO CHAVAC-BOROR

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a) ☐ (6)(C)(i); ☐ (6)(C)(ii); ☒ (7)(A)(i)(I); ☐ (7)(A)(i)(II); ☐ (7)(B)(i)(I); and/or ☐ (7)(B)(i)(II) of the Act, as amended, and therefore are subject to removal, in that:

1. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act. You are not a citizen or national of the United States, you are a native of Guatemala and citizen of Guatemala, and on February 9, 2019, you illegally entered the United States by jumping the United States/ Mexico international boundary border fence at/near Tecate, California, and you were not inspected by an Immigration Officer.

JON BOWEN
Border Patrol Agent
Name and title of immigration officer (Print)         Signature of immigration officer

## ORDER OF REMOVAL
### UNDER SECTION 235(b)(1) OF THE ACT

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.

JON BOWEN
Border Patrol Agent
Name and title of immigration officer (Print)         Signature of immigration officer

RICHARD GAUS
ACTING WATCH COMMANDER
Name and title of supervisor (Print)         Signature of supervisor, if available

☐ Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).

### CERTIFICATE OF SERVICE

I personally served the original of this notice upon the above-named person on __02/10/2019__
(Date)

_____
Signature of immigration officer

Form I-860 (Rev 08/01/07)

SER-342

# EXHIBIT 10

U.S. DEPARTMENT OF HOMELAND SECURITY
**NOTICE TO ALIEN ORDERED REMOVED/DEPARTURE VERIFICATION**

A-File No: ▮▮▮▮▮ 526
Date: 05/25/2019

Alien's name: ELIZEO VELAZQUEZ-HERNANDEZ

You have been found to be inadmissible to the United States under the provisions of section 212(a) of the Immigration and Nationality Act (Act) or deportable under the provisions of section 237 of the Act as a Visa Waiver Pilot Program violator. In accordance with the provisions of section 212(a)(9) of the Act, you are prohibited from entering, attempting to enter, or being in the United States

☒ For a period of 5 years from the date of your departure from the United States as a consequence of your having been found inadmissible as an arriving alien in proceedings under section 235(b)(1) or 240 of the Act.

☐ For a period of 10 years from the date of your departure from the United States as a consequence of your having been ordered removed in proceedings under any section of the Act other than section 235(b)(1) or 240, or of being ordered excluded under section 236 of the Act in proceedings commenced prior to April 1, 1997.

☐ For a period of 20 years from the date of your departure from the United States as a consequence of being found inadmissible and being previously excluded, deported, or removed from the United States.

☐ At any time because in addition to being found inadmissible, you have been convicted of a crime designated as an aggravated felony.

After your removal has been effected, you must request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or U.S. Department of Homeland Security office. Refer to the above file number when requesting forms or information.

| WARNING FOR ALL REMOVED ALIENS: It is a crime under Title 8 United States Code, Section 1326, for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent. Depending on the circumstances of the removal, conviction for this crime can result in imprisonment of a period of from 2 to 20 years and/or a fine up to $250,000. |
|---|

| SPECIAL NOTICE TO SEX OFFENDERS: Federal Law requires a convicted sex offender, including an alien who has been removed from or otherwise departed the United States and subsequently returns, to register in each jurisdiction in the United States in which he or she resides, is employed, or is a student. Violation of this requirement can result in prosecution and imprisonment for up to 10 years under Title 18 United States Code, Section 2250. |
|---|

| BRIAN MILLER | BORDER PATROL AGENT | BOULEVARD, CALIFORNIA |
|---|---|---|
| (Signature of officer serving warning) | (Title of officer) | (Location of DHS Office) |

## Verification of Removal
(Complete this section for file copy only)

| Departure Date | Port of Departure | | Manner of Departure |
|---|---|---|---|
| Signature of Verifying Officer | | Title of Officer | |



**Photograph of Alien**



**Right Index Finger**

ELIZEO V H

(Signature of alien whose fingerprint and photograph appear above)

(Signature of official taking fingerprint)

DHS Form I-296 (1/12)                                                                 Page 1 of 1

U.S. Department of Homeland Security                    **Notice and Order of Expedited Removal**

## DETERMINATION OF INADMISSIBILITY

Event No: BLV1905000255

File No. ██████ 526

Date: May 25, 2019

In the Matter of: ELIZEO  VELAZQUEZ-HERNANDEZ

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a) ☐ (6)(C)(i); ☐ (6)(C)(ii); ☒ (7)(A)(i)(I); ☐ (7)(A)(i)(II); ☐ (7)(B)(i)(I); and/or ☐ (7)(B)(i)(II) of the Act, as amended, and therefore are subject to removal, in that:

1.  You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act.  You are not a citizen or national of the United States, you are a native of Mexico and citizen of Mexico, and on May 25, 2019, you illegally entered the United States at/near Tecate, California, and you were not inspected by an Immigration Officer.

BRIAN MILLER

BORDER PATROL AGENT
Name and title of immigration officer (Print)                         Signature of immigration officer

## ORDER OF REMOVAL
## UNDER SECTION 235(b)(1) OF THE ACT

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.

BRIAN MILLER

BORDER PATROL AGENT
Name and title of immigration officer (Print)                         Signature of immigration officer

SCOTT J. SAMS

ACTING WATCH COMMANDER
Name and title of supervisor (Print)                         Signature of supervisor, if available

☐ Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).

| CERTIFICATE OF SERVICE |
|---|

I personally served the original of this notice upon the above-named person on   5-25-19
                                                                          (Date)

Signature of immigration officer

Form I-860 (Rev. 08/01/07)

SER-345

# EXHIBIT 11

U.S. Department of Homeland Security

# Warrant of Removal/Deportation

File No: ████ 764
Event No: CAO1903000129
Date: March 23, 2019

## To any immigration officer of the United States Department of Homeland Security:

JOSE DAVID ORELLANA-ARDON

_____
(Full name of alien)

who entered the United States at  TECATE, CALIFORNIA  on  March 22, 2019
(Place of entry)          (Date of entry )

is subject to removal/deportation from the United States, based upon a final order by:

☒ an immigration judge in exclusion, deportation, or removal proceedings
☐ a designated official
☐ the Board of Immigration Appeals
☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
Section 241(a)(5) of the INA.

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Secretary of Homeland Security under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:
THE DEPARTMENT OF HOMELAND SECURITY.

_____
ERIC VITO
(Signature of immigration officer)

ACTING PATROL AGENT IN CHARGE
_____
(Title of immigration officer)

_____
(Date and office location)

Form I-205 (Rev. 08/01/07) N

SER-347

To be completed by immigration officer executing the warrant:
Name of alien being removed:                                          ████ 764

JOSE DAVID ORELLANA-ARDON

**Port, date, and manner of removal:** _____



Photograph of alien
removed



Right index fingerprint
of alien removed

X _____
(Signature of alien being fingerprinted)

_____  BPA
(Signature and title of immigration officer taking print)

Departure witnessed by: _____
(Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____
_____
_____
_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.      ☐

Departure Verified by: _____
(Signature and title of immigration officer)

Form I-205 (Rev. 08/01/07) N

SER-348

| U.S. Department of Homeland Security | **Notice of Intent/Decision to Reinstate Prior Order** |
|---|---|

File No. ▮▮▮▮  **764**
Event No: CA01903000129
**FINS #:17974645**   Date: **March 23, 2019**

Name: **JOSE DAVID ORELLANA-ARDON**

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 241.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of ___**REMOVAL**___ entered against you. This intent
_(Deportation / exclusion / removal)_
is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on   **January 23, 2006**   at
   _(Date)_
   **LOS ANGELES, CALIFORNIA**
   _(Location)_

2. You have been identified as an alien who:

   ☒ was removed on   **February 14, 2018**   pursuant to an order of deportation / exclusion / removal.
   _(Date)_

   ☐ departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or
   _(Date)_
   after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about   **March 22, 2019**   at or near **TECATE, CALIFORNIA**
   _(Date)_                                    _(Location)_

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge.

_The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the_   **SPANISH**   _language._

**DARNELL BEMBO**
_(Printed or typed name of official)_                          _(Signature of officer)_

**BORDER PATROL AGENT**
_(Title of officer)_

---

### Acknowledgment and Response

I ☐ do  ☒ do not  wish to make a statement contesting this determination.   X _____

**3/23/2019**
_(Date)_                                                        _(Signature of Alien)_

---

### Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

**March 23, 2019**   **SAN DIEGO, CALIFORNIA**
_(Date)_          _(Location)_                          _(Signature of authorized deciding official)_

**ERIC VITO**                                   **ACTING PATROL AGENT IN CHARGE**
_(Printed or typed name of official)_                   _(Title)_

Form I-871 (Rev. 08/01/07)

# EXHIBIT 12

Case 3:20-cv-02060-DMS-KSC   Document 12-2   Filed 10/30/20   PageID.316   Page 42 of 60

U.S. DEPARTMENT OF HOMELAND SECURITY

## NOTICE TO ALIEN ORDERED REMOVED/DEPARTURE VERIFICATION

A-File No: ███████ 172

Date: 07/24/2019

Alien's name: JERONIMO FERNANDEZ-FERRER

You have been found to be inadmissible to the United States under the provisions of section 212(a) of the Immigration and Nationality Act (Act) or deportable under the provisions of section 237 of the Act as a Visa Waiver Pilot Program violator. In accordance with the provisions of section 212(a)(9) of the Act, you are prohibited from entering, attempting to enter, or being in the United States

[X] For a period of 5 years from the date of your departure from the United States as a consequence of your having been found inadmissible as an arriving alien in proceedings under section 235(b)(1) or 240 of the Act.

[ ] For a period of 10 years from the date of your departure from the United States as a consequence of your having been ordered removed in proceedings under any section of the Act other than section 235(b)(1) or 240, or of being ordered excluded under section 236 of the Act in proceedings commenced prior to April 1, 1997.

[ ] For a period of 20 years from the date of your departure from the United States as a consequence of being found inadmissible and being previously excluded, deported, or removed from the United States.

[ ] At any time because in addition to being found inadmissible, you have been convicted of a crime designated as an aggravated felony.

After your removal has been effected, you must request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or U.S. Department of Homeland Security office. Refer to the above file number when requesting forms or information.

WARNING FOR ALL REMOVED ALIENS: It is a crime under Title 8 United States Code, Section 1326, for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent. Depending on the circumstances of the removal, conviction for this crime can result in imprisonment of a period of from 2 to 20 years and/or a fine up to $250,000.

SPECIAL NOTICE TO SEX OFFENDERS: Federal Law requires a convicted sex offender, including an alien who has been removed from or otherwise departed the United States and subsequently returns, to register in each jurisdiction in the United States in which he or she resides, is employed, or is a student. Violation of this requirement can result in prosecution and imprisonment for up to 10 years under Title 18 United States Code, Section 2250.

| ARMANDO RODRIGUEZ | BORDER PATROL AGENT | SAN DIEGO, CALIFORNIA |
|---|---|---|
| (Signature of officer serving warning) | (Title of officer) | (Location of DHS Office) |

## Verification of Removal
(Complete this section for file copy only)

| Departure Date | Port of Departure | | Manner of Departure |
|---|---|---|---|
| Signature of Verifying Officer | | Title of Officer | |



**Photograph of Alien**

Jeronimo Fe

(Signature of alien whose fingerprint and photograph appear above)

**Right Index Finger**

(Signature of official taking fingerprint)

DHS Form I-296 (1/12)

Page 1 of 1

U.S. Department of Homeland Security          **Notice and Order of Expedited Removal**

## DETERMINATION OF INADMISSIBILITY

Event No: CHU1907000217

File No: ████ 172

Date: July 24, 2019

In the Matter of: JERONIMO  FERNANDEZ-FERRER

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a) ☐ (6)(C)(i); ☐ (6)(C)(ii); ☒ (7)(A)(i)(I); ☐ (7)(A)(i)(II); ☐ (7)(B)(i)(I); and/or ☐ (7)(B)(i)(II) of the Act, as amended, and therefore are subject to removal, in that:

1.  You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act.  You are not a citizen or national of the United States, you are a native of Mexico and citizen of Mexico, and on July 23, 2019, you illegally entered the United States at/near Otay Mesa, California, and you were not inspected by an Immigration Officer.

ARMANDO RODRIGUEZ

BORDER PATROL AGENT
Name and title of immigration officer (Print)          Signature of immigration officer

## ORDER OF REMOVAL
### UNDER SECTION 235(b)(1) OF THE ACT

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.

ARMANDO RODRIGUEZ

BORDER PATROL AGENT
Name and title of immigration officer (Print)          Signature of immigration officer

ERIC LUDIAN
(A) WATCH COMMANDER
Name and title of supervisor (Print)          Signature of supervisor, if available

☐ Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).

| CERTIFICATE OF SERVICE |
|---|
| I personally served the original of this notice upon the above-named person on 7/24/2019 |
| (Date) |
| Signature of immigration officer |

Form I-860 (Rev. 08/01/07)

SER-352

# EXHIBIT 13

U.S. Department of Homeland Security

# Warrant of Removal/Deportation

File No: ▮▮▮▮▮ 650
Event No: IMB2001000201
Date: January 30, 2020

**To any immigration officer of the United States Department of Homeland Security:**

JUAN REFUGIO VELAZQUEZ-MORALES

_____
(Full name of alien)

who entered the United States at _____SAN YSIDRO, CALIFORNIA_____ on __January 30, 2020__
                                            (Place of entry)                              (Date of entry )

is subject to removal/deportation from the United States, based upon a final order by:

- ☐ an immigration judge in exclusion, deportation, or removal proceedings
- ☒ a designated official
- ☐ the Board of Immigration Appeals
- ☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
Section 241(a)(5) of the INA.

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Secretary of Homeland Security under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:
THE DEPARTMENT OF HOMELAND SECURITY.

_____
(Signature of immigration officer)
MICHAEL STRZEPEK

Watch Commander
_____
(Title of immigration officer)

January 30, 2020        SAN DIEGO, CALIFORNIA
_____
(Date and office location)

Form I-205 (Rev. 08/01/07) N

SER-354

To be completed by immigration officer executing the warrant:
Name of alien being removed:

JUAN REFUGIO VELAZQUEZ-MORALES

██████ 650

**Port, date, and manner of removal:**



Photograph of alien
removed

Right index fingerprint
of alien removed

(Signature of alien being fingerprinted)

JUAN C. BRIBIESCA
Border Patrol Agent
(Signature and title of immigration officer taking print)

Departure witnessed by: _____
(Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____
_____
_____
_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.   ☐

Departure Verified by: _____
(Signature and title of immigration officer)

Form I-205 (Rev. 08/01/07) N

| U.S. Department of Homeland Security | **Notice of Intent/Decision to Reinstate Prior Order** |
|---|---|

File No. ████ 650

Event No: IMB2001000201

FINS #: 1301585360     Date: **January 30, 2020**

Name: **JUAN REFUGIO VELAZQUEZ-MORALES**

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 24 1.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of ___**REMOVAL**___ entered against you. This intent
<div style="text-align:center">(Deportation / exclusion / removal)</div>
is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on ___**January 30, 2020**___ at
<div style="text-align:center">(Date)</div>
___**SAN DIEGO, CALIFORNIA**___
<div style="text-align:center">(Location)</div>

2. You have been identified as an alien who:

   [x] was removed on ___**January 30, 2020**___ pursuant to an order of deportation / exclusion / removal.
   <div style="text-align:center">(Date)</div>

   [ ] departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or
   <div style="text-align:center">(Date)</div>
   after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about ___**January 30, 2020**___ at or near **SAN YSIDRO, CALIFORNIA**
<div style="text-align:center">(Date)                    (Location)</div>

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* **SPANISH** *language.*

___**JUAN C. BRIBIESCA**___         _____
<div>(Printed or typed name of official)                    (Signature of officer)</div>

**Border Patrol Agent**
<div style="text-align:center">(Title of officer)</div>

---

### Acknowledgment and Response

I [ ] do [x] do not  wish to make a statement contesting this determination.

___V/20/2020___                        ___Refugio___
<div>(Date)                                          (Signature of Alien)</div>

---

### Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

**January 30, 2020**      **SAN DIEGO, CALIFORNIA**       _____
<div>(Date)                          (Location)                    (Signature of authorized deciding official)</div>

**MICHAEL C. STRZEPEK**                              **Watch Commander**
<div>(Printed or typed name of official)                         (Title)</div>

<div style="text-align:right">Form I-871 (Rev. 08/01/07)</div>

# EXHIBIT 14

DEPARTMENT OF HOMELAND SECURITY

**NOTICE TO ALIEN ORDERED REMOVED/DEPARTURE VERIFICATION**

A-File No: ███████ 097

Date: 12/18/2019

Alien's name: RIGOBERTO CAMPOS-ATRISCO

You have been found to be inadmissible to the United States under the provisions of section 212(a) of the Immigration and Nationality Act (Act) or deportable under the provisions of section 237 of the Act as a Visa Waiver Pilot Program violator. In accordance with the provisions of section 212(a)(9) of the Act, you are prohibited from entering, attempting to enter, or being in the United States

☒ For a period of 5 years from the date of your departure from the United States as a consequence of your having been found inadmissible as an arriving alien in proceedings under section 235(b)(1) or 240 of the Act.

☐ For a period of 10 years from the date of your departure from the United States as a consequence of your having been ordered removed in proceedings under any section of the Act other than section 235(b)(1) or 240, or of being ordered excluded under section 236 of the Act in proceedings commenced prior to April 1, 1997.

☐ For a period of 20 years from the date of your departure from the United States as a consequence of being found inadmissible and being previously excluded, deported, or removed from the United States.

☐ At any time because in addition to being found inadmissible, you have been convicted of a crime designated as an aggravated felony.

After your removal has been effected, you must request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or U.S. Department of Homeland Security office. Refer to the above file number when requesting forms or information.

WARNING FOR ALL REMOVED ALIENS: It is a crime under Title 8 United States Code, Section 1326, for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent. Depending on the circumstances of the removal, conviction for this crime can result in imprisonment of a period of from 2 to 20 years and/or a fine up to $250,000.

SPECIAL NOTICE TO SEX OFFENDERS: Federal Law requires a convicted sex offender, including an alien who has been removed from or otherwise departed the United States and subsequently returns, to register in each jurisdiction in the United States in which he or she resides, is employed, or is a student. Violation of this requirement can result in prosecution and imprisonment for up to 10 years under Title 18 United States Code, Section 2250.

| DARNELL BEMBO | BORDER PATROL AGENT | PINE VALLEY, CALIFORNIA |
|---|---|---|
| (Signature of officer serving warning) | (Title of officer) | (Location of DHS Office) |

## Verification of Removal
(Complete this section for file copy only)

| Departure Date | Port of Departure | | Manner of Departure |
|---|---|---|---|
| Signature of Verifying Officer | | Title of Officer | |



**Photograph of Alien**

RCA

**Right Index Finger**

X RIGOBERTO CAMPOS A.

(Signature of alien whose fingerprint and photograph appear above)

(Signature of official taking fingerprint)

DHS Form I-296 (1/12)

Page 1 of 1

Case 3:20-cv-02060-DMS-KSC   Document 12-2   Filed 10/30/20   PageID.324   Page 50 of 60

U.S. Department of Homeland Security

## Notice and Order of Expedited Removal

## DETERMINATION OF INADMISSIBILITY

Event No: CAO2012000076

File No: [REDACTED] 097

Date: December 18, 2019

In the Matter of: RIGOBERTO  CAMPOS-ATRISCO

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a) ☐ (6)(C)(i); ☐ (6)(C)(ii); ☒ (7)(A)(i)(I); ☐ (7)(A)(i)(II); ☐ (7)(B)(i)(I); and/or ☐ (7)(B)(i)(II) of the Act, as amended, and therefore are subject to removal, in that:

1.  You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act. You are not a citizen or national of the United States, you are a native of Mexico and a citizen of Mexico, and on December 18, 2019 you illegally entered the United States at/near Tecate, California, and you were not inspected by an Immigration Officer.

DARNELL BEMBO

BORDER PATROL AGENT
_____
Name and title of immigration officer (Print)

_____
Signature of immigration officer

## ORDER OF REMOVAL
## UNDER SECTION 235(b)(1) OF THE ACT

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.

DARNELL BEMBO

BORDER PATROL AGENT
_____
Name and title of immigration officer (Print)

RODERICK MIRANDA

ACTING WATCH COMMANDER
_____
Name and title of supervisor (Print)

_____
Signature of immigration officer

_____
Signature of supervisor, if available

☐ Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).

### CERTIFICATE OF SERVICE

I personally served the original of this notice upon the above-named person on _____12/18/2019_____
(Date)

_____
Signature of immigration officer

Form I-860 (Rev. 08/01/07)

SER-359

# EXHIBIT 15

U.S. Department of Homeland Security

## Warrant of Removal/Deportation

**File No:** ▮▮▮▮ 143
**Event No:** CAO1908000069
**Date:** August 14, 2019

## To any immigration officer of the United States Department of Homeland Security:

ERICK EMANUEL ARANDA-MORENO
_____
(Full name of alien)

who entered the United States at  **BOULEVARD, CALIFORNIA**  on  **August 14, 2019**
_____  _____
(Place of entry)                              (Date of entry )

is subject to removal/deportation from the United States, based upon a final order by:

☐  an immigration judge in exclusion, deportation, or removal proceedings
☒  a designated official
☐  the Board of Immigration Appeals
☐  a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
**Section 241(a)(5) of the INA.**

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Secretary of Homeland Security under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:
**THE DEPARTMENT OF HOMELAND SECURITY.**

_____
GEORGE SMITH
(Signature of immigration officer)
_____
**ACTING PATROL AGENT IN CHARGE**
(Title of immigration officer)
_____
**SAN DIEGO, CALIFORNIA**
(Date and office location)

Form I-205 (Rev. 08/01/07) N

To be completed by immigration officer executing the warrant:
Name of alien being removed:                                                    ███ 143

ERICK EMANUEL ARANDA-MORENO

**Port, date, and manner of removal:** _____



Photograph of alien
removed



Right index fingerprint
of alien removed

x Erick Aranda
(Signature of alien being fingerprinted)

MIGUEL MARMOLEJO
Border Patrol Agent
(Signature and title of immigration officer taking print)

Departure witnessed by: _____
(Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____
_____
_____
_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.        ☐

Departure Verified by: _____
(Signature and title of immigration officer)

Form I-205 (Rev. 08/01/07) N

**DEPARTMENT OF HOMELAND SECURITY**
U.S. Immigration and Customs Enforcement

## WARNING TO ALIEN ORDERED REMOVED OR DEPORTED

A-File Number: ▮▮▮▮ 143

Date: 08/14/2019

Alien's name: ERICK EMANUEL ARANDA-MORENO

In accordance with the provisions of section 212(a)(9) of the Immigration and Nationality Act (Act), you are prohibited from entering, attempting to enter, or being in the United States:

☐ For a period of 5 years from the date of your departure from the United States because you have been found deportable under  section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act initiated upon your arrival in the United States as a returning lawful permanent resident.

☐ For a period of 10 years from the date of your departure from the United States because you have been found:

  ☐ deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.

  ☐ inadmissible under section 212 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act initiated as a result of your having been present in the United States without admission or parole.

  ☐ deportable under section 241 of the Act and ordered deported from the United States by an immigration judge in proceedings commenced before April 1, 1997 under section 242 of the Act.

  ☐ deportable under section 237 of the Act and ordered removed from the United States in accordance with section 238 of the Act by a judge of a United States district court, or a magistrate of a United States magistrate court.

☐ For a period of 20 years from the date of your departure from the United States because, after having been previously excluded, deported, or removed from the United States, you have been found:

  ☐ inadmissible under section 212 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.

  ☐ deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.

  ☐ deportable under section 237 of the Act and ordered removed from the United States in proceedings under section 238 of the  Act.

  ☐ deportable under section 241 of the Act and ordered deported from the United States by an immigration judge in proceedings commenced before April 1, 1997 under section 242 of the Act.

  ☐ to have reentered the United States illegally and have had the prior order reinstated under section 241(a)(5) of the Act.

☐ At any time because you have been found inadmissible or excludable under section 212 of the Act, or deportable under section 241 or 237 of the Act, and ordered deported or removed from the United States, and you have been convicted of a crime designated as an aggravated felony, as defined under section 101(a)(43) of the Act.

After your removal has been effected you must request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United  States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or U.S. Department of Homeland Security office. Refer to the above file number when requesting forms or information.

> **WARNING FOR ALL REMOVED ALIENS: It is a crime under Title 8 United States Code, Section 1326, for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent. Depending on the circumstances of the removal, conviction for this crime can result in imprisonment of a period of from 2 to 20 years and/or a fine up to $250,000.00.**

> **SPECIAL NOTICE FOR SEX OFFENDERS: Federal Law requires a convicted sex offender, including an alien who has been removed from or otherwise departed the United States and subsequently returns, to register in each jurisdiction in the United States in which he or she resides, is employed, or is a student.  Violation of this requirement can result in prosecution and imprisonment for up to 10 years under Title 18 United States Code, Section 2250.**

_____        _____        _____
(Signature of officer serving warning)                (Title of officer)                          (Location of DHS office)

DHS Form I-294 (3/12)                                                                                    Page 1 of 1

| U.S. Department of Homeland Security | **Notice of Intent/Decision to Reinstate Prior Order** |
|---|---|

File No. ████ 143
Event No: CAO1908000069
FINS #: 1287145376   Date: **August 14, 2019**

Name: **ERICK EMANUEL ARANDA-MORENO**

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 241.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of _____ **REMOVAL** _____ entered against you. This intent
(Deportation / exclusion / removal)

is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on **August 06, 2019** at

**EL CENTRO, CALIFORNIA**
(Location)

2. You have been identified as an alien who:

   ☒ was removed on **August 06, 2019** pursuant to an order of deportation / exclusion / removal.
   (Date)

   ☐ departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or
   (Date)
   after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about **August 14, 2019** at or near **BOULEVARD, CALIFORNIA**
   (Date)   (Location)

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* **SPANISH** *language.*

**MIGUEL MARMOLEJO**
(Printed or typed name of official)          (Signature of officer)

                                             **Border Patrol Agent**
                                             (Title of officer)

---

### Acknowledgment and Response

I ☐ do  ☒ do not wish to make a statement contesting this determination.

**08/14/2019**                              x Erick Aranda
(Date)                                      (Signature of Alien)

---

### Decision, Order, and Officer's Certification

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

**August 14, 2019**   **SAN DIEGO, CALIFORNIA**
(Date)   (Location)   (Signature of authorized deciding official)

**GEORGE A. SMITH**   **ACTING PATROL AGENT IN CHARGE**
(Printed or typed name of official)   (Title)

Form I-871 (Rev. 08/01/07)

Case 3:20-cv-02060-DMS-KSC   Document 12-2   Filed 10/30/20   PageID.330   Page 56 of 60

# EXHIBIT 16

```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3   UNITED STATES OF AMERICA,        )
                                      )  No. 3:20-MJ-20169-JLB
 4              Plaintiff,            )
                                      )
 5   v.                               )  October 16, 2020
                                      )
 6   JHOANTAN VILMAR BERNAL-SANCHEZ,  )
                                      )  Courtroom 4C
 7              Defendant.            )
     _____)  San Diego, California
 8

 9          TRANSCRIPT OF DIGITALLY RECORDED PROCEEDINGS

10                   (Court Trial - Day 2)

11      BEFORE THE HONORABLE JILL L. BURKHARDT, MAGISTRATE JUDGE

12
     APPEARANCES:
13   FOR THE PLAINTIFF:        COLIN McDONALD
                               Assistant U.S. Attorney
14                             U.S. Attorney's Office
                               Southern District of California
15                             880 Front Street, Room 6293
                               San Diego, CA  92101-8893
16                             (619)557-5610

17   FOR THE DEFENDANT:        CHANDRA LEIGH PETERSON
                               SEAN McGUIRE
18                             Assistant Federal Defender
                               Federal Defenders of San Diego
19                             225 Broadway, Suite 900
                               San Diego, CA  92101-5008
20                             (619)234-8467

21   THE INTERPRETERS:         GABRIELA SOSA
                               MARIA PAZ SANDOVAL
22

23   COURT REPORTER:           AMANDA M. LeGORE
                               RDR, CRR, CRC, FCRR, CACSR
24                             U.S. District Court
                               333 West Broadway, Suite 420
25                             San Diego, CA 92101
                               amanda_legore@casd.uscourts.gov
```

SER-366

Colloquy                                          62

1        And I will note that there are cases -- I know Judge

2   Schopler entered a written order finding that an injunction of

3   this sort and -- and enjoining the arrest is not proper.  And

4   so any -- any issues with an alleged improper arrest can be

5   raised in the appropriate place, which is not in this court.

6        THE COURT:  All right.  Thank you.

7        I am -- I am not going to -- I am not going to

8   prevent the agent from executing the arrest in the courthouse.

9   I do not have sufficient information before me to make any

10  evaluation about whether the arrest would be lawful or

11  unlawful, and it would not be my role to make that

12  determination or weigh in on that determination in -- in any

13  event.

14       Separate and aside from that issue, I understand that

15  the -- the defense position is that I have the power, in terms

16  of control over the proceedings within my courtroom, to -- to

17  grant the request that is being made.

18       I do not believe that I have the power to extend that

19  to the courthouse.

20       MS. PETERSON:  Sorry.  I -- if I said --

21       THE COURT:  But perhaps my courtroom.

22       MS. PETERSON:  I meant courtroom, your Honor.  I

23  apologize.

24       THE COURT:  And -- and it is my opinion and belief

25  that -- that not only does it not -- I do not believe that the

Colloquy                                                                63

1   dignity of these proceedings or this courtroom would be

2   undermined by allowing the arrest.

3          I do not believe that the objective that you seek

4   would be achieved by me granting the relief that you request.

5          In other words, if I granted that relief and said

6   that the border patrol agent could not execute this arrest in

7   my courtroom, then it would happen outside my courtroom but in

8   the courthouse.  Or outside the courthouse, upon Mr. Bernal's

9   departure.  I don't think your intended objective would be

10  achieved.

11         I think that this is the most dignified and safest

12  way for border patrol to take Mr. Bernal into custody, if that

13  is their intent; if their intent is to take him into custody.

14         So I am going to deny the request.

15         Mr. Bernal, I will give you an opportunity, if you

16  want to say good-bye to your son and give him any personal

17  effects that you want to transfer to him before you're taken

18  into custody, but I'm not going to interfere with the border

19  patrol executing their -- their pursuit -- perceived

20  responsibilities.

21         MR. McDONALD:  Your Honor, I will maintain the

22  exhibits and make the redactions that we talked about.

23         THE COURT:  Thank you.

24         (Pause, Court and the clerk conferring.)

25         THE COURT:  Here's the defense binder, and here are

Colloquy

64

1    the Government's exhibits.

2              THE CLERK:  The court is now adjourned.  We are off

3    the record.

4              (Conclusion of proceedings at 10:39 a.m.)

5

6

7                          --oOo--

8

9    I certify, by signing below, that the foregoing is a correct

10   stenographic transcript of the oral proceedings had in the

11   above-entitled matter this 29th day of October, 2020.  A

12   transcript without an original signature or conformed signature

13   is not certified.  I further certify that the transcript fees

14   and format comply with those prescribed by the Court and the

15   Judicial Conference of the United States.

16

            /S/ Amanda M. LeGore

17         _____

18         AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

19

20

21

22

23

24

25

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZEO VELAZQUEZ-HERNANDEZ, et al., | Case No.: 20-cv-02060-DMS-AHG |
| Plaintiffs-Petitioners, | |
| v. | **ORDER RE: PRELIMINARY INJUNCTION BRIEFING** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Defendants-Respondents. | |

On November 16, 2020, following briefing and argument, the Court granted Plaintiffs' motion for a temporary restraining order.  (ECF No. 19.)  The Court issued a TRO and set it to expire on November 30, 2020.  The Court ordered the parties to meet and confer regarding resolution and next steps in this case.  The parties have not resolved this matter, but have agreed to a simplified procedure for the Court's ruling on Plaintiffs' motion for a preliminary injunction.  The parties agree to submit based on their TRO briefing and argument, with the addition of a short supplemental filing.  Good cause appearing, the Court grants the parties' joint motion and orders as follows:

1. The temporary restraining order issued on November 16, 2020 is extended until such date as the Court has ruled on Plaintiffs' motion for a preliminary injunction;

2. The parties shall submit their joint supplement to the record no later than December 18, 2020;

SER-370

3.      The Court will rule on Plaintiffs' motion for a preliminary injunction based on: the supplemental joint filing, the parties' briefing and argument on plaintiffs' TRO motion, and the complaint and court record in this matter.

**IT IS SO ORDERED.**

Dated:  November 30, 2020

Hon. Dana M. Sabraw
United States District Judge

20-cv-2060-DMS-KSC

SER-371

1    JEREMY DELICINO (CA Bar 296120)
     550 West C Street, Suite 620
2    San Diego, California 92101
     jeremy@jeremydelicino.com
3    (619) 357-6677

4    JAMES JOHNSON (CA Bar 229811)
     100 Wilshire Boulevard, Suite 700
5    Santa Monica, California 90401
     james@johnsontrial.com
6    (424) 272-6680

7    Counsel for Plaintiffs

8

                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   ELIZEO VELAZQUEZ-HERNANDEZ,          Case No. 20-CV-02060-DMS-AHG
     *et al.*,
12                                         **NOTICE OF VOLUNTARY**
           Plaintiffs-Petitioners,         **DISMISSAL WITHOUT**
13                                         **PREJUDICE PURSUANT TO**
           v.                              **FED. R. CIV. P. 41(a)(1)(A)(i)**
14
     U.S. IMMIGRATION AND CUSTOMS
15   ENFORCMENT, *et al.*,

16         Defendants-Respondents.

17

18         Plaintiffs hereby voluntarily dismiss this action without prejudice pursuant

19   to Fed. R. Civ. P. 41(a)(1)(A)(i).

20

21                               Respectfully submitted,

22

23    Dated:  April 28, 2021        *s/ James M. Johnson*
                                    James M. Johnson
24                                  EMAIL: james@johnsontrial.com

25                                  Jeremy Delicino
                                    EMAIL: jeremy@jeremydelicino.com
26
                                    Attorneys for Plaintiffs
27

28

     _____

                    NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE